**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| GLOBAL WEATHER PRODUCTIONS, LLC, | § § § | |
| | § | Case No. 5:23-cv-01350-JKP-ESC |
| *Plaintiff*, | § | |
| vs. | § § | |
| JOE PAGS MEDIA, LLC, | § § | |
| | § | |
| *Defendant*. | § | |

## PARTIALLY UNOPPOSED MOTION TO SET ASIDE THE CLERK'S DEFAULT AND DISMISS PLAINTIFF'S COMPLAINT

Defendant Joe Pags Media, LLC respectfully moves, pursuant to Federal Rule of Civil Procedure 55(c) to set aside the Clerk's Default, which Plaintiff does not oppose, and also moves, pursuant to Rules 12(b)(2) and 12(b)(5), for the Court to dismiss Plaintiff Global Weather Productions, LLC's Complaint for copyright infringement, and the relief requested therein, which Plaintiff partially does not oppose as stated in the certificate of conference, as set forth in the incorporated memorandum of law.

Dated: May 24, 2024

Respectfully submitted,

*/s/ Andrew D. Lockton*
Edward F. McHale
Florida Bar No. 190300
Andrew D. Lockton
Florida Bar No. 115519
California Bar No. 301186
**MCHALE & SLAVIN, P.A.**
2855 PGA Boulevard
Palm Beach Gardens, Florida 33410
Telephone:     (561) 625-6575
E-mail:          emchale@mchaleslavin.com
                 alockton@mchaleslavin.com
                 litigation@mchaleslavin.com

*Attorneys for Joe Pags Media, LLC*

## <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES ........................................................................................ ii

STATEMENT OF CASE AND FACTUAL ALLEGATIONS ......................................................1

    A.    Plaintiff's Allegations of Infringement Based on a Facebook Account ................1

    B.    M3 Media's Notice to Plaintiff That M3, Not JPM, Manages the FB Account and That M3, Not JPM, Uploaded the Accused Video to the FB Account ...................2

    C.    Mr. Freeman's Purported Service, M3's Second Letter, and the Clerk's Default...3

    D.    JPM's Communications to Plaintiff Addressing That Service Had Not Occurred, But Would be Waived if the Plaintiff Notified the Court and Had the Default Vacated ........................................................................................................4

    E.    Plaintiff's Motion for Default Judgment Without Informing the Court of the Relevant Facts ..........................................................................................6

ARGUMENTS ..........................................................................................................7

I.    THE COURT SHOULD VACATE AND SET ASIDE THE CLERK'S DEFAULT FOR INVALID SERVICE OF PROCESS ......................................................................................................7

II.    THIS COURT SHOULD SET ASIDE THE CLERK'S DEFAULT AND DISMISS THE COMPLAINT FOR INVALID SERVICE OF PROCESS .................................................................................9

    A.    Mr. Freeman is not authorized by Texas law to serve process .............................11

    B.    Plaintiff did not file a signed return receipt as required under Texas law .............12

III.    LEAVE TO AMEND SHOULD NOT BE GRANTED BECAUSE PLAINTIFF HAS CHOSEN TO PURSUE A MOTION FOR DEFAULT JUDGMENT WITH FULL KNOWLEDGE THAT JPM WAS NOT VALIDLY SERVED AND DID NOT, IN FACT, COMMIT ANY ACT OF INFRINGEMENT .............13

CONCLUSION .........................................................................................................16

CERTIFICATE OF CONFERENCE .................................................................................17

CERTIFICATE OF SERVICE ........................................................................................18

i

# <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Aetna Business Credit, Inc. v. Universal Decor & Interior Design, Inc.*,
 635 F.2d 434 (5th Cir. 1981) ..............................................................................10

*Atl. Recording Corp. v. Project Playlist, Inc.*,
 603 F. Supp. 2d 690 (S.D.N.Y. 2009)...................................................................15

*Callier v. Texas*,
 No. EP-23-CV-364-FM, 2024 WL 1451135 (W.D. Tex. Apr. 2, 2024) ................15

*Delta Steamships Lines, Inc. v. Albano*,
 768 F.2d 728 (5th Cir. 1985) ..........................................................................11, 12

*Espinoza v. Humphries*,
 44 F.4th 275 (5th Cir. 2022) .......................................................................7, 8, 13

*Familia de Boom v. Arosa Mercantil, S.A.*,
 629 F.2d 1134 (5th Cir. 1980) .............................................................................10

*Harper v. Macleod Solics v. Keaty & Keaty*,
 260 F.3d 389 (5th Cir. 2001) ..........................................................................7, 13

*Jenkens & Gilchrist v. Groia & Co.*,
 542 F.3d 114 (5th Cir. 2008) .................................................................................8

*Keeton v. Carrasco*,
 53 S.W.3d 13 (Tex. App.–San Antonio 2001).......................................................12

*Kennedy v. Equifax Info. Servs. LLC*,
 No. SA-23-CV-00470-FB, 2023 WL 5918323 (W.D. Tex. Sept. 11, 2023)............7

*Lacy v. Sitel Corp.*,
 227 F.3d 290 (5th Cir. 2000) .................................................................................7

*Larrew v. Barnes*,
 2022 WL 31109713 (N.D. Tex. Sept. 17, 2022).....................................................11

*Mooney Aircraft, Inc. v. Donnelly*,
 402 F.2d 400 (5th Cir. 1968) ...............................................................................10

*Murphy Bros. v. Michetti Pipe Stringing*,
 526 U.S. 344 (1999)......................................................................................10, 13

**Cases–cont.**

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*,
    484 U.S. 97 (1987)................................................................................................10

*Pharmakinetics Labs., Inc. v. Katz*,
    717 S.W.2d 704 (Tex. App.–San Antonio 1986)................................................12

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007)............................................................................................15

*Union Pacific Corp. v. Legg*,
    49 S.W.3d 72 (Tex. App.–Austin, 2001) ......................................................11, 12

*United States v. One Parcel of Real Property*,
    763 F.2d 181 (5th Cir. 1985) ...............................................................................7

*Webb v. Oberkampf Supply of Lubbock, Inc.*,
    831 S.W.2d 61 (Tex. App.–Amarillo 1992) .......................................................12

*Wilson v. Dunn*,
    800 S.W.2d 833 (Tex. 1990)..........................................................................11, 13

**U.S. Code**

17 U.S.C. § 505..........................................................................................................9

**Rules**

Fed. R. Civ. P.
    4...........................................................................................................................10
    4(d)........................................................................................................................1
    4(h).......................................................................................................................10
    4(h)(1)(A).............................................................................................................10
    4(h)(1)(B).............................................................................................................10
    4(e)(1)..................................................................................................................10
    12(b)(2)............................................................................................................1, 13
    12(b)(5)............................................................................................................1, 13
    12(b)(6)................................................................................................................15
    55(c)................................................................................................................1, 7

Tex. R. Civ. P.
    103.......................................................................................................................11
    106.......................................................................................................................11
    107.......................................................................................................................12
    107(c)..................................................................................................................12

## <u>MEMORANDUM OF LAW</u>

Defendant Joe Pags Media, LLC (hereafter "JPM") respectfully moves this Court to vacate and set aside the Clerk's Default pursuant to Federal Rule of Civil Procedure 55(c), and to dismiss Plaintiff Global Weather Productions, LLC's ("Plaintiff") Complaint (Dkt. No. 1, "Compl.") and specific relief requested therein, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(5).

As set forth herein, Plaintiff is aware that service of the Complaint was improper and that the Court therefore lacks jurisdiction over the action.  Plaintiff is also aware the allegedly infringing conduct was not performed by the Defendant.  Plaintiff, through counsel, previously agreed to request that the Clerk's Default be vacated and that JPM be given sixty (60) days thereafter to respond to the Complaint, *see* Fed. R. Civ. P. 4(d), during which time plaintiff would consider the evidence provided to it showing that the action was filed against the wrong party and consider dismissing this action in favor of filing the correct one.  Rather than follow through with its agreement, Plaintiff has now Moved for a Default Judgment, and has done so without informing the Court of relevant and necessary information demonstrating both that this Court lacks jurisdiction and that there is no viable cause of action against JPM.  (*See* Dkt. No. 11.)

## STATEMENT OF THE CASE AND FACTUAL ALLEGATIONS

### A.    Plaintiff's Allegations of Infringement Based on a Facebook Account

Plaintiff filed this action against JPM on October 25, 2023, alleging a single Count for copyright infringement based on the presence of an allegedly infringing video on a social media account on Facebook (the "FB Account").  (*See, e.g.*, Compl. ¶ 22.)  The FB Account is not a personal account, but rather a business account that promotes JPM's talk show and media business.  (*See id.* ¶¶ 19, 21.)  Plaintiff alleges, "upon information and belief," that JPM profits from the FB Account.  (*Id.* ¶ 21.)  Plaintiff further alleges, "upon information and belief," that JPM "takes an

active and pervasive role in the content posted on its FB Account, including, but not limited to copying, posting, selecting, commenting on and/or displaying images including but not limited to Plaintiff's Video." (*Id.* ¶ 28.) The Complaint provides no *factual* allegations that JPM operates the FB Account in general, or that JPM was the entity that *actually* posted the accused Video on the FB Account.

On October 27, 2023, the Clerk issued a summons in this action to: "Joe Pags Media, LLC c/o Joseph J Pagliarulo." (Dkt. No. 4, p.1.) Following the summons was a Proof of Service for someone authorized to serve process to declare under penalty of perjury that service had occurred and to specify how. (Dkt. No. 4, p.2.)

**B.      M3 Media's Notice to Plaintiff That M3, Not JPM, Manages the FB Account and That M3, Not JPM, Uploaded the Accused Video to the FB Account.**

On December 22, 2023, M3 Media Management, LLC ("M3"), through counsel, wrote to Plaintiff's counsel, Mr. Sanders, to address the allegations that the allegedly infringing Video was posted on the FB Account. Ex A (December 22, 2023, Letter, attached hereto). That letter expressed that M3 manages the FB Account, that M3 is the main contributor of material to that account, and in that capacity, M3—not JPM—obtained and posted to that account the accused Video that is the subject of the Complaint. Ex. A. The letter explained that while JPM owns the account, JPM was not involved whatsoever in the selection of content or operation of the account, at the relevant times, i.e., that it undertook no volitional act in regard to the act(s) of accused infringement. Ex. A.

Plaintiff did not respond to M3's letter. *See* Ex. B (January 24, 2024, Letter, attached hereto) ("Inasmuch as we have yet to receive a reply to my initial letter, . . . .").

C.     **Mr. Freeman's Purported Service, M3's Second Letter, and the Clerk's Default.**

On January 19, 2024, James H. Freeman, counsel for the Plaintiff, filed a "Certificate of Service". (Dkt. No. 7.)  Mr. Freeman's certificate states:

> I hereby certify that on January 18, 2024, I cause to be served via USPS certified mail a copy of the summons, complaint with the underlying exhibits, and the Referral Order [ECF Nos. 1-6] on defendant via its last known business address:
>
> Joe Pags Media, LLC
> c/o Joseph J Pagliarulo
> 287 Coyote Trail
> Spring Branch, TX 78070.

(*Ibid.*)  Mr. Freeman did not file the return of service.  Mr. Freeman did not file a signed receipt bearing the signature of Joseph J. Pagliarulo, confirming that the certified mail was received.  Mr. Freeman did not state that he was authorized by Texas law to serve documents in Texas or for this case.

On January 24, 2024, counsel for M3 wrote again to Plaintiff's counsel Mr. Sanders and Mr. Freeman.  Ex. B.  M3's counsel identified that service had merely been attempted on JPM, but that it had not occurred, was legally deficient and therefore void.  Ex. B, n.1 (citing cases).  Counsel attempted to address the matter directly to Plaintiff's counsel "so that unnecessary expense in responding to the Complaint" could be avoided.  Ex. B.  Plaintiff did not correct the record with the Court to clarify that service had not occurred, and on February 22, 2024, the Clerk's Office amended the docket text for Mr. Freeman's Certificate of Service, retitling that entry as "Summons Returned Executed."

On March 5, 2024, after the Clerk's Office amended the docket text, Mr. Freeman filed a declaration and request for a Clerk's Default.  (Dkt. No. 8.)  Mr. Freeman relied on his Certificate of Service, Dkt. No. 7, as the basis for stating that service was proper.  (Dkt. No. 8, ¶ 6.)  Mr. Freeman did not inform the Clerk or the Court that service had not occurred, and did not call the

Court's, or the Clerk's, attention to the legal requirements for service to be effective, requirements set forth in the cases cited in M3's second letter.  That same day, the Clerk entered a Default, relying on the summons and Complaint being served on JPM "by personally serving a person authorized to accept service on Defendant's behalf.  Proof of service was therefore filed on January 19, 2024," i.e., Mr. Freeman's Certificate of Service.  (Dkt. No. 9.)

> **D.**     **JPM's Communications to Plaintiff Addressing That Service Had Not Occurred, But Would Be Waived if the Plaintiff Notified the Court and Had the Default Vacated.**

On February 27, 2024, counsel wrote again to Mr. Sanders and Mr. Freeman, this time on behalf of JPM.  Ex. C (February 27, 2024, Letter, attached hereto).  Counsel once again addressed that service was deficient and that there was no viable cause of action against JPM, only M3.  Ex. C, p.1.  Counsel addressed that Mr. Sanders and Mr. Freeman had a duty as officers of the Court to correctly identify to the Court that service had not occurred.  Ex. C.  Counsel addressed that "Mr. Freeman was not a person authorized to serve process, and separately, no valid return of service was filed—because the Complaint was not served."  Ex. C, p.1.  Counsel addressed that requiring JPM to undertake legal fees in moving to have the improper Default vacated would be unwarranted, and that JPM would pursue Plaintiff for recovery of the legal fees incurred if Plaintiff did not correct to the record.  Ex. C, pp.1-2.  Counsel requested a telephone conference with Plaintiff's counsel to address the matter.  Ex. C, p.2.

Counsel for JPM attempted to call Mr. Freeman on multiple occasions following the February 27, 2024, letter, but did not connect until March 13, 2024.  *See* Ex. D (March 13, 2024, Email, attached hereto).  During that call it was discovered that Mr. Freeman had responded to the February 27, 2024, letter by email, but did not reply to the email address the letter was sent from or to any of counsel's personal email addresses.  Almost immediately after that call, the undersigned sent Mr. Freeman an email to address the email issues and confirm communications

going forward.  Ex. D.  The email also confirmed the substance of the parties' discussion, including that service was not valid, and specifically confirmed that Plaintiff agreed to prepare a draft stipulation to set aside the Clerk's Default and set a sixty (60) day period for JPM's response, which was a compromise to correct the invalid service.  *See* Ex. D.  Counsel also agreed to provide Plaintiff with evidence reflecting that M3—not JPM—was responsible for managing the FB Account and that M3—not JPM—posted the accused Video on the account.  *See* Ex. D.

On April 3, 2024, JPM sent another letter to Mr. Freeman following up from the March 13 call.  Ex. E (April 3, 2024, Letter, attached hereto).  The letter once again confirmed Plaintiff's agreement to provide a stipulation to set aside the Clerk's Default and set sixty (60) days to respond to the Complaint, to avoid "any and all service issues."  Ex. E, p.1.  The letter also provided an attached agreement between JPM and M3, specifying that "M3 was contracted to perform services including 'Social Media Oversight and Posting,'" which gave rise to the alleged infringement identified in the Complaint.  Ex. E, p.1.  The letter expressed that the evidence should be sufficient for Plaintiff to accept that the lawsuit against JPM was improper and must be dismissed in favor of filing a proper action against M3 in the Southern District of New York.  Ex. E, pp.1-2.

On April 12, 2024, a follow-up email was sent to confirm Mr. Freeman's receipt of the April 3 letter.  Ex. F (April 12, 2024, Email, attached hereto).  Mr. Sanders was copied on that email, which attached the previous email containing the April 3, 2024, Letter and Agreement between JPM and M3.  Ex. F.  Mr. Freeman responded that day to the email, which confirmed his receipt of the email, as well as its attachments.  *See* Ex. G (April 12, 2024, Response Email, attached hereto).  In Mr. Freeman's response email, he confirmed a general agreement to the terms of vacating the Default and setting a sixty (60) day period to respond, but stated he would not

prepare the paperwork.  Ex. G.  Mr. Freeman's email is contrary to what was agreed between the parties.  *Compare* Ex. G *with* Exs. D, E, F (confirming Mr. Freeman's agreement).

### E.   Plaintiff's Motion for Default Judgment Without Informing the Court of the Relevant Facts

By May 1, 2024, Plaintiff had not informed the Court that service had not occurred, and therefore the Court issued a Show Cause Order, believing that service had occurred based upon the entry of a Clerk's Default and Mr. Freeman's Certificate of Service.  (Dkt. No. 10 at 1, citing Dkt. Nos. 7, 9.)  The Court offered Plaintiff the opportunity to either "pursue default or show cause why moving for default is not appropriate at this time."  (*Id.* at 1.)  The Court also offered that "[i]f Plaintiff no longer intends to pursue its claims against Defendant, Plaintiff may voluntarily dismiss this case pursuant to Rule 41(a)."  (*Id.* at 1-2.)

Rather than accept the Court invitation to voluntarily dismiss the case or explain to the Court that service was void and therefore moving for default was not appropriate (*see id.* at 1-2), on May 10, 2024, Plaintiff Moved for a Default Judgement, (Dkt. No. 11).  The memorandum of law Plaintiff filed provides no evidence that service occurred, it only relies on the Clerk's Default to support entry of a Default Judgment.  (Dkt. No. 11-1 at 3.)  The memorandum also requests, *inter alia*, $40 as a "service fee".[1]  (Dkt. No. 11-1 at 13.)  Mr. Sanders provided a declaration in support of the motion, stating that "[a]s per the Proof of Service at Dkt. No. 7, the summons and Complaint were served on Defendant on January 18, 2024."  (Dkt. No. 11-2, ¶ 6.)  Mr. Sanders's declaration also identifies a $40.00 "Personal service fee" from January 18, 2024 (*id.*, ¶ 25), and states that "[a] true and correct copy of the Proof of Service is attached hereto as <u>Exhibit B</u>," (*id.*,

---

[1] Plaintiff's inclusion of a $40 "personal service fee" in the request for costs (*see* Dkt. No. 11-1 at 13), including through Mr. Sander's declaration (Dkt. No. 11-2, ¶ 25), is particularly troubling given that the only purported "service" was simply a mailing via USPS certified mail.

¶ 28).  Exhibit B to Mr. Sanders's declaration is a copy of Mr. Freeman's Certificate of Service, Dkt. No. 7.  (Dkt. No. 11-4.)

Neither Plaintiff's memorandum, nor Mr. Sanders's declaration, identifies to the Court that service did not occur or that counsel for JPM had been trying to have Plaintiff correct that error and had offered to waive service upon that correction.  Neither Plaintiff's memorandum, nor Mr. Sanders's declaration, identifies that counsel for both JPM and M3 had provided evidence to Plaintiff's counsel addressing that there was no factual basis for the allegations made in the Complaint and that M3 had admitted that it—not JPM—had uploaded the Video to the FB Account.

## ARGUMENTS

### I.  THE COURT SHOULD VACATE AND SET ASIDE THE CLERK'S DEFAULT FOR INVALID SERVICE OF PROCESS.

Under Federal Rule of Civil Procedure 55(c), a district court may set aside the entry of a clerk's default for good cause.  *Lacy v. Sitel Corp.*, 227 F.3d 290, 291-92 (5th Cir. 2000).  The Fifth Circuit directs district courts to consider the following factors in evaluating good cause: (1) whether the default was willful, (2) whether setting it aside would prejudice the adversary, and (3) whether a meritorious defense is presented.  *United States v. One Parcel of Real Property*, 763 F.2d 181, 183 (5th Cir. 1985).  "If a defendant was not properly served, a district court **must** set aside an entry of default or default judgment."  *Kennedy v. Equifax Info. Servs. LLC*, No. SA-23-CV-00470-FB, 2023 WL 5918323, *1 (W.D. Tex. Sept. 11, 2023) (emphasis in original) (citing *Espinoza v. Humphries*, 44 F.4th 275, 276 (5th Cir. 2022) (quoting *Harper v. Macleod Solics v. Keaty & Keaty*, 260 F.3d 389, 393 (5th Cir. 2001) (holding the court "must set aside a default judgment as void if it determines that it lacked personal jurisdiction over the defendant because of defective service of process.")))..

In *Espinoza*, the Fifth Circuit held that it was an abuse of discretion to deny the defendant's motion to vacate the clerk's default under Rule 55(c) and enter a default judgment because, due to improper service, the defendant had no duty to respond to the Complaint.  44 F.4th at 267.  "A defendant cannot default if he had no duty answer the suit—and he need not answer until 'service has been perfected.'"  *Ibid.* (quoting *Jenkens & Gilchrist v. Groia & Co.*, 542 F.3d 114, 123 n.6 (5th Cir. 2008)).  Notably, even the "flagrant evasion of service" by the defendant in *Espinoza* did not relieve the plaintiff of its burden to strictly comply with the service statutes.  *Ibid.*

Here, there was no "willful default", JPM repeatedly tried to address the matter directly with Plaintiff's counsel, attempting to avoid this Court having to expend judicial resources addressing the improper service and the fact that the action was filed against the incorrect party. *See* Exs. A-F.  Moreover, there was no evasion of service, just Plaintiff's improper attempt at service in violation of Texas law.  *See infra*, §II.  Mr. Freeman, Plaintiff's counsel, is not authorized by Texas law to serve process and Plaintiff did not file a receipt for mail service signed by the addressee, as required under Texas law.  *See infra*, §§II(A)-(B).  JPM's counsel identified the problem and sought to address it directly with Plaintiff's counsel, offering to waive service if Plaintiff corrected the record with the Court to identify that service had not occurred.  *See* Exs. A-F.  Plaintiff continued this case unnecessarily and vexatiously increasing the costs for JPM to defend itself from claims for which Plaintiff cannot prevail as a matter of law.  *See, e.g.*, Ex. E.

Further, Plaintiff is not prejudiced by vacating the Clerk's Default (and thereby denying the motion for default judgement).  Plaintiff has improperly pursued this case for months despite a clear lack of service and with full knowledge that service did not occur and was void.  JPM's counsel has been trying for months to address the matter directly with Plaintiff's counsel, identifying that the case was filed against the wrong entity and that service was legally deficient

under Texas law, and even providing evidence to confirm that this suit was improperly filed and should simply be voluntarily dismissed in favor of filing the correct action. *See* Exs. A-F. Vacating the Clerk's Default (and denying the Motion for Default Judgment) is not prejudicial— Plaintiff decided to ignore the facts and proceeded with a Motion for Default Judgment that misstates the facts and legal issues to the Court. (*See* Dkt. Nos. 11-1, 11-2.)

Finally, JPM has a meritorious defense—it hired a third-party company, M3, to manage the accused FB Account. M3 has admitted, through counsel, that *it*—not JPM—uploaded the accused Video to the FB Account. *See, e.g.*, Ex. E (Letter and attached agreement between JPM and M3). The facts demonstrate that there is no possible case *against JPM*, only against M3. And Plaintiff's Complaint does not rely on any facts, merely conclusory assertions and "upon information and belief" allegations. *See infra*, §III. When faced with JPM's evidence, Plaintiff's claim for direct copyright infringement against JPM must fail.[2]

Accordingly, the Court should vacate the Clerk's Default for at least the reason that service in this case did not occur. Plaintiff does not oppose vacating the Clerk's Default.

## II.   THE COURT SHOULD SET ASIDE THE CLERK'S DEFAULT AND DISMISS THE COMPLAINT FOR INVALID SERVICE OF PROCESS.

Simply put, this action is a legal nullity and should be dismissed. Mr. Freeman's Certificate of Service is facially invalid because (1) Mr. Freeman is not authorized to serve process in Texas, and (2) Mr. Freeman did not file the return receipt bearing Mr. Joseph J. Pagliarulo's signature to confirm that service occurred. *See infra*, §§II(A)-(B). Service in this case did not occur, and valid

---

[2] Plaintiff's election to pursue this action against the wrong party, despite being presented with evidence that another entity is the proper defendant, is relevant to a subsequent request for prevailing party attorney's fees under 17 U.S.C. § 505. Plaintiff has vexatiously multiplied the costs in this action by failing to correct the fact that service never occurred and by pursuing an action against a party despite evidence—and an admission by M3—that M3 is responsible for the conduct addressed in the complaint, not JPM.

service pursuant to Federal and Texas law did not occur.  Service of Process is generally required for a court to exercise personal jurisdiction over a defendant.  *Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 350 (1999) (quoting *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) (superseded by statute on other grounds related to personal jurisdiction through service of process)).   The Supreme Court has stated that proper service of process "is fundamental to any procedural imposition on a named defendant." *Murphy Bros.*, 526 U.S. at 350 (addressing the historical origins of service of process).

"In the absence of valid service of process, proceedings against a party are void." *Aetna Business Credit, Inc. v. Universal Decor & Interior Design, Inc.*, 635 F.2d 434, 435 (5th Cir. 1981) (citing *Mooney Aircraft, Inc. v. Donnelly*, 402 F.2d 400, 406 (5th Cir. 1968)).  "When service of process is challenged, the party on whose behalf it is made must bear the burden of establishing its validity." *Ibid.* (*citing Familia de Boom v. Arosa Mercantil, S.A.*, 629 F.2d 1134, 1139 (5th Cir. 1980)).

Rule 4 of the Federal Rules of Civil Procedure controls the means of service of process in a federal cause of action.  Fed. R. Civ. P. 4.  Rule 4(h) governs the methods for which service may be effected upon a corporation, partnership, or unincorporated association, which can occur as prescribed by Rule 4(e)(1) for serving an individual, or by delivering to an officer, a managing or general agent, or any other agent authorized, and mailing a copy.  *See* Fed. R. Civ. P. 4(h)(1)(A)-(B).  Rule 4(e)(1) provides that service on an individual must be pursuant to state law where the district court is located or where service is made.  *See* Fed. R. Civ. P. 4(e)(1).

Plaintiff here attempted service by Mr. Freeman through certified mail to JPM c/o Joseph J. Pagliarulo, (Dkt. No. 7), thus opting for service under Texas law.  While Texas law permits service of process by mailing the service to the defendant by registered or certified mail, return

receipt requested," there are strict requirements for compliance.  *See* Tex. R. Civ. P. 106.  Process

may be served under Texas law by: (1) any sheriff or constable or other person authorized by law;

(2) any person authorized by law or by written order of the Court who is not less than 18 years of

age; or (3) any person certified under order of the Texas Supreme Court, such as a private process

server who is certified under the Supreme Court's civil process server certification program.  *See*

Tex. R. Civ. P. 103.  Both state and federal law prohibit the plaintiff from personally serving

process, including by mail.  *Cf.* Dkt. No. 11-2, ¶ 25 (Mr. Sander's declaration identifying a $40.00

"Personal service fee").

Texas construes the rules regarding service of process strictly, and failure to comply with

them renders the attempted service of process invalid and of no effect.  *See Wilson v. Dunn*, 800

S.W.2d 833, 836 (Tex. 1990).  Process attempted by a person who is not authorized as required

under Rule 103 is invalid.  *See, e.g.*, *Delta Steamships Lines, Inc. v. Albano*, 768 F.2d 728, 729-30

(5th Cir. 1985) (holding service of process was invalid for failure to have an authorized person

serve by certified mail pursuant to Texas law).  Further, failure to file the return receipt bearing

the addressee's signature is "fatally defective."  *Union Pacific Corp. v. Legg*, 49 S.W.3d 72, 79

(Tex. App.–Austin, 2001) (holding the return of service "fatally defective" for bearing a "received

by:" stamp rather than a handwritten signature of the addressee).

### A.     Mr. Freeman is not authorized by Texas law to serve process.

Plaintiff asserts that service was made by certified mail by Mr. Freeman.  Dkt. No. 7; *see*

*also* Dkt. No. 11-1, p.3; Dkt. No. 11-2 (Sanders Declaration), ¶6 (citing Dkt. No. 7).  Mr. Freeman

is counsel for the Plaintiff; he is not a sheriff, he is not a constable, he is not a person certified by

order of this Court or by order of the Texas Supreme Court.  Accordingly, Plaintiff's attempt at

service by Mr. Freeman is invalid and of no effect.  *See Delta Steamships Lines*, 768 F.2d at 729-

30; *see also Union Pacific*, 49 S.W.3d at 79; *Larrew v. Barnes*, 2022 WL 31109713, *2 (N.D. Tex.

Sept. 17, 2022) (finding that a notary public "does not fall within the class of persons authorized to effect service by certified mail under Texas law") (citing *Delta Steamships Lines*, 768 F.2d at 729).

As evidenced by Mr. Freeman's "Certificate of Service," service did not occur. Accordingly, the Clerk's Default should be vacated and the Complaint should be dismissed.

### B.     Plaintiff did not file a signed return receipt as required under Texas law.

Separately, Plaintiff's attempted service is also invalid because Plaintiff did not file a signed receipt bearing Mr. Pagliarulo's signature as the addressee of the summons.  Under Texas Rule of Civil Procedure 107(c), if a plaintiff serves a defendant by registered or certified mail, "the return by the officer or other authorized person must also contain the return receipt with the addressee's signature."  Tex. R. Civ. P. 107(c)); *accord Keeton v. Carrasco*, 53 S.W.3d 13, 19 (Tex. App.–San Antonio 2001, pet. denied) ("A return of a citation served by registered or certified mail must contain the return receipt with the addressee's signature.") (citing Tex. R. Civ. P. 107)

If the return receipt is not signed by the addressee, the service of process is defective.  *See, e.g.*, *Keeton*, 53 S.W.3d at 19 (service was defective because the return receipt was signed by someone other than the addressee)); *Webb v. Oberkampf Supply of Lubbock, Inc.*, 831 S.W.2d 61, 94 (Tex. App.–Amarillo 1992, no writ) (defective service because the return receipt was not signed by addressee); *Pharmakinetics Labs., Inc. v. Katz*, 717 S.W.2d 704, 706 (Tex. App.–San Antonio 1986, no writ) (defective service because the return receipt was signed by Charlotte Young but the addressee was Pharmakinetics Laboratories, Inc. c/o Steven Woodman); *Union Pacific Corp.*, 49 S.W.3d at 79 (service held "fatally defective" for not bearing the handwritten signature of the addressee).

Here, Plaintiff did not file **any** return receipt, much less a return receipt bearing the signature of Joseph J. Pagliarulo, i.e., the addressee on the summons.  *See* Dkt. No. 7; *see also* Dkt.

No. 11-2, ¶ 6.  Under Texas law, Mr. Freeman's "Certificate of Service" is invalid and of no effect.

*See Wilson*, 800 S.W.2d at 836.  Accordingly, no service occurred; JPM "had no duty to respond

to the complaint," and did not default.  *See Espinoza*, 44 F.4th at 267.  Further, due to Plaintiff's

failure to validly serve JPM, this Court lacks personal jurisdiction over JPM.  *See Harper*, 260

F.3d at 393 (holding the court "must set aside a default judgment as void if it determines that it

lacked personal jurisdiction over the defendant because of defective service of process.")); *see also*

*Murphy Bros.*, 526 U.S. at 104 (valid service of process is generally required for a court to exercise

personal jurisdiction over a defendant).

Accordingly, the Clerk's Default (Dkt. No. 9) should be vacated and set aside, and the

Complaint (Dkt. No. 1) should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(2)

and 12(b)(5).  Plaintiff does not oppose this requested relief.

**III.   LEAVE TO AMEND SHOULD NOT BE GRANTED BECAUSE PLAINTIFF HAS CHOSEN TO PURSUE A MOTION FOR DEFAULT JUDGMENT WITH FULL KNOWLEDGE THAT JPM WAS NOT VALIDLY SERVED AND DID NOT, IN FACT, COMMIT ANY ACT OF INFRINGEMENT.**

Finally, in dismissing the Complaint leave to amend should not be granted.  The Plaintiff

is aware that JPM was not validly served; it is also aware that JPM did not, in fact, post/display

the accused Video on the FB Account.  *See* Exs. A-E.  Plaintiff has full knowledge that M3—not

JPM—posted the accused Video to the FB Account.  *See* Exs. A-E.  Further, the allegations in the

Complaint do not provide any plausible basis for Plaintiff to infer that JPM posted the accused

Video to the FB Account, as opposed to any other person and/or entity which is authorized to post

content.  Indeed, the FB Account specifically states: "This Page can have multiple admins.  They

may have permission to post content, comment or send messages as the Page."  *See, e.g.*, Ex. H

(Printout of FB Account "transparency page" from May 17, 2024, attached hereto).[3]

---

[3] As part of the FB Account referenced in the Complaint, this exhibit is incorporated into the Complaint and should be considered by the Court.  *See infra*, page 15.

Despite that knowledge, and despite JPM's willingness to waive service of process, Plaintiff did not inform the Court that no valid service of process occurred.  It did not seek to have the Clerk's Default vacated.  Instead, when the Court presented it the options to either (1) pursue a default judgment, (2) explain why a default judgment was inappropriate, or (3) voluntarily dismiss the cases, (*see* Dkt. No. 10), Plaintiff proceeded with a Motion for Default Judgment based on allegations it knew to be false and based on service it knew to be invalid.  Therefore, leave to amend should not be granted.

Since January 24, 2024, counsel for M3 and JPM have repeatedly addressed to Plaintiff's counsel that no valid service of process occurred.  *See* Exs. B-F.  JPM was willing to waive service of process under Rule 4, so that Plaintiff could consider whether it wanted to voluntarily dismiss the case based on the information that M3—not JPM—posted the accused Video on the FB Account.  *See* Exs. D-F; *see also* Ex. A (M3 admitting to posting the accused Video on the FB Account).  Despite knowing that service had not occurred, Plaintiff did not request that the Default be set aside for a lack of service.  Plaintiff did not inform the Court that service had not occurred. Instead, Plaintiff filed a motion for default judgment relying on allegations of infringement that it knew to be false, and relying on improper service to lead the Clerk into entering a Default.  *See supra*, §§I-II; *see also* Exs. A-G.

Here, the only specific factual allegation is that the accused Video was displayed on the FB Account—a social media account on a website owned by Facebook.  *See, e.g.*, Compl. ¶ 22. Beyond that, all other allegations are conclusory assertions and threadbare recitals of the elements of a cause of action for copyright infringement.  *See, e.g.*, Compl. ¶¶ 3-4, 19-41.  Plaintiff provides no evidence or factual allegation that the accused Video was posted *by JPM*; yet the Complaint conclusorily states this, without any evidentiary basis, contrary to the express statements on the

Facebook page itself.  *See* Ex. H (Page transparency "admin" info, "[t]his page can have multiple admins.  They may have permission to post content, comment or send messages as the Page.").

Because Plaintiff's Complaint is based on the FB Account, *see, e.g.*, Compl. ¶¶ 3-4, 19-41, and cites to a single image from that account, Dkt. No. 11-2, it is proper for the Court to consider the entirety of the FB Account, including the information and page transparency information provided in connection with this motion.  *See, e.g.*, *Callier v. Texas*, No. EP-23-CV-364-FM, 2024 WL 1451135 (W.D. Tex. Apr. 2, 2024) (website content is incorporated into a complaint based on reference in the complaint); *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) (courts consider the entire complaint, including documents incorporated by reference); *Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 694 n.3 (S.D.N.Y. 2009) (considering, on a Rule 12(b)(6) motion, a website and drawing "facts . . . from the Court's own review of the Website" because "the Website is incorporated by reference into the Complaint" (citing cases where courts likewise have considered such incorporated websites)).

Plaintiff has no evidentiary basis for its allegations that JPM—as opposed to another person or entity with "admin" status for the FB Account (e.g., M3)—uploaded and thereby displayed the accused Video on the FB Account.  The entire basis for Plaintiff's claim rests of the mere *presence* of the accused Video on the FB Account and the unreasonable inference Plaintiff has drawn from that single fact.  *See* Compl. ¶¶ 3-4, 19-41.  And Plaintiff has been aware that M3—not JPM— posted the accused Video to the FB Account, and M3 has admitted to having posted that content.  *See, e.g.*, Ex. A (M3 admitting to posting the Video); Ex. E (attaching the M3-JPM agreement).

Because Plaintiff has chosen to improperly proceed with this action despite clearly invalid service of process, accepting and then rejecting JPM's offer for it to correctly serve the Complaint, and is now proceeding on factual allegations that it knows to be false, leave to amend should not

be granted.  Plaintiff has known since at least January 24, 2024, that (1) Mr. Freeman is not authorized to serve process by mail, and (2) that Mr. Freeman's "Certificate of Service" is not valid.  *See* Ex. B.  Plaintiff has been aware since December 22, 2023, that JPM did not, in fact, post/display the accused Video on the FB Account; M3 did.  *See* Exs. A-E.  Despite that knowledge, Plaintiff has chosen to proceed with a motion before this Court that advance es allegations known to be false.  Plaintiff had the opportunity to correct the record with the Court and accept JPM's offer to waive service.  In failing to do so, Plaintiff has vexatiously multiplied the costs of this proceeding and inappropriately submitted argument and declarations known to be false.  Leave to amend should not be granted.  Plaintiff opposes this request.

## CONCLUSION

For the foregoing reasons, JPM respectfully requests that the Court vacate and set aside the Clerk's Default based on invalid service, and dismiss the Complaint based on a lack of personal jurisdiction due to invalid service.  JPM also respectfully requests that the Court award it its reasonable attorneys' fees for having to prepare and file this Motion (and the separately filed opposition to the motion for default judgment) which should not have been necessary.

Dated: May 24, 2024                           Respectfully submitted,

*/s/ Andrew D. Lockton*
Edward F. McHale
Florida Bar No. 190300
Andrew D. Lockton
Florida Bar No. 115519;
California Bar No. 301186
**MCHALE & SLAVIN, P.A.**
2855 PGA Boulevard
Palm Beach Gardens, Florida 33410
Telephone:     (561) 625-6575
E-mail:          emchale@mchaleslavin.com
                 alockton@mchaleslavin.com
                 litigation@mchaleslavin.com
*Attorneys for Joe Pags Media, LLC*

16

## CERTIFICATE OF CONFERENCE

I HEREBY CERTIFY that prior to filing the foregoing Motion counsel for Defendant repeatedly attempted to address the matter with counsel for Plaintiff, as set forth in Exhibits A through G, attached hereto.  On May 20, 2024, I wrote again to counsel for the Plaintiff, Mr. Freeman and Mr. Sanders, to inform them that the foregoing Motion was going to be filed and requested their advisement as to whether they would strike the Motion for Default Judgment and inform the Court that valid service had not occurred and requested a conference.  Mr. Freeman and I discussed the issues by email between May 21, 2024, and May 23, 2024.  Plaintiff's position, as stated by Mr. Freeman, is as follows:

> Plaintiff will not oppose either motion [to vacate the Clerk's default and to dismiss pursuant to Fed. R. Civ. P. 12(b)(5)], but will request leave of Court to perfect service, particularly in light of defendant's efforts to dodge service. Shafik v. Aston Martin Lagonada of N. Am., No. 3:23-CV-00207-MPS, 2024 WL 1072868, at *5 (D. Conn. Mar. 12, 2024) ("the appropriate remedy at this time is to give plaintiff a furtehr opportunity to perfect service").

> Accordingly, Plaintiff **does not oppose** vacating the Clerk's default and **does not oppose** granting Defendant's 12(b)(5) motion.

> Plaintiff **opposes** the request that the complaint is dismissed with prejudice or without leave to amend, as Plaintiff has stated it will request leave to perfect service.

_/s/ Andrew D. Lockton_
Andrew D. Lockton

17

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing Motion to Set Aside the Clerk's Default and Dismiss Plaintiff's Complaint was filed electronically with the Court on May 24, 2024, and thereby served on counsel of record via the Court's CM/ECF system.  Counsel includes:

SANDERS LAW GROUP
Craig Sanders
James H. Freeman
333 Earle Ovington Blvd., Suite 402
Uniondale, NY 115533
Telephone:     (516) 203-7600
Email:          csanders@sanderslaw.group
               jfreeman@sanderslaw.gropu

*Attorneys for Plaintiff Global Weather Productions, LLC*

/s/ Andrew D. Lockton
Andrew D. Lockton