# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

GLOBAL WEATHER
PRODUCTIONS, LLC,

     *Plaintiff,*

v.

JOE PAGS MEDIA, LLC, and
McLAUGHLIN MEDIA
MANAGEMENT LLC d/b/a M3
MEDIA MANAGEMENT,

     *Defendants.*

Case No. 5:23-cv-01350-JKP-ESC

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Defendants Joe Pags Media, LLC ("JPM") and McLaughlin Media Management LLC d/b/a M3 Media Management ("M3") (collectively, "Defendants") respectfully move, pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6), for the Court to dismiss Plaintiff Global Weather Productions, LLC's Second Amended Complaint (ECF No. 25) and the relief requested therein, as set forth in the accompanying memorandum of law.

Dated: August 26, 2024

Respectfully submitted,

*/s/ Andrew D. Lockton*
Edward F. McHale
FL Bar No. 190300
Andrew D. Lockton
FL Bar No. 115519
CA Bar No. 301186
**MCHALE & SLAVIN, P.A.**
2855 PGA Boulevard
Palm Beach Gardens, Florida 33410
(561) 625-6575
emchale@mchaleslavin.com
alockton@mchaleslavin.com
litigation@mchaleslavin.com

*Attorneys for Defendants Joe Pags Media, LLC and
McLaughlin Media Management, LLC*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................... iii

INTRODUCTION ............................................................................... 1

FACTUAL ALLEGATIONS ................................................................ 11

ARGUMENTS .................................................................................... 5

I.   Plaintiff's Second Amended Complaint Should Be Dismissed Because It Fails to Establish Plaintiff's Standing, and Its Conclusory Allegations of Ownership are Insufficient in Light of Clement's Separately Filed Action Asserting Ownership of the Same Work ............................... 5

II.  The Second Amended Complaint Should Be Dismissed Because Plaintiff's Conclusory Allegations, and Contradictory Allegations, Fail to State a Claim Upon Which Relief Can Be Granted ...................... 6

     A.   All Counts Should Be Dismissed Because the SAC Fails to Allege That the Allegedly Copied Video is Registered, or Alternatively, Fails to Allege That the Registered Video was Copied .............. 8

     B.   Count I Should Be Dismissed Because the Second Amended Complaint Fails to Plausibly Allege Facts Supporting a Claim for Direct Copyright Infringement by Either Defendant ................ 10

          1.   The SAC Fails to Plausibly Allege Direct Infringement by JPM, Because the Alleged Infringing Act Was Performed by M3 ...................................................................... 10

          2.   The SAC Fails to Plausibly Allege Direct Infringement by M3, Because the Plaintiff's Conclusory Allegations are Contradicted by the Evidence Cited by Plaintiff ........... 11

     C.   Count II Should Be Dismissed Because the Second Amended Complaint Fails to Plausibly Allege Facts Supporting a Claim for Contributory Copyright Infringement ................................... 13

     D.   Count III Should Be Dismissed Because the Second Amended Complaint Fails to Plausibly Allege Facts Supporting a Claim for Vicarious Copyright Infringement ....................................... 14

III. Defendant M3 Should Be Dismissed From This Action Because It is Not Subject to Personal Jurisdiction in Texas ................................... 17

CONCLUSION ................................................................................ 18

i

CERTIFICATE OF SERVICE ................................................................ 20

CERTIFICATE OF CONFERENCE ..................................................... 20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alcatel USA, Inc. v. DGI Techs., Inc.*,
  166 F.3d 772 (5th Cir. 1999) ................................................................................ 13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................... 6, 7, 15

*Atl. Recording Corp. v. Project Playlist, Inc.*,
  603 F. Supp. 2d 690 (S.D.N.Y. 2009) ...................................................................... 7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................... 6, 7, 8

*Bell v. Crawford Indep. Sch. Dist.*,
  No. 6:19-cv-268-ADA, 2020 WL 5370592, 2020 U.S. Dist. LEXIS 165345 (W.D. Tex.
  Feb. 13, 2020) ............................................................................................ 16

*Bell v. Eagle Mt. Saginaw Indep. Sch. Dist.*,
  529 F. Supp. 3d 605 (N.D. Tex. 2021) ...................................................... 6, 7, 8, 15

*Bell v. Llano Indep. Sch. Dist.*, No. 6:19-cv-265-ADA, 2020 WL 5370591, 2020 U.S. Dist.
  LEXIS 165908 (W.D. Tex. Feb. 13, 2020) .............................................................. 16

*Callier v. Texas*,
  No. EP-23-CV-364-FM, 2024 WL 1451135, 2024 U.S. Dist. LEXIS 61076 (W.D. Tex.
  Apr. 2, 2024) .............................................................................................. 7

*Collins v. Morgan Stanley Dean Witter*,
  244 F.3d 496 (5th Cir. 2000) .............................................................................. 8

*Cuvillier v. Taylor*,
  503 F.3d 397 (5th Cir. 2007) .............................................................................. 8

*Ellison v. Robertson*,
  357 F.3d 1072 (9th Cir. 2014) ............................................................................ 15

*Fed. Recovery Servs., Inc. v. United States*,
  72 F.3d 447 (5th Cir. 1995) ............................................................................... 6

*Fourth Estate Pub. Ben. Corp. v. Wall-Street.com, LLC*,
  586 U.S. 296 (2019) ...................................................................................... 9

*Geophysical Serv., Inc. v. TGS-NOPEC Geophysical Co.*,
  850 F.3d 785 (5th Cir. 2017) ......................................................................... 13, 14

iii

Cases—continued

*Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*,
    921 F.3d 522 (5th Cir. 2019) ............................................................... 17, 18

*Johnston v. Multidata Sys. Int'l Corp.*,
    523 F.3d 602 (5th Cir. 2008) ...................................................................17

*MGM Studios, Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005) ........................................................................... 13, 14

*Panda Brandywine Corp. v. Potomoc Elec. Power Co.*,
    253 F.3d 865 (5th Cir. 2001) ...................................................................18

*Pervasive Software, Inc. v. Lexware GmbH & Co.*,
    68 F.3d 214 (5th Cir. 2012) .....................................................................17

*Randall D. Wolcott, M.D., P.A. v. Sebelius*,
    635 F.3d 757 (5th Cir. 2011) ..................................................................... 7

*Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*,
    9 F.3d 415 (5th Cir. 1993) ......................................................................17

*Simmons v. Peavy-Welsh Lumber Co.*,
    113 F.2d 812 (5th Cir. 1940) ........................................................... 8, 16, 17

*Sonnier v. State Farm Mut. Auto. Ins. Co.*,
    509 F.3d 673 (5th Cir. 2007) ..................................................................... 7

*Summit Off. Park, Inc. v. U.S. Steel Corp.*,
    639 F.2d 1278 (5th Cir. 1981)................................................................... 6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)................................................................................. 7

*Walden v. Fiore*,
    571 U.S. 277 (2014) ...............................................................................17

*Wilson v. Belin*,
    20 F.3d 644 (5th Cir. 1994) .....................................................................17

*ZeniMax Media, Inc. v. Oculus VR, LLC*,
    166 F. Supp. 3d 697 (N.D. Tex. 2015).....................................................15

**Statutes**

Copyright Act of 1976, 17 U.S.C. § 101, *et seq.*
 17 U.S.C. § 107 ................................................................................................13
 17 U.S.C. § 411(a) ............................................................................................ 9
 17 U.S.C. § 501(b) ............................................................................................ 5

**Rules**

Federal Rules of Civil Procedure
 8................................................................................................................... 6
 8(a) ............................................................................................................. 6
 8(a)(2) ........................................................................................................ 6
 12(b)(1) ................................................................................................... 1, 6
 12(b)(2) ....................................................................................................... 1
 12(b)(6) ............................................................................................ 1, 5, 6, 7
 15................................................................................................................. 6

Defendants Joe Pags Media, LLC (hereafter "JPM") and McLaughlin Media Management d/b/a M3 Media Management (hereafter "M3) (collectively, "Defendants") respectfully move this Court to dismiss the Second Amended Complaint (ECF No. 25, "SAC") filed by Plaintiff Global Weather Productions, LLC ("Plaintiff") and the specific relief requested therein, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6), as set forth below.

Pursuant to the Court's Standing Order in Civil Cases, Defendants notified Plaintiff of their intent to seek dismissal of the claims through a letter sent on July 22, 2024. *See* Exhibit A, attached. In response, Plaintiff filed an Advisory of its intent to amend the pleading, *see* ECF No. 24, and on August 5, 2024, Plaintiff filed a Second Amended Complaint, ECF No. 25. As addressed herein, the Second Amended Complaint remains deficient and should be dismissed for the reasons addressed herein.

## INTRODUCTION

Plaintiff filed the SAC in an attempt to overcome the deficiencies identified in the amended complaint. *See* ECF Nos. 24, 25; *cf.* Ex. A. Nevertheless, the SAC fares no better and has not overcome the deficiencies identified in the prior pleading. More specifically, (1) the SAC fails to provide a plausible factual basis that Plaintiff is the owner of the asserted copyright, particularly in light of Plaintiff's counsel filing, and pursuing, a separate action asserting that Mr. Michael Brandon Clement owns the asserted copyright registration; (2) the SAC fails to plausibly allege that the accused video is similar to Plaintiff's copyrighted Video; (3) the SAC fails to plausibly allege that either JPM or M3 is liable for direct copyright infringement; (4) the SAC fails to plausibly allege that JPM is liable for contributory or vicarious infringement based on M3's acts; and (5) fails to establish personal jurisdiction of M3 in Texas.

## FACTUAL ALLEGATIONS

1.    The original complaint in this action was filed October 25, 2023. (ECF No. 1.)

2.    The SAC was filed August 5, 2024. (ECF No. 25.)

3.      Plaintiff is a Wyoming limited liability company, with a principal place of business in Sheridan, Wyoming.  (SAC ¶ 6.)

4.      Defendant M3 is a foreign limited liability company with a principal place of business in New York, New York.  (SAC ¶ 8.)

5.      The SAC asserts claims for copyright infringement based on the copyright in a video of water rescues occurring on Interstate 30 in downtown Dallas, after a flash flooding event in August 2022 (the "Video"). (SAC ¶ 2.)

6.      The SAC alleges that the Video was created by professional videographer Michael Brandon Clement ("Clement"), who "personally selected the subject matter, timing, lighting, angle, perspective, depth, lens and camera equipment used to capture the image," as well as "the subject matter and all of the cinematic elements in the Video." (SAC ¶¶ 13, 17.)

7.      The SAC alleges that the Video was created with the intention of it being used commercially for the purpose of new reporting and documentation of a weather-related event in the Dallas area.  (SAC ¶ 19.)

8.      The SAC alleges that the asserted Video is three (3) minutes and seven (7) seconds in duration and was first published by Clement on or about August 22, 2022, via YouTube at URL: https://www.youtube.com/watch?v=rhR-R-cgAXA.  (SAC ¶ 16.)

9.      The current video at the same YouTube link provided in the SAC is three (3) minute and thirty-two (32) seconds in duration and was published by WxChasing on August 22, 2022, as shown in the screenshot attached as Exhibit "B".  The link provided on this YouTube page, WxChasing.com, shows that WxChasing is affiliated with Clement, as shown in the screenshot attached as Exhibit "C".

10.     The terms of service for YouTube, attached as Exhibit "D", state that by uploading content to YouTube, you grant, *inter alia*, "each other user of the Service a worldwide, non-exclusive, royalty-free license to access your Content through the Service, and to use that Content, including to reproduce, prepare derivative works, display, and perform it, only as enabled by a feature of the Service (such as video playback or embeds).  For clarity,

2

this license does not grant any rights or permissions for a user to make use of your Content independent of the Service."  (Ex. D, pp.4–5.)

11.     The SAC attaches an alleged "screengrab from the Video for reference" as exhibit 1 to the SAC (ECF No. 25-1), but the attached screenshot shows an image from a video that is three (3) minute and thirty-one (31) seconds in duration, as shown in the lower right corner of the image. (SAC ¶ 16; ECF No. 25-1.)

12.     The SAC alleges that the asserted subject Video—i.e., the three (3) minutes and seven (7) second video—was registered with the U.S. Copyright Office under Registration No. PA 2-374-324 (the "324 Registration"). (SAC ¶¶ 16, 18.)

13.     The SAC alleges that "[o]n June 4, 2023, subsequent to the date of the 324 Registration, Clement assigned all rights, titles [*sic*] and interests in the copyright to the Video to Plaintiff by a written assignment agreement, including the right to bring this lawsuit." (SAC ¶ 20.)

14.     However, on May 29, 2024, Plaintiff's counsel filed a separate complaint with exhibits to commence a separate civil action, styled *Michael Brandon Clement v. IHeartMedia, Inc.*, Case No. 5:24-cv-00581-OLG, ECF Nos. 1, 1-1, 1-2, 1-3 (W.D. Tex. May 29, 2024), attached hereto as Exhibit "E" (the "Clement Complaint").

15.     In the Clement Complaint, Plaintiff's counsel—representing Clement—assert that **Clement** "owns the rights and licenses for various uses including online and print publications" for the same Video Plaintiff is asserting in this action.  (Ex. E, ¶¶ 2, 40; *see also* Ex. E, pp.8–9 (exhibits to Clement Complaint).)

16.     As reflected on PACER for Civil Action No. 5:24-cv-00581-OLG, a printout of which is attached as Exhibit "F", the Clement Complaint was served on August 9, 2024.

17.     The SAC alleges that JPM owns and controls a Facebook Account (the "FB Account"), which is part of and used to advance JPM's commercial enterprise in the news reporting industry.  (SAC ¶¶ 3, 22–23.)

3

18.     The SAC alleges that M3 contracted with JPM to provide web management and/or marketing services for JPM and at relevant times participated in the operations of the FB Account.  (SAC ¶¶ 4, 26.)  As shown in the contract, attached as Exhibit "G" (*see also* ECF No. 13-6), M3 was hired to provide services including: "Monthly Support Content and Site Staff, Social Media Oversight and Posting."  (Ex. G, p.4.)

19.     The SAC alleges that "[t]he FB Account is monetized in that it promotes [JPM's] talk show and media business and, upon information and belief, [JPM] profits from these activities."  (SAC ¶ 25.)

20.     The SAC alleges that JPM received a financial benefit from the video being posted on the FB Account based on "advertising revenue from the increased traffic to [the] FB Account and from increase [*sic*] in fees paid by advertisers and sponsors," that "operating the FB Account . . . promotes [JPM's] corporate services and brandname [*sic*]," and benefiting from "the appeal or 'draw' of Plaintiff's Video to increase user traffic to the FB Account, thereby increasing advertising or other revenue, and/or by increasing [JPM's] customer base." (SAC ¶¶ 44, 74–78.)

21.     The FB Account, however, shows that it does not run ads, as shown in the screenshot from the FB Account attached as Exhibit "H".

22.     The SAC alleges "upon information and belief," that JPM "displayed a substantial portion of the Video, about 59 seconds in duration, on the FB Account as part of an on-line post," and provides a screenshot from that post as exhibit 2 (ECF No. 25-2).  (SAC ¶ 27; *see also* ECF No. 25-2.)  The SAC alleges "alternative[ly], upon information and belief," "M3 Media displayed a substantial portion of the Video on the FB Account."  (SAC ¶ 28.)

23.     The SAC alleges that JPM or alternatively, M3, "copied and/or displayed a substantial portion of [the] Video on the FB Account."  (SAC ¶¶ 29–30, 32.)

24.     The SAC alleges that the alleged infringement "is an exact copy of a substantial portion of [the] Video that was directly copied and displayed by [JPM] and/or [M3] on the FB Account."  (SAC ¶ 34.)

25.     The screenshot of the alleged infringement, (ECF No. 25-2), shows that the accused video bears the federally registered trademark of WeatherNation TV, Inc. in the upper left corner.  A copy of that federal registration is attached as Exhibit "I", reflecting that the mark is registered in class 042 for the purpose of meteorological forecasting.  (Ex. I, p.1.)

## ARGUMENTS

I.    **Plaintiff's Second Amended Complaint Should Be Dismissed Because It Fails to Establish Plaintiff's Standing, and Its Conclusory Allegations of Ownership are Insufficient in Light of Clement's Separately Filed Action Asserting Ownership of the Same Work.**

Plaintiff's conclusory assertion of ownership of the copyrighted Video is contradicted by its own attorneys filing a separate lawsuit asserting that Clement—not Plaintiff Global Weather Productions—"owns the rights" in the Video (Ex. E, ¶ 2) and that "[t]he Video is an original, creative work in which [Clement] owns a valid copyright," (*id.*, ¶ 40).  Those assertions of counsel cannot be true if Plaintiff Global Weather owns the copyright in the same work.  To be entitled to bring an infringement action in a district court, a plaintiff must be the legal or beneficial owner of a copyrighted work.  17 U.S.C. § 501(b).  Here, Plaintiff provides only conclusory allegations of ownership of the copyright and a reference to a written assignment from June 4, 2023 (*see* SAC ¶¶ 2, 20–21), but Plaintiff's *attorneys* have separately represented (as officers of the Court) to a separate Judge in this District that Clement—not Plaintiff—owns the copyright in the Video, (*see* Exs. E, F).

This deficiency was addressed to Plaintiff and its counsel in Defendants' Rule 12(b)(6) letter, pursuant to this Court's standing order, addressing that "after the original complaint was filed, [Plaintiff's counsel's] firm filed a separate lawsuit on behalf of **Mr. Clement**, not Global Weather, asserting that **Mr. Clement** owns the copyrights in this work, not Global Weather."  (*See* Ex. A, pp.1–2) (emphasis in original).  Rather than dismiss the action by Clement, counsel subsequently served the Clement Complaint, reaffirming that Clement is the owner of the copyright in the Video, not Global Weather.  (*See* Ex. F, p.2.)  If Clement has standing to sue, then Clement owns the copyright.  Even if Clement executed an assignment

of all rights on June 4, 2023 (*see* SAC ¶ 20), if Clement had standing to sue on May 29, 2024 (*see* Ex. E), and maintained it through, at least, August 8, 2024 (*see* Ex. F), that means that Global Weather lacks standing to have filed the Second Amended Complaint and this action should be dismissed.

Plaintiff's counsel has stated in correspondence that it intends to "amend" the Clement action to substitute in Global Weather as the Plaintiff, but that merely reinforces the fact that there is a serious standing problem.   "Rule 15 does not permit a plaintiff [to] amend[] its complaint to substitute a new plaintiff in order to cure a lack of subject matter jurisdiction." *Fed. Recovery Servs., Inc. v. United States*, 72 F.3d 447, 453 (5th Cir. 1995); accord *Summit Off. Park, Inc. v. U.S. Steel Corp.*, 639 F.2d 1278, 1282 (5th Cir. 1981) ("where a plaintiff never had standing to assert a claim against the defendants, it does not have standing to amend the complaint and control the litigation by substituting new plaintiffs, a new class, and a new cause of action.").  If Clement is able to "amend" his lawsuit, that means that Clement—not Global Weather—owned the copyright in the Video while this action was pending and contradicts the assertions of ownership in the Second Amended Complaint.

Accordingly, the Second Amended Complaint should be dismissed pursuant to Rules 12(b)(1) and 12(b)(6), Fed. R. Civ. P., for failing to establish Plaintiff's ownership of the copyright at issue and its standing to assert that copyright.

## II.   The Second Amended Complaint Should Be Dismissed Because Plaintiff's Conclusory Allegations, and Contradictory Allegations, Fail to State a Claim Upon Which Relief Can Be Granted.

"Federal Rule of Civil Procedure 8(a) requires a claim for relief to contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  *Bell v. Eagle Mt. Saginaw Indep. Sch. Dist.*, 529 F. Supp. 3d 605, 610 (N.D. Tex. 2021) (quoting Fed. R. Civ. P. 8(a)(2)).  "Rule 8 does not require detailed factual allegations, but it 'demands more than the unadorned, the-defendant-unlawfully-harmed-me accusation.'"  *Ibid.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))).  "To

defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Ibid.* (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ibid.* (quoting *Iqbal*, 556 U.S. at 663). While not a "probability requirement," the standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 610–11 (quoting *Iqbal*, 556 U.S. at 663). "'Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between the possibility and plausibility of enti-tlement to relief." *Id.* at 611 (quoting *Iqbal*, 556 U.S. at 663 (quoting *Twombly*, 550 U.S. at 557)).

"In reviewing a Rule 12(b)(6) motion, the Court must accept the well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff." *Bell*, 529 F. Supp. 3d at 611 (citing *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007)). "The Court is not bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ibid.* (citing *Iqbal*, 556 U.S. at 678–79). "'Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Ibid.* (quoting *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011)) (citations omitted in original); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also, e.g.*, *Callier v. Texas*, No. EP-23-CV-364-FM, 2024 WL 1451135, 2024 U.S. Dist. LEXIS 61076, *7-8 (W.D. Tex. Apr. 2, 2024) (website content is incorporated into a complaint based on reference in the complaint); *Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 694 n.3 (S.D.N.Y. 2009) (consider-ing, on a Rule 12(b)(6) motion, a website and drawing "facts . . . from the Court's own review of the Website" because "the Website is incorporated by reference into the Complaint" (citing cases where courts likewise have considered such incorporated websites)). "A court may also consider documents that a defendant attaches to a motion to dismiss if they are referred to in

the plaintiff's complaint and are central to the plaintiff's claims." *Bell*, 529 F. Supp. 3d at 611 (citing *Collins v. Morgan Stanley Dean Witter*, 244 F.3d 496, 498–99 (5th Cir. 2000)).

"When there are well-pleaded factual allegations, the Court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief." *Bell*, 529 F. Supp. 3d at 611. However, "[w]here there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control." *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940); *accord ibid.* ("The litigant may be defeated by his own evidence, the pleader by his own exhibits; the appellant has become enmeshed in his own prolixity."). Further, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (alterations omitted) (quoting *Twombly*, 550 U.S. at 558).

### A.  All Counts Should Be Dismissed Because the SAC Fails to Allege That the Allegedly Copied Video is Registered, or Alternatively, Fails to Allege That the Registered Video was Copied.

In attempting to overcome the conclusory and insufficient allegations of infringement in the previous pleadings, the SAC now includes allegations that lead to the conclusion that the allegedly copied video—shown in ECF No. 25-1—is not the Video registered under Registration No. PA 2-374-324 (the "324 Registration"). (*Compare* Ex. A *with* SAC ¶¶ 2, 16, 18 *and* ECF No. 25-1.)  The exhibit (ECF No. 25-1), shows a screenshot that is not from the "Video" described in the SAC as being created by Clement, assigned to Plaintiff, and registered with the Copyright Office.   The registered "Video" is three (3) minutes and seven (7) seconds in duration (SAC ¶ 16), and is registered with the Copyright Office as the 324 Registration (SAC ¶ 18).  The attached exhibit, however, is a still image from a video that is three (3) minutes and thirty-one (31) seconds—not the registered "Video"—as shown below:

8

Case No.: 5:23-cv-1350

**EXHIBIT 1:** STILL FRAME OF VIDEO





ECF No. 25-1.

"Before pursuing an infringement claim in court . . . a copyright claimant generally must comply with §411(a)'s requirement that 'registration of the copyright claim has been made.'" *Fourth Estate Pub. Ben. Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 301 (2019) (quoting 17 U.S.C. § 411(a)). "Under §411(a), 'registration . . . has been made,' and a copyright owner may sue for infringement, when the Copyright Office registers a copyright." *Id.* at 302; *accord id.* at 309.

9

The SAC alleges infringement based on the "exact" reproduction of a portion of the 3:31 video, based on the exhibit (ECF No. 25-1), or alternatively, an "exact" reproduction of a portion of the registered Video, based on the conclusory allegations.  If the former, the SAC does not allege that the 3:31 video is registered; if the latter, the SAC provides no factual basis to support a claim of infringement.  Further, the exhibits reflect only a general similarity between the subject matter of accused video and the 3:31 video (*compare* ECF No. 25-2 *with* ECF No. 25-1)—contradicting the SAC's conclusory allegation that the FB Account included a copy of the registered "Video", i.e., the 3:07 Video.

Accordingly, all claims should be dismissed for failing to plausibly allege an actionable infringement claim.  The factual allegations provide only a basis for a claim of alleged infringement of the copyright in the unregistered 3:31 video, not the registered "Video".

**B.     Count I Should Be Dismissed Because the Second Amended Complaint Fails to Plausibly Allege Facts Supporting a Claim for Direct Copyright Infringement by Either Defendant.**

**1.     The SAC Fails to Plausibly Allege Direct Infringement by JPM, Because the Alleged Infringing Act Was Performed by M3.**

The SAC fails to plausibly allege direct copyright infringement by JPM.  The SAC alleges alternate theories that either JPM, or M3, is liable for direct copyright infringement, based solely on speculation and the presence of the accused video on the FB Account.  (*See* SAC ¶¶ 22–34; *see also* ECF No. 25-2.)  Plaintiff acknowledges, however, that JPM contracted M3 to provide web services (*see* SAC ¶ 26),[1] and the contract specifies that M3 would provide "Social Media Oversight and Posting" for JPM, (Ex. G, p.4).  Further, the FB Account itself, on the "about" page, reflects that the "Page can have multiple admins," and that "[t]hey may have permission to post content, comment or send messages as the Page" (Ex. H, p.1),

---

[1] M3's responsibility for posting the accused video to the FB Account was admitted to Plaintiff's counsel prior to the filing of the SAC.  *See, e.g.*, ECF Nos. 13-2, 13-4, 13-6.

preventing the FB Account itself from providing a factual basis as to a specific person or entity having posted the accused video.

Based on the evidence incorporated into the pleading, which supersedes the conclusory allegations, the SAC provides no factual basis for a claim of direct infringement against JPM.  Even the presence of the accused video on the FB Account does not form a basis for alleging an act of infringement **by JPM**, as opposed to any of the other persons and/or entities which are authorized to post on that account, such as M3.  *See, e.g.*, Ex. G (M3 contract for performing, *inter alia*, "Social Media Oversight and Posting"); Ex. H (Printout of FB Account "transparency page" from May 17, 2024, attached hereto).  Accordingly, the claim against JPM for direct copyright infringement in Count I should be dismissed for failing to plausibly allege a claim for relief.

### 2. The SAC Fails to Plausibly Allege Direct Infringement by M3, Because the Plaintiff's Conclusory Allegations are Contradicted by the Evidence Cited by Plaintiff.

M3 posted the accused video on the FB Account, *see, e.g.*, ECF Nos. 13-2, 13-4, 13-6; *see also* Ex. G, but the SAC fails to plausibly allege that M3 committed an act of copyright infringement when it posted the accused video.  The SAC alleges two acts of direct infringement—reproduction and display—based on the presence of the accused fifty-nine (59) second video on the FB Account, characterizing the accused video as a "substantial portion" of the registered Video.  (SAC ¶¶ 27–28, 32, 34.)  The SAC alleges that the accused 0:59 video "is an exact copy of a substantial portion of Plaintiff's copyrighted Video" (SAC ¶ 34), relying on the alleged similarity shown in exhibits 1 and 2 to the SAC, (SAC ¶¶ 16, 27; ECF Nos. 25-1, 25-2).  Comparing those exhibits, however, demonstrates that (1) no plausible claim of copyright infringement exists, as based on a comparison of the exhibits, and (2) that the accused 0:59 video is a reposting of a WeatherNation TV news video and, therefore, **not** an "exact copy" of the registered Video.

Exhibits 1 and 2 to the SAC do not provide any plausible basis for a copyright infringement claim. (*Compare* ECF No. 25-1 *with* ECF No. 25-2.)  Though both exhibits show a screenshot from the same flood in Dallas, Texas in August 2022, the specific images show different subject matter, different angles, different camera position, etc.  (*Compare* ECF No. 25-1 *with* ECF No. 25-2; *see also* Ex. A, p.2 (addressing these issues).)  Though the exhibits show two *different* still images showing cars underwater during a flood (ECF No. 25-1) and firefighters rescuing people from those cars during a flood (ECF No. 25-2), the exhibits do not provide a plausible factual basis to infer that the still images are from the same video.

Further, Exhibit 2 to the SAC specifically contradicts the SAC's conclusory allegation that the "[alleged] Infringement is an exact copy of a substantial portion of Plaintiff's copyrighted Video.  (*See* SAC ¶ 27; *compare* ECF No. 25-2 *with* SAC ¶ 34.)  The accused 0:59 video, shown in SAC Exhibit 2, is a screenshot from a **WeatherNation TV news video**, reflecting modifications, at least,[2] in overlaying the WeatherNation TV, Inc. trademark and "Dallas, TX" location information on a video of a flood rescue.  (*See* ECF No. 25-2; *see also* Ex. I (trademark registration).)  The Exhibit itself shows that the accused 0:59 video cannot be "an exact copy" of the registered "Video"; the registered "Video" does not include the Weather-Nation TV trademark or the "Dallas, TX" information.  (*Cf.* ECF Nos. 25-1, 25-2.)  As a result, the exhibit demonstrates only that the accused 0:59 video is a WeatherNation TV video and, without more, there is no plausible basis to allege that the video from WeatherNation TV is the same video as the registered Video, or that the posting of the WeatherNation TV video is an act of infringement.[3]  (*See* ECF No. 25-2.)

---

[2] It is unclear if other modifications exist because the only evidence provided in the SAC is the attached screenshot, ECF No. 25-2.  If the underlying video shown in the screenshot is indeed the same video, it is unclear at this point whether WeatherNation included other modifications, what rights WeatherNation may have had when creating the accused 0:59 video, etc.  And as addressed *supra*, it is not clear that the WeatherNation accused 0:59 video is, in fact, the same video as the registered 3:07 Video, or a different video.

[3] Further, the fact that the accused 0:59 video is a post about dangerous flooding conditions during an August 22, 2022, flood in Dallas, Texas, shows that even if the

Finally, the SAC fails to state a plausible claim of direct copyright infringement because the SAC admits that the registered Video was first published by Clement on YouTube (SAC ¶ 16), which provided "each other user of" YouTube "a worldwide, non-exclusive, royalty-free license to access [the Video] through [YouTube's] Service, and to use that [Video], including to reproduce, distribute, prepare derivative works, display, and perform it" as enabled by YouTube, *see* Ex. D, pp.4–5 (addressing the "License to Other Users" granted by uploading material to YouTube); *see also* Ex. B (current printout of YouTube link showing a video posted by WxChasing); Ex. C (WxChasing homepage identifying an affiliation with Clement).  Given the scope of licensed rights granted by Clement, it is factually implausible to allege that the Video has been infringed based only on the presence of the accused 0:59 video (the WeatherNation video) on the FB Account.

Without more, the SAC fails to plausibly allege a claim of direct infringement against M3, JPM, or anyone.  Accordingly, Court I should be dismissed.

### C.   Count II Should Be Dismissed Because the Second Amended Complaint Fails to Plausibly Allege Facts Supporting a Claim for Contributory Copyright Infringement.

Contributory infringement is "intentionally inducing or encouraging direct infringement." *Geophysical Serv., Inc. v. TGS-NOPEC Geophysical Co.*, 850 F.3d 785, 798 (5th Cir. 2017) (quoting *MGM Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005)).  To establish a claim for contributory infringement, a copyright owner must show that the defendant, with knowledge of the allegedly infringing activity, induced, caused or materially contributed to the infringing conduct of another.  *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 790 (5th Cir. 1999).

---

WeatherNation TV video includes material from Plaintiff (or Clement, *see supra*, §I), it would likely be non-infringing fair use of material for public safety.  *See* 17 U.S.C. § 107 ("Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work, including such as by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright.").

The SAC contains no allegations that JPM "intentionally induc[ed] or encourage[ed] direct infringement" by M3. *See Geophysical Serv.*, 850 F.3d at 798. Instead, the SAC speculates "upon information and belief" that JPM "caused, enabled, facilitated and materially contributed" to M3's act "by providing the tools and instructions for" using the FB Account (SAC ¶ 62), or that JPM entered into the contract with M3 which "enabled M3 Media to participate in or cause" the accused 0:59 video to be posted, (*id.* ¶ 64), or that JPM "had actual and/or constructive knowledge" of M3's conduct "and induced, caused and/or materially contributed to that conduct by failing to ensure that M3 media had the proper licenses to publish" material on the FB Account (*id.* ¶ 66). This is not "intentionally inducing or encouraging" but passive conduct by JPM which allowed M3 to engage in the act of alleged infringement, which is insufficient to allege contributory infringement. *See Geophysical Serv.*, 850 F.3d at 798. Alleging only passive conduct by JPM is further demonstrated by the JPM-M3 agreement (Ex. G), in which M3 was hired to provide social media oversight and to post content on JPM's social media, including the FB Account.

Because the SAC contains only speculation about passive conduct by JPM in, essentially, permitting M3 to manage its FB Account, the SAC fails to allege a plausible claim for contributory copyright infringement. *See Geophysical Serv.*, 850 F.3d at 798. Accordingly, Count II should be dismissed.

### D.  Count III Should Be Dismissed Because the Second Amended Complaint Fails to Plausibly Allege Facts Supporting a Claim for Vicarious Copyright Infringement.

Count III should be dismissed because the SAC fails to plausibly allege a direct financial interest in the allegedly infringing activity, and it fails to plausibly allege that JPM had the right and ability to control the allegedly infringing activity. Vicarious infringement establishes liability when the "defendant profits **directly** from the infringement and has a right and ability to supervise and control the direct infringer, even if the defendant initially lacks knowledge of the infringement." *Grokster*, 545 U.S. at 930 n.9 (emphasis added). Thus, to state a claim for

14

vicarious infringement, a plaintiff must plausibly plead that the defendant "(1) had a **direct financial interest** in the infringing activity; and (2) had the right and ability to supervise the infringing activity." *ZeniMax Media, Inc. v. Oculus VR, LLC*, 166 F. Supp. 3d 697, 704 (N.D. Tex. 2015) (emphasis added). A direct financial interest exists where "the availability of the infringing material acts as a 'draw' for customers." *Ellison v. Robertson*, 357 F.3d 1072, 1078 (9th Cir. 2014) (internal quotation marks and citations omitted). "The essential aspect of the 'direct financial benefit' inquiry is whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps, regardless of how substantial the benefit is in proportion to the defendant's overall profits." *Id.* at 1079.

The SAC relies on no more than the conclusory recitation of the elements of a claim for vicarious infringement, and speculative theories of financial gain that are no "more than a sheer possibility" of liability, insufficient to state a claim for relief. *See Bell*, 529 F. Supp. 3d at 610–11 (quoting *Iqbal*, 556 U.S. at 663).

For direct financial benefit, the SAC alleges "upon information and belief," that JPM "has received a financial benefit directly attributable to the [alleged] Infringement," (SAC ¶ 44), that the alleged infringement "in turn generates profits for [JPM] directly from the use of the [alleged] Infringement," (*id.* ¶ 74), that Plaintiff "belie[ves]" that JPM "enjoyed a direct financial benefit from the [alleged] Infringement from, *inter alia*, advertising revenue from the increased traffic to its FB Account and from increases in fees paid by advertisers and sponsors," (*id.* ¶ 75). The SAC also alleges "upon information and belief" that JPM "receives a material and/or financial benefit from operating the FB Account as it promotes Joe Pags' corporate services and brandname [*sic*]," (*id.* ¶ 76), and that JPM "enjoyed a directed financial benefit from the appeal or 'draw' of Plaintiff's Video to increase user traffic to the FB Account, thereby increasing advertising or other revenue, and/or by increasing Joe Pags' customer base," (*id.* ¶ 77). None of these conclusory allegations are sufficient to plausibly plead a cause of action for vicarious infringement. Moreover, they are factually contradicted by the

fact that the FB Account did not run ads or generate revenue. *See* Ex. H (FB Account printout of "About" page stating: "This Page is not currently running ads.").

Here, there are no factually plausible allegations of a "direct financial interest" in the posting of the accused WeatherNation video on the FB Account. The FB Account is not monetized and does not run advertisements, negating the SAC's conclusory allegations about the accused video leading to increases in advertising. (*Compare* Ex. H *with* SAC ¶ 75).) The SAC only alleges that there is a speculative potential for an **indirect** financial interest in the accused video being posted on the FB Account. (*See, e.g.*, SAC ¶¶ 74–78.) Similar allegations of an indirect financial benefit have been rejected in this District as insufficient to state a claim for vicarious infringement. *See, e.g.*, *Bell v. Crawford Indep. Sch. Dist.*, No. 6:19-cv-268-ADA, 2020 WL 5370592, 2020 U.S. Dist. LEXIS 165345, *12–15 (W.D. Tex. Feb. 13, 2020) (tweet including allegedly infringing content found not to result in vicarious liability because, for example "[t]he tweet itself contain[ed] no language inviting the readers to attend sports games of any type and no language instructing proeple to do anything other than to read and appreciate the passage."); *Bell v. Llano Indep. Sch. Dist.*, No. 6:19-cv-265-ADA, 2020 WL 5370591, 2020 U.S. Dist. LEXIS 165908, *13–15 (W.D. Tex. Feb. 13, 2020) (same).

Similarly, the SAC only alleges conclusorily, "upon information and belief," that JPM had the right and ability to supervise M3's acts with respect to the FB Account. (*See* SAC ¶ 73.) However, the FB Account states that it "can have multiple admins. They may have permission to post content, comment or send messages as the Page," (Ex. H), and the agreement between M3 and JPM specifies that M3 was contracted to post on social media for JPM and that M3 had "Social Media Oversight," (Ex. G, p.4). The SAC's conclusory assertions and bare recitation of elements cannot overcome the documentary evidence incorporated into the SAC by Plaintiff's own allegations. *Simmons*, 113 F.2d at 813 ("Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control. The litigant may be defeated by his own evidence, the pleader by his own exhibits; the appellant has become enmeshed in his own prolixity."). Plaintiff relies on the JPM-M3

agreement and the FB Account page as central to its claims (*see* SAC ¶ 26), but the terms of that agreement (Ex. G) and FB Account information (Ex. H) defeat Plaintiff's conclusory allegations and claim for vicarious infringement, *see Simmons*, 113 F.2d at 813.

The SAC contains no more than Plaintiff's speculation that it is possible that JPM might have had some non-specific financial benefit from M3 posting the accused video on the FB Account. Such allegations are insufficient for a claim of vicarious infringement which requires a **direct financial benefit** from the allegedly infringing activity. Accordingly, Count III should be dismissed for failing to state a claim for relief.

## III.   Defendant M3 Should Be Dismissed From This Action Because It is Not Subject to Personal Jurisdiction in Texas.

Defendant M3 is not subject to general or specific personal jurisdiction in Texas, and venue in this District is improper. When personal jurisdiction is challenged, a plaintiff must make a prima facie showing of personal jurisdiction. *Pervasive Software, Inc. v. Lexware GmbH & Co.*, 68 F.3d 214, 219 (5th Cir. 2012). Due process permits the exercise of personal jurisdiction over a nonresident defendant when that defendant has "purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts'" with the forum state and the exercise of personal jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (quoting *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994)). "The non-resident's purposeful availment must be such that the defendant should reasonably anticipate being haled into court in the forum state." *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 419 (5th Cir. 1993) (internal quotations omitted).

With respect to specific personal jurisdiction, the inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) (internal quotations omitted); *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 539 (5th Cir. 2019) ("Specific jurisdiction applies when a non-resident defendant 'has purposefully directed its activities at the forum state and the litigation results from alleged

injuries that arise out of or relate to those activities.'") (quoting *Panda Brandywine Corp. v. Potomoc Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001)).

As admitted by Plaintiff in the SAC, M3 is a foreign limited liability company with a principal place of business in New York, New York. (SAC ¶ 8.) The only factual basis alleged in the SAC for the exercise of personal jurisdiction over M3 in Texas is based on the contract between M3 and JPM. (*See, e.g.*, SAC ¶¶ 11, 26.) But the M3-JPM agreement specifies that its web services are performed by M3 personnel (*see generally* Ex. G), which are not located in Texas. There is no factual basis tying M3's conduct to the State of Texas, indeed, the Plaintiff is a Wyoming limited liability company with a principal place of business in Wyoming (SAC ¶ 6), so the harm—to the extent there was any harm—was not even "felt" in Texas. Allowing this action to proceed against M3 in Texas does not comport with the principles of due process to provide specific jurisdiction in Texas. *See Halliburton*, 921 F.3d at 539 ("Specific jurisdiction applies when a non-resident defendant 'has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.'") (quoting *Panda Brandywine*, 253 F.3d at 868).

Accordingly, M3 should be dismissed from Count I, and this action, based on a lack of personal jurisdiction over M3 in Texas.

## CONCLUSION

For the foregoing reasons, Defendants respectfully requests that the Court dismiss Plaintiff's Second Amended Complaint (ECF No. 25) for lack of subject matter jurisdiction, lack of personal jurisdiction as to M3, and failure to state a claim.

Dated: August 26, 2024                     Respectfully submitted,

                                          */s/ Andrew D. Lockton*
                                          Edward F. McHale
                                          Florida Bar No. 190300
                                          Andrew D. Lockton
                                          Florida Bar No. 115519
                                          California Bar No. 301186

18

**MCHALE & SLAVIN, P.A.**
2855 PGA Boulevard
Palm Beach Gardens, Florida 33410
(561) 625-6575
(561) 625-6572 fax
emchale@mchaleslavin.com
alockton@mchaleslavin.com
litigation@mchaleslavin.com

*Attorneys for Defendants Joe Pags Media, LLC and*
*McLaughlin Media Management, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing Motion to Dismiss Plaintiff's Second Amended Complaint was filed electronically with the Court on August 26, 2024, and thereby served on counsel of record via the Court's CM/ECF system.  Counsel includes:

Sanders Law Group
Craig Sanders
James H. Freeman
333 Earle Ovington Blvd., Suite 402
Uniondale, NY 115533
(516) 203-7600
csanders@sanderslaw.group
jfreeman@sanderslaw.group

*Attorneys for Plaintiff Global Weather Productions, LLC*

*/s/ Andrew D. Lockton*
Andrew D. Lockton

## CERTIFICATE OF CONFERENCE

I HEREBY CERTIFY that on July 22, 2024, I sent Plaintiff's counsel a letter pursuant to this Court's standing order on motions to dismiss and W.D. Tex. Local Rule 7(g) (attached to this Motion as Exhibit A), setting forth the grounds for the instant motion to dismiss and requesting that Plaintiff either dismiss its claims or file a second amended compliant to cure the deficiencies, *see also* ECF No. 24 (Notice of Advisory of Plaintiff's intent to file a second amended complaint).  Although Plaintiff filed a Second Amended Compliant (ECF No. 25), that pleading is still deficient.

*/s/ Andrew D. Lockton*
Andrew D. Lockton

20