**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| GLOBAL WEATHER PRODUCTIONS, LLC, | § § § | |
| *Plaintiff,* | § § | Case No: 5:23-cv-01350-JKP-ESC |
| v. | § § | |
| JOE PAGS MEDIA, LLC: MCLAUGHLIN MEDIA MANAGEMENT LLC | § § § § | |
| *Defendants.* | § § | |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

Respectfully submitted,

**SANDERS LAW GROUP**
Craig B. Sanders
James Freeman
333 Earle Ovington Blvd., Ste. 402
Uniondale, New York 11553
(516) 203-7600
csanders@sanderslaw.group

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ I

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS .................................................................................................2

LEGAL STANDARD ........................................................................................................5

ARGUMENT .....................................................................................................................5

POINT I:        PLAINTIFF HAS STANDING TO SUE BY VIRTUE OF 17 U.S.C. §204 ............5

POINT II:       PLAINTIFF HAS PLED SUFFICIENT FACTS TO ESTABLISH A
PLAUSIBLE CLAIM FOR COPYRIGHT INFRINGEMENT ........................................7

   A. PLAINTIFF IS IN POSSESSION OF A VALID COPYRIGHT REGISTRATION
      FOR THE VIDEO.................................................................................................7

   B. THE EVIDENCE SHOWS THAT DEFENDANTS' USE OF A PORTION OF
      THE REGISTERED VIDEO IS *STRIKINGLY SIMILAR* TO THE ORIGINAL
      VIDEO ................................................................................................................9

POINT III:      THE SAC ALLEGES SUFFICIENT FACTS TO SUPPORT CLAIMS FOR
DIRECT AND SECONDARY INFRINGEMENT …………………………………………11

     A.     PLAINTIFF'S DIRECT INFRINGEMENT CLAIMS ARE PLAUSIBLE …………....………12

     B.     PLAINTIFF'S SECONDARY INFRINGEMENT CLAIMS ARE PLAUSIBLE………………15

POINT IV:       THE SAC ALLEGES SUFFICIENT FACTS TO ESTABLISH THAT THE
COURT HS SPECIFIC JURISDICTION OVER M3 MEDIA  …………………18

CONCLUSION.................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

### <span style="font-variant: small-caps">Cases</span>

*Alcatel USA, Inc. v. DGI Techs., Inc.,*
  166 F.3d 772 (5th Cir. 1999) ................................................................16

*Am. Decorative Fabrics, LLC v. Nichols,*
  No. 1:03-CV-646, 2006 WL 1422512 (N.D. Miss. May 16, 2006).............................6

*Armour v. Knowles*,
  512 F.3d 147 (5th Cir. 2007) ................................................................10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..........................................................................5

*Baisden v. I'm Ready Prods., Inc.*,
  693 F.3d 491 (5th Cir. 2012) ................................................................12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..........................................................................5

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462, (1985) ........................................................................19

*BWP Media USA, Inc. v. T & S Software Assocs., Inc.*,
  852 F.3d 436 (5th Cir. 2017) .............................................................11, 12

*Creations Unlimited, Inc. v. McCain*,
  112 F.3d 814 (5th Cir. 1997) ................................................................10

Geophysical Serv., Inc. v. TGS-NOPEC Geophysical Co.,
  850 F.3d 785 (5th Cir. 2017) ................................................................15

*Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,*
  815 S.W.2d 223 (Tex. 1991)..................................................................19

*Ironshore Europe DAC v. Schiff Hardin, L.L.P.*,
  912 F.3d 759 (5th Cir. 2019) .................................................................5

*Jacobsen v. Deseret Book Co.*,
  287 F.3d 936 (10th Cir. 2002) ...............................................................10

*Jane Envy, LLC v. Infinite Classic Inc.*, No. SA:14-CV-065-DAE, 2016 WL 797612, at *4
  (W.D. Tex. Feb. 26, 2016), *aff'd*, No. SA:14-CV-065-DAE, 2016 WL 5373035 (W.D.
  Tex. Sept. 26, 2016).........................................................................8

*Johnson v. Johnson,*
   385 F.3d 503 (5th Cir. 2004) ................................................................7

*KB Home v. Antares Homes, Ltd.,*
   2007 WL 1893370 (N.D. Tex. June 28, 2007) ..........................................7

*McGee v. Int'l Life Ins. Co.,*
   355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) ...................................19

*McGucken v. Newsweek LLC,*
   No. 19-CV-9617, 2020 WL 2836427 (S.D.N.Y. June 1, 2020) ..................14

*Meader v. Ira Resources, Inc.,*
   178 S.W.3d 338 (Tex. App.-Houston [14th Dist.] 2005, no pet.)................19

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,*
   545 U.S. 913 (2005)..........................................................................12, 17

*Mortgage Market Guide, LLC v. Freedman Report, LLC*, 2008 WL 2991570, at *22
   (D.N.J., July 28, 2008) ........................................................................9

*Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.,*
   783 F.3d 527 (5th Cir. 2015) ...............................................................10

*Norma Ribbon & Trimming, Inc. v. Little*,
   51 F.3d 45 (5th Cir. 1995) ....................................................................8

*Oppenheimer v. Deiss*,
   No. A-19-CV-423-LY, 2019 WL 6525188 (W.D. Tex. Dec. 3, 2019) ...................12

*Peel & Co., Inc. v. The Rug Mkt.*,
   238 F.3d 391 (5th Cir. 2001) ...............................................................10

*Playboy Enter., Inc. v. Webbworld, Inc.*,
   991 F. Supp. 543 (N.D. Tex. 1997) .......................................................11

*Positive Black Talk, Inc. v. Cash Money Records, Inc.*,
   394 F.3d 357 (5th Cir. 2004) ................................................................7

*Rhodes v. Prince*,
   No. 08–10794, 2010 WL 114203 (5th Cir. Jan. 12, 2010) ........................5

*S & D Trading Acad., LLC v. AAFIS, Inc.*,
   494 F. Supp. 2d 558 (S.D. Tex. 2007) ...................................................19

*Sinclair v. Ziff Davis, LLC*,
   No. 18-CV-790 (KMW), 2020 WL 3450136 (S.D.N.Y. June 24, 2020) ..................14

*Sohm v. Scholastic Inc.,*
    959 F.3d 39 (2d Cir. 2020)..................................................................................13

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984)..........................................................................................11

*Stross v. Realty Austin, LLC*,
    No. 1:20-CV-01071-RP, 2021 WL 2942399 (W.D. Tex. July 13, 2021), *report and
    recommendation adopted sub nom. Stross v. Boatwright*, No. 1:20-CV-1071-RP, 2021
    WL 8083334 (W.D. Tex. Sept. 19, 2021).....................................................12, 18

*Suncoast Post-Tension, Ltd. v. Scoppa,*
    No. 4:13-cv-3125, 2014 WL 12596472 (S.D. Tex. July 17, 2014) ..........................18

*UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC,*
    No. A-17-CA-365-LY, 2018 WL 1096871 (W.D. Tex. Feb. 28, 2018), R. & R.
    adopted, 2018 WL 2182282 (W.D. Tex. Mar. 26, 2018) .......................................17

*Unicolors, Inc. v. H&M Hennes & Mauritz, L. P.*,
    142 S. Ct. 941 (2022)...........................................................................................7

*Wood v. B L Bldg. Co.,*
    No. CIV.A.H-03-713, 2004 WL 5866352 (S.D. Tex. June 22, 2004).......................6

### STATUTES

17 U.S.C.
    § 205................................................................................................................6
    § 411(a) ...........................................................................................................7

### OTHER AUTHORITIES

https://www.copyright.gov/recordation/documents...................................................6

### RULES

Fed. R. Civ. P. 12(b)(6)........................................................................................20

Rule 12(b)(6)........................................................................................................1

Plaintiff Global Weather Productions, LLC ("Plaintiff") respectfully submits this memorandum of law in opposition to defendants Joe Pags Media, LLC ("Joe Pags") and McLaughlin Media Management, LLC ("M3 Media") (collectively, "Defendants")' motion to dismiss the Second Amended Complaint ("SAC") pursuant to Rule 12(b)(6).

## PRELIMINARY STATEMENT

This a clear-cut case of copyright infringement where defendant Joe Pags, a commercial media purveyor with close to 400,000 followers, republished a substantial portion of Plaintiff's copyrighted video without Plaintiff's authorization.

Turning to the motion at hand, Defendants' argument that Plaintiff lacks standing because its managing member, Michael Brandon Clement, filed a separate action involving the same video, should be rejected. First, that case was voluntarily dismissed. Second, Plaintiff's counsel advised defense counsel before the instant motion was filed that the separate action was filed in error and that such pleading deficiency would be timely cured.  Third, Defendants' assertion that Plaintiff lacks standing is objectively unreasonable, particularly as Defendants were provided a copy of a valid copyright assignment agreement prior to the filing of the initial motion and have provided no evidence to challenge the validity of the assignment. There can be no reasonable dispute that Plaintiff is the owner of the copyright and has standing to sue in this action.

Next, Defendants proffer non-sensical arguments that the Video is not registered, and that Defendants did not copy the Video. However, the SAC provides a YouTube link to the original Video; the exact Video registered with the Copyright Office. Defendants will have the opportunity during discovery to contest the validity of the registration - for example, by requesting the issuance of a certified deposit copy from the Copyright Office - but at this stage of the litigation, Plaintiff has adequately pled sufficient facts to establish a plausible claim that the Video is registered. Defendants

also ask the Court to disbelieve its own eyes and dismiss the case on grounds that the video displayed on Joe Pags' Facebook Account is not substantially similar to the original Video. However, Plaintiff provides both Defendants and the Court with an actual unedited copy of the entire three minute and thirty-two second Video and, as demonstrated herein, when a side-by-side comparison is made by an ordinary observer there can be no reasonable dispute that the works are virtually identical.

Defendants also ask the Court to disregard the SAC's allegations concerning the direct infringement claims against Defendants and the secondary infringement claims against Joe Pags. In support of these arguments, Defendants invite the Court to consider extrinsic evidence that was prepared by defense counsel six-months after this lawsuit was filed. Putting aside that Courts are not to consider such extrinsic evidence on a Rule 12(b)(6) motion, even were the Court to consider this evidence, there would still be disputed questions of fact remaining which would prevent the granting of the motion even had it been brought under Rule 56 where extrinsic evidence could be considered.

Finally, M3 Media, which ostensibly concedes that it posted the Video to Joe Pags' Facebook account without Plaintiff's authorization, asks the Court to dismiss for lack of personal jurisdiction. However, the law provides that M3 Media's contractual relationship with Joe Pags subjects it to specific jurisdiction in Texas; particularly as the contract is a "long-term agreement" of potentially infinite duration which contemplates M3 Media's repeated contacts with Texas.

## STATEMENT OF FACTS

### I.   THE PARTIES

Plaintiff is a Wyoming limited liability company with a principal place of business in Sheridan, Wyoming. [SAC ¶ 6]. Defendant Joe Pags is a domestic limited liability company with a principal place of business at 287 Coyote Trail, Spring Branch in Comal County, Texas [*Id.* ¶ 6] which owns and controls a social media account on Facebook known as @Joe Pags *("FB Account")*.

2

[*Id.* ¶ 3]. Defendant M3 Media is a foreign limited liability company with a principal place of business at 125 W. 55th St., New York, NY. [*Id.* ¶ 8]. In October 2021, M3 Media contracted with Joe Pags to provide web management and/or marketing services in this jurisdiction and at all times relevant participated in the operations of the FB Account. [*Id.* ¶ 4; Dkt. No. 26-8]. M3 Media has engaged in continuous and systematic activity in the State of Texas, including but not limited to entering into the services contract with Joe Pags in the State of Texas and providing web management services for the material benefit of Joe Pags thereafter. [*Id.* ¶ 11].

## II.   PLAINTIFF'S COPYRIGHTED VIDEO

Third-party Michael Brandon Clement ("Clement") is a professional videographer by trade who is the legal and rightful owner of certain videos which he commercially licenses. [SAC ¶ 13]. On or about August 22, 2022, Clement, who is also Plaintiff's managing member, published a video of a water rescue on Interstate 30 in downtown Dallas after a flash flooding in August 2022 (the "*Video*"). [*Id.* ¶ 16, Ex. 1]. The Video, which has a duration of three minutes and thirty-two seconds, was published via YouTube. [*Id.*]. In creating the Video, Clement personally selected the subject matter, timing, lighting, angle, perspective, depth, lens and camera equipment used to capture the image. Clement also selected the subject matter and all of the cinematic elements in the Video. [*Id.* ¶ 17]. On September 1, 2022, the Video was registered by the Copyright Office under Registration No. PA 2-374-324, listing Clement as the copyright claimant (the "324 Registration") [SAC ¶ 18]. Clement created the Video with the intention of it being used commercially and for the purpose of news reporting and documentation of a weather-related event in the Dallas area. [SAC ¶ 19]. On June 4, 2023, subsequent to the effective date of the 324 Registration, Clement assigned all rights, titles and interests in the copyright to the Video to Plaintiff by a written assignment agreement, including the right to bring this lawsuit. [*Id.* ¶ 20]. Plaintiff obtained the copyright to the Video with the intention of it being used commercially for the purpose of news reporting and documentation of the Dallas weather-related event. [*Id.* ¶ 21].

### III.   DEFENDANTS' INFRINGING ACTIVITY

Defendant Joe Pags operates in the commercial news reporting industry, where the exploitation of copyrighted materials is prevalent. [SAC ¶ 22]. The FB Account is a part of and used to advance Joe Pags' commercial enterprise. [*Id*. ¶ 23]. Joe Pags has access to post content to its FB Account and controls which entities and/or individuals have access to post content to the FB Account. [*Id.* ¶ 24]. The FB Account is monetized in that it promotes Joe Pags' talk show and media business and Joe Pags profits from these activities. [*Id.* ¶ 25].

In October 2021, Joe Pags entered into a written contract with M3 Media in the State of Texas which provided, in relevant part, that M3 Media would participate in the operation of the FB Account, among other digital assets controlled by Joe Pags. [*Id.* ¶ 26]. Pursuant to that Agreement, Joe Pags would "have full access to the website during the term of this agreement with unlimited rights to post news and opinion to the site as they deem appropriate." [*Id.* ¶ 27]. Furthermore, by the express terms of that Agreement, M3 did <u>not</u> assume "any claim, license or other control over any of the intellectual property of Joe Pags including, but not limited to, the domain name, website, and web content hosted on behalf of those entities..." [*Id.*]

On or about August 23, 2022, Defendant Joe Pags (or in the alternative, defendant M3 Media) displayed a substantial portion of the Video, about 59 seconds in duration, on the FB Account as part of an on-line post (the "*Infringement*"). [*Id.* ¶ 27]. Without permission or authorization from Plaintiff, Joe Pags (or in the alternative, M3 Media) volitionally copied and/or displayed a substantial portion of Plaintiff's copyright protected Video on the FB Account. [*Id.* ¶ 28]. The Infringement is an exact copy of a substantial portion of Plaintiff's copyrighted Video that was directly copied and displayed by Defendants onto the FB Account. [*Id.* ¶ 34]. Joe Pags takes an active and pervasive role in the content posted on its FB Account, including, but not limited to copying, posting, selecting, commenting on and/or displaying images including but not limited to Plaintiff's Video [*Id.* ¶ 35] and has the legal right and ability to control and limit the infringing activities on its FB Account but failed to exercise such right. [*Id.* ¶ 41]. Defendants monitor the content on the FB Account [*Id.* ¶ 42-43] and Joe Pags has received a financial benefit directly

attributable to the Infringement. [*Id.* ¶ 44].

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Upon identifying the well-pleaded factual allegations, courts within the Fifth Circuit then must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Rhodes v. Prince,* No. 08–10794, 2010 WL 114203, at *1–2 (5th Cir. Jan. 12, 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. "Although dismissal under [R]ule 12(b)(6) may be appropriate based on a successful affirmative defense, that defense must appear on the face of the complaint." *Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019) (quoting *Kelly v. Nichamoff*, 868 F.3d 371 (5th Cir. 2017)).

## ARGUMENT

### POINT I:        PLAINTIFF HAS STANDING TO SUE BY VIRTUE OF 17 U.S.C. §204

Defendants argue that Plaintiff lacks standing to sue on the grounds that Plaintiff is not the copyright owner of the Video. [Dkt. No. 26, Point I]. The sole support for this position is Defendants' citation to a separate infringement action involving the Video wherein Clement, rather than Plaintiff, was named as the plaintiff. See Dkt. No. 26-7 (the "Separate Action"). However, the

Separate Action was voluntarily dismissed because it was filed in error due to a clerical oversight. [Freeman Declr. ¶¶_5, 7; Exh. C, E].

In the case at bar, the SAC alleges that Plaintiff is the rightful owner of the copyright to the Video by virtue of written copyright assignment (the "Assignment") between Clement and Plaintiff. [SAC ¶ 20] A copy of the Assignment was provided to Defendants before they filed the instant motion. [Freeman Declr. ¶3, Ex. A] [1]  Pursuant to the Copyright Act, "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of section 411, to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b). Further, section 204(a) provides: "A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 USC § 204(a). A written copyright assignment provides dispositive evidence of transfer of ownership of the copyright. See, e.g., *Wood v. B L Bldg. Co.,* No. CIV.A.H-03-713, 2004 WL 5866352, at *6 (S.D. Tex. June 22, 2004); *Am. Decorative Fabrics, LLC v. Nichols,* No. 1:03-CV-646, 2006 WL 1422512, at *2 (N.D. Miss. May 16, 2006).[2]

Here, the SAC alleges that the Assignment validly conveyed ownership interest of the Video from Clement to Plaintiff and, therefore, Plaintiff has standing to maintain the instant copyright infringement action. [SAC ¶¶ 20, 52]. Defendants do <u>not</u> dispute the validity of the Assignment. Further, there is no dispute between Plaintiff and Clement concerning the ownership status of the copyright. [Clement Declr. ¶ 5]. See, e.g., *KB Home v. Antares Homes, Ltd.,* 2007 WL 1893370

---

[1]    The fact that defense counsel actually knew that the Separate Action was filed in error before Defendants filed the instant motion, yet nonetheless proceeded with this argument, demonstrates Defendants' continued willingness to waste the Court's resources on unnecessary motion practice.

[2]    Recordation of an assignment with the Copyright Office is optional, not required. *See* https://www.copyright.gov/recordation/documents/ ("Recording a transfer of copyright ownership or other document pertaining to a copyright with the Copyright Office under 17 U.S.C. § 205 is voluntary.")

(N.D. Tex. June 28, 2007) (finding that a copyright infringer cannot challenge a copyright assignment agreement where neither party to that agreement contests its validity). In sum, given that Plaintiff and Clement entered into a valid copyright assignment agreement, Plaintiff's standing to bring suit in this action cannot be reasonably contested by Defendants.

**POINT II:** **PLAINTIFF HAS PLED SUFFICIENT FACTS TO ESTABLISH A PLAUSIBLE CLAIM FOR COPYRIGHT INFRINGEMENT**

"A copyright infringement claim requires proof of (1) ownership of a valid copyright and (2) actionable copying, which is the copying of constituent elements of the work that are copyrightable." *Positive Black Talk, Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 367 (5th Cir. 2004). Defendant argues that Plaintiff has failed to plead sufficient facts in support of a plausible infringement claim on grounds that: (a) the Video is not registered with the Copyright Office; (b) Defendant did not actually copy a portion of the Video. As demonstrated below, when the facts alleged are viewed "in the light most favorable to the plaintiff," (*Johnson v. Johnson,* 385 F.3d 503, 529 (5th Cir. 2004)), the SAC sets forth a plausible set of facts to establish each element of Plaintiff's copyright infringement claim.

A. **Plaintiff Is In Possession Of A Valid Copyright Registration For The Video**

Under the Copyright Act, "[a] valid copyright registration . . . is a prerequisite for bringing a 'civil action for infringement' of the copyrighted work. 17 U.S.C. § 411(a)." *Unicolors, Inc. v. H&M Hennes & Mauritz, L. P.*, 142 S. Ct. 941, 944 (2022) ("*Unicolors*"). "To obtain registration, the author of a work must submit to the Register of Copyrights a copy of the work and an application. §§ 408, 409." *Id.* "If the Register determines that the work is copyrightable and meets other statutory requirements, she will issue a certificate of registration. § 410(a) [3]." *Id.* The copyright Certificate of

---

[3]     Section 410(a) provides: "When after examination, the Register of Copyrights determines that, in accordance with the provisions of this title, the material deposited constitutes copyrightable subject

Registration constitutes "*prima facie* evidence of the validity of the copyright," and a court must presume that a copyright is valid if registered within five years of the work's first publication. 17 U.S.C. § 410(c); *Nola Spice Designs*, 783 F.3d at 549.

"When a plaintiff presents the court with a certificate of copyright registration, the burden then shifts to the defendant to offer some evidence or proof to disprove the validity of the copyright by demonstrating that the work at issue is unprotectable." *Jane Envy, LLC v. Infinite Classic Inc.*, No. SA:14-CV-065-DAE, 2016 WL 797612, at *4 (W.D. Tex. Feb. 26, 2016), *aff'd,* No. SA:14-CV-065-DAE, 2016 WL 5373035 (W.D. Tex. Sept. 26, 2016) (citation omitted); *Norma Ribbon & Trimming, Inc. v. Little*, 51 F.3d 45, 47 (5th Cir. 1995) ("certificates create only a rebuttable presumption that the copyrights are valid."). Here, the SAC alleges that Plaintiff is in possession of a valid copyright registration certificate for the Video, which was issued by the Copyright Office on September 1, 2022 under Registration No. PA 2-374-324. [SAC ¶ 18]. Accordingly, the 324 Registration is accorded the presumption of validity under 17 U.S.C. § 410(c) and the burden therefore shifts to Defendants to show that the 324 Registration is otherwise invalid. *Jane Envy, LLC,* 2016 WL 797612, at *4.

Defendants argue that the Video is not on deposit with the 324 Registration because the duration of the Video evidenced in Exhibit 1 (which indicates a duration of three minutes and thirty-two seconds long) does not match the allegation set forth in paragraph 16 of the SAC (which alleges the Video is "three minutes and seven seconds" long). [SAC ¶ 16]. However, paragraph 16 of SAC also alleges that Video was posted to YouTube. [SAC ¶ 16 (citing https://www.youtube.com/watch?v=rhR-R-cgAXA)]. Upon viewing the YouTube link set forth in paragraph 16 of the SAC (which was also provided to defense counsel before the filing of this

---

matter and that the other legal and formal requirements of this title have been met, the Register shall register the claim and issue to the applicant a certificate of registration under the seal of the Copyright Office."

motion), the Court can see that the registered Video posted to YouTube is <u>three minutes and thirty-two seconds</u>, which is identical to the duration of the Video submitted to the Court and transmitted to Defendants before this motion was filed.[4] The reference to "three minutes and seven seconds" in the SAC amounts to a typographical error; however, the YouTube linked Video alleged in the same paragraph of the SAC should be viewed as controlling since it provides *actual contemporaneous evidence* of the duration of the registered Video. [Clement Declr. ¶ 3, Ex. A]

Furthermore, under the Copyright Act, the burden rests on defendant (not plaintiff) to seek official deposit copies from the Copyright Office because a valid copyright registration is accorded the presumption of validity if obtained within five years of initial publication. 17 U.S.C. §410; *see also Iantosca v. Elie Tahari, Ltd.*, No. 19-CV-04527 (MKV), 2020 WL 5603538, at *4 (S.D.N.Y. Sept. 18, 2020) ("It is the Defendant's obligation, during discovery, to contact the USCO and request deposit copies to be used to rebut the validity of the copyright registration") (citing *Goodman v. Universal Beauty Prod. Inc.*, No. 17-CV-1716 (KBF), 2018 WL 1274855, at *5 (S.D.N.Y. Mar. 9, 2018)). As the SAC alleges a YouTube link to the Video which shows a duration of <u>three minutes and thirty-two seconds</u>, Plaintiff has pled sufficient facts which, when viewed "in the light most favorable to the plaintiff," *Johnson,* 385 F.3d at 529, show that the Video is registered with the Copyright Office (notwithstanding the typographical error in paragraph 16 of the SAC).

B. **THE EVIDENCE SHOWS THAT DEFENDANTS' USE OF A PORTION OF THE REGISTERED VIDEO IS *STRIKINGLY SIMILAR* TO THE ORIGINAL VIDEO**

To prevail on a copyright infringement claim, a plaintiff must also establish actionable

---

[4]      The one second disparity between the screenshot version in Exhibit 1 and original Video is immaterial and does not invalidate the 324 Registration. This is because a deposit copy is a valid "copy" under 17 U.S.C. § 408 where it "substantially represents the content that was allegedly infringed". *Mortgage Market Guide, LLC v. Freedman Report, LLC*, 2008 WL 2991570, at *22 (D.N.J., July 28, 2008); *see also Three Boys Music Corp.,* 212 F.3d at 486–87 (declining to invalidate registration where deposit copy of musical work included all of the song's essential elements, despite minor variations between the copy and original).

copying of the copyrighted work. *Positive Black Talk*, 394 F.3d at 367. Proving actionable copying requires first showing that factual copying occurred, and second that "the copyrighted work and the allegedly infringing work are substantially similar." *Id.*; *see also Armour v. Knowles*, 512 F.3d 147, 152 (5th Cir. 2007) (plaintiff must establish that "the works contain similarities that are probative of copying"). To assess substantial similarity, a "side-by-side comparison must be made between the original and the copy to determine whether a layman would view the two works as substantially similar." *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.,* 783 F.3d 527, 550 (5th Cir. 2015) (quoting *Creations Unlimited, Inc. v. McCain*, 112 F.3d 814, 816 (5th Cir. 1997) (per curiam) (footnote omitted). Accordingly, the question of substantial similarity "typically should be left to the factfinder, …" *Nola Spice Designs,* 783 F.3d at 550 (quoting *Peel & Co., Inc. v. The Rug Mkt.,* 238 F.3d 391, 395 (5th Cir. 2001) (footnote omitted); accord *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 943 (10th Cir. 2002) (whether works are substantially similar is "a classic jury question"). Here, Defendants argue that they did not copy a portion of the registered Video. However, a simple side-by-side comparison between the registered Video provided to the Court in Exhibit 1 and the infringement screenshot displayed in Exhibit 2 shows a virtually identical match.



| **Plaintiff's Video (2:36) – Exhibit 1** | **Defendants' Infringement – Exhibit 2** |

A reasonable juror could certainly determine that Defendants' use is *strikingly similar* to Plaintiff's original Video because the works are virtually identical. See, e.g., *Playboy Enter., Inc. v. Webbworld, Inc.*, 991 F. Supp. 543, 551 (N.D. Tex. 1997) (finding copyright infringement where

accused images, presented through a side-by-side comparison, were "virtually identical" to the copyrighted images).[5] In short, there can be no reasonable dispute that Defendants copied the Video and any argument to the contrary is objectively unreasonable.

## III.   THE SAC ALLEGES SUFFICIENT FACTS TO SUPPORT CLAIMS FOR DIRECT AND SECONDARY INFRINGEMENT

There are two types of copyright infringement: direct and secondary. *BWP Media USA, Inc. v. T & S Software Assocs., Inc.*, 852 F.3d 436, 439 (5th Cir. 2017). Direct copyright infringement occurs when a party engages in infringing conduct. See *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 433 (1984) (stating that anyone who violates exclusive rights of a copyright owner is an infringer). Secondary liability is a means of holding parties responsible for infringement by others even if they have not engaged in the infringing activity. *Id.* at 435. Secondary infringement occurs when one intentionally induces or encourages infringing acts by others or profits from such acts while declining to exercise a right to stop or limit them. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005).

"A plaintiff is entitled to plead alternative claims for direct and contributory copyright infringement against a single defendant even if the theories are inconsistent or based on inconsistent allegations of fact." *Stross v. Realty Austin, LLC*, No. 1:20-CV-01071-RP, 2021 WL 2942399, at *3 (W.D. Tex. July 13, 2021), *report and recommendation adopted sub nom. Stross v. Boatwright*, No. 1:20-CV-1071-RP, 2021 WL 8083334 (W.D. Tex. Sept. 19, 2021) (citing *Oppenheimer v. Deiss*, No. A-19-CV-423-LY, 2019 WL 6525188, at *3 (W.D. Tex. Dec. 3, 2019) (citing Fed. R. Civ. P.

---

[5]      The fact that Defendant's infringing use of the Video contains a superimposed graphic on the top upper left "W Dallas, TX" is of no legal consequence because any ordinary observer could perceive the similarities between these videos and find the "aesthetic appeal" to be the same. *See Blehm v. Jacobs*, 702 F.3d 1193, 1202 (10th Cir. 2012) ("the substantial similarity test asks whether the ordinary observer, unless he set out to detect the disparities [between the works], would be disposed to overlook them, and regard their aesthetic appeal as the same.").

8(d)(3)), *R. & R. adopted*, 2020 WL 10056214 (W.D. Tex. Jan. 15, 2020).

### A.   PLAINTIFF'S DIRECT INFRINGEMENT CLAIMS ARE PLAUSIBLE

To state a claim for direct copyright infringement, a plaintiff must show (1) ownership of a valid copyright, and (2) copying of constituent elements of a work that are original. *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 499 (5th Cir. 2012). Direct copyright infringement requires volitional conduct, which is "conduct by a person who causes in some meaningful way an infringement." *BWP Media*, 852 F.3d at 440 n.1 (citation omitted). Plaintiff has alleged facts sufficient to state a claim for direct copyright infringement as to both defendants, as the SAC alleges that Plaintiff is the owner of the copyright [SAC ¶¶18, 20] and Defendants copied elements of the Video that are original. [SAC ¶¶ 17, 27, 28].

With respect to defendant Joe Pags, the SAC alleges that Joe Pags acted volitionally by owning and controlling the FB Account [SAC ¶ 3] and, upon information and belief, uploading the Video to the FB Account [SAC ¶ 29]. Alternatively, the SAC alleges that Joe Pags acted volitionally by contracting with M3 Media to maintain the FB Account and, upon information and belief, uploading the Video to the FB Account. [SAC ¶¶ 3, 26, 30]. Defendants contend that Plaintiff cannot show volitional conduct as to Joe Pags because the fact that the Video was displayed on Joe Pags' FB Account does not show that Joe Pags actually posted the Video. [Dkt. No. 26, p. 11]. Defendants ask the Court to determine as a matter of law that Joe Pags cannot be held liable for direct infringement because a possibility exists that some unknown third-party may have had access to Joe Pags' FB Account. Defendants have done nothing more than raise a disputed question of fact that cannot be resolved on the face of the pleadings.[6]

---

[6]    For example, Defendant's allegation that there is a possibility that some other undisclosed third party may have had access to Joe Pags' own FB Account is of no legal consequence at this juncture because it is based on pure speculation. The argument is also quite disingenuous because absent discovery, the identity of the person or persons who posted the Video to Joe Pags' FB Account is known by Defendants,

With respect to M3 Media, it appears to concede that it posted the Video to the FB Account, yet contends that it cannot be held liable for direct infringement because the accused video is not a copy of a portion of the original Video. These arguments were previously addressed in Point II.B. *supra*, but suffice it to say, the Court's side-by-side comparison of the Video and the infringing copy displayed on the FB Account demonstrate that the works are virtually identical.

Finally, Defendants assert the affirmative defense of license based on the uploading of the Video to YouTube. *Sohm v. Scholastic Inc.,* 959 F.3d 39, 42 (2d Cir. 2020) ("the existence of a license is treated as an affirmative defense, meaning that [defendant] ha[s] the burden to prove its existence."). As a preliminary matter, even if Clement granted YouTube the right to sublicense the Video to third-party WeatherNation TV, Defendants have failed to present any evidence that Defendants are the beneficiary of such license. Further, the SAC alleges that Defendants were not licensed to repost the Video. [SAC ¶ 29].

In any event, Defendants have failed to demonstrate that Clement authorized YouTube to sub-license the Video to WeatherNation TV by virtue of YouTube's terms of service. In the context of social media use, attempts to establish a sub-license defense on the face of the pleadings have been consistently rejected. See, e.g., *Sinclair v. Ziff Davis, LLC*, No. 18-CV-790 (KMW), 2020 WL 3450136, at *1 (S.D.N.Y. June 24, 2020) (finding that pleadings contained insufficient evidence to find that Instagram granted the defendant a sublicense to embed plaintiff's photograph on its website where Instagram's terms of service were open to multiple interpretations and that such terms were "insufficiently clear to warrant dismissal of Plaintiff's claims at this stage of litigation."); *McGucken v. Newsweek LLC*, No. 19-CV-9617, 2020 WL 2836427, at *4–5 (S.D.N.Y. June 1, 2020) (rejecting

---

but not Plaintiff. But again, because the SAC alleges that Joe Pags owns and controls the FB Account [SAC ¶ 3], it is entirely plausible at the pleading stage that Joe Pags, its employees or agents posted the Video to the FB Account.

argument on Rule 12(b)(6) that defendant had a sub-license to embed content under Instagram's terms of service because of the multiple policy terms that would need to deciphered and the reasonable inferences to be drawn in plaintiff's favor).

With respect to YouTube's term of service, Defendants neglect to point out that by using YouTube's embed tools, YouTube requires that any user (in this case, WeatherNationTV) must not only comply with YouTube's general terms of service, but at least <u>four</u> different policies, terms and guidelines to embed content, including YouTube API Services Terms of Service (the "API Terms") (https://developers.google.com/youtube/terms/api-services-terms-of-service),                YouTube's Developer  Policies  https://developers.google.com/youtube/terms/developer-policies);  YouTube's Content Manager Policies (https://support.google.com/youtube/answer/9142671), and YouTube's Community Guidelines (https://www.youtube.com/about/policies/#community-guidelines).[7]

Even if the Court were to venture an interpretation and somehow reconcile all these various terms and guidelines in order to construct the existence of a sub-license, questions of fact would remain as to whether WeatherNation TV (and by extension Defendants) actually complied with the stringent requirements to embed third-party content outside of YouTube's platform. For example, Section 12 of the API Terms specifically provide that with respect to "Third-Party Rights", "You and your API Client(s) will not, and you will require those acting on your behalf and your users to not, infringe or violate third-party rights, including intellectual property rights…" Such a term stands in direct contradiction to the existence of a sub-license as it implies that any user would require permission directly from the copyright holder to embed content outside of YouTube's platform.[8]

---

[7]        If WeatherNation TV did not embed the content on its own external website, then its use of the Video would be outside the scope of YouTube's terms of service.

[8]        Furthermore, even if the Court were to determine that direct permission from the copyright holder was not required for embedding to third-party websites, WeatherNation TV would still be required to establish, beyond the preponderance of the evidence, that it complied with certain Developer terms and conditions required for embedding, such as displaying a link to YouTube's Terms of Service on third-party

Because "the inquiry on a Rule 12(b)(6) motion to dismiss . . . is whether plaintiff has pleaded, not proven, the necessary elements of a copyright infringement claim", it is readily apparent that Plaintiff's factual allegations support each element of direct infringement and, if taken as true, show volitional conduct by Joe Pags and M3 Media. *Stross v. Realty Austin, LLC*, No. 1:20-CV-01071-RP, 2021 WL 2942399, at *3 (W.D. Tex. July 13, 2021), *report and recommendation adopted sub nom. Stross v. Boatwright*, No. 1:20-CV-1071-RP, 2021 WL 8083334 (W.D. Tex. Sept. 19, 2021) (finding that Plaintiff has alleged sufficient facts to state a plausible claim of direct copyright infringement).

### B. PLAINTIFF'S SECONDARY INFRINGEMENT CLAIMS ARE PLAUSIBLE

#### 1. Contributory Infringement

Contributory infringement is "intentionally inducing or encouraging direct infringement." *Geophysical Serv., Inc. v. TGS-NOPEC Geophysical Co.*, 850 F.3d 785, 798 (5th Cir. 2017) (quoting *Grokster*, 545 U.S. at 930). To establish a claim for contributory copyright infringement, a copyright owner must show that the defendant, with knowledge of the infringing activity, induced, caused, or materially contributed to the infringing conduct of another. *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 790 (5th Cir. 1999).

Plaintiff asserts a claim for contributory copyright infringement against Joe Pags [SAC ¶¶ 61-71]. In support of its contributory copyright claim, the SAC alleges that Joe Pags controls and owns the FB Account [SAC ¶ 3], that Joe Pags caused, enabled, facilitated and materially contributed to the Infringement by providing the tools and instruction for the Infringement via the

---

websites, instructing users of Defendant's third-party websites that they are agreeing to be bound by the YouTube Terms of Service, and requiring users of third-party websites to agree to a privacy policy before users can access the embedded content, among other requirements specified in the API Terms. *See* YouTube API Services – Developer Policies, Section III.A "API Client Terms of Use and Privacy Policies" (https://developers.google.com/youtube/terms/developer-policies). Here, there is no evidence on the record that WeatherNation TV (or by extension Defendants) complied with *any* of these requirements.

FB Account [SAC ¶ 62]; has directly and indirectly promoted the Infringement and refused to exercise its ability to stop the Infringement made possible by its distribution [SAC ¶ 63]; had a continuing contractual relationship with M3 Media which enabled M3 Media to participate in or cause the Infringement and, thus, Joe Pags' actions substantially contributed to the infringing activity by granting M3 Media access to the FB Account to post copyrighted content, including the Video [SAC ¶ 64]; that Joe Pags' actions show a relationship to the infringing activity beyond just mere operation of a website business [SAC ¶ 65]; that Joe Pags had actual and/or constructive knowledge of M3 Media's infringing conduct and induced, caused and/or materially contributed to that conduct by failing to ensure that M3 media had the proper licenses to publish copyrighted content on the FB Account. [SAC ¶ 66]

Taken as true, these allegations are sufficient to show that Joe Pags knew that M3 Media was committing direct infringement, and that Joe Pags actively induced, caused, or materially contributed to M3 Media's actions. See *UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*, 384 F. Supp. 3d 743, 765 (W.D. Tex. 2019) (stating that defendant provided service permitting customers' direct infringement therefore potentially was liable as secondary infringer). Plaintiff has therefore alleged sufficient facts to state a plausible claim of contributory copyright infringement against Joe Pags, which is all that is required at the motion to dismiss stage. See *Oppenheimer*, 2019 WL 6525188, at *3 (denying motion to dismiss contributory copyright infringement claim because allegations created reasonable inference that Defendants knew of infringing activity and induced, caused, or materially contributed to direct infringement).

### 2.   VICARIOUS INFRINGEMENT

Plaintiff asserts a claim for vicarious copyright infringement against Joe Pags [SAC, ¶¶ 72-82]. To state a claim for vicarious infringement, a plaintiff must show that a defendant has (1) a

direct financial interest in the infringing activity, and (2) the right and ability to supervise the activity that causes the infringement but declines to stop or limit it. *Grokster*, 545 U.S. at 930. Intent or knowledge of the infringement is not an element of a claim for vicarious liability. *Id.* at n.9; *UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*, No. A-17-CA-365-LY, 2018 WL 1096871, at *9 (W.D. Tex. Feb. 28, 2018), *R. & R. adopted*, 2018 WL 2182282 (W.D. Tex. Mar. 26, 2018).

In support of its vicarious copyright infringement claim, Plaintiff alleges that Joe Pags had the right and ability to supervise and/or control the infringing conduct of its employees, agents, affiliates, vendors and/or members, and declined to exercise the right and ability to supervise or control that infringing conduct, despite its legal right to stop or limit the directly infringing conduct as well as the practicable ability to do so. [SAC ¶ 73]; Joe Pags has continued to infringe upon Plaintiff's Video, which in turn generates profits for Joe Pags directly from the use of the Infringement [SAC ¶ 74]; Joe Pags enjoyed a direct financial benefit from the Infringement from, *inter alia*, advertising revenue from the increased traffic to its FB Account and from increase in fees paid by advertisers and sponsors [SAC ¶ 75]; Joe Pags receives a material and/or financial benefit from operating the FB Account as it promotes Joe Pags' corporate services and brandname [SAC ¶ 76]; Joe Pags enjoyed a directed financial benefit from using the appeal or "draw" of Plaintiff's Video to increase user traffic to the FB Account, thereby increasing advertising or other revenue, and/or by increasing Joe Pags' customer base. [SAC ¶ 77]; accordingly, Joe Pags is liable as a vicarious infringer since it profited from the Infringement while declining to exercise a right to stop or limit it. [SAC ¶78]

As such, Plaintiff has alleged sufficient facts to support a plausible claim of vicarious copyright infringement at the motion to dismiss stage. See *Stross*, 2019 WL 5697225, at *2 (holding that plaintiff alleged sufficient facts at Rule 12(b)(6) stage to support vicarious infringement claim

where plaintiff alleged defendant had a direct financial interest in use of infringing photo on website and supervision over website); *Suncoast Post-Tension, Ltd. v. Scoppa*, No. 4:13-cv-3125, 2014 WL 12596472, at *5 (S.D. Tex. July 17, 2014) (finding that plaintiff alleged sufficient facts to support vicarious infringement claim against corporate officer who benefited from and directed infringement).

Defendant argues that because "the FB Account did not run ads or generate revenue", Plaintiff cannot show a direct financial benefit derived from the Infringement. In support of this claim, Defendant cites to extrinsic evidence consisting of a Facebook "About" page which is nowhere to be found in the pleading. [Dkt. 26-9] However, Defendants offer no authority as to why such extrinsic evidence should be considered in this Rule 12(b)(6) motion. In determining a motion to dismiss under Rule 12(b)(6), the general rule is that a court may only consider factual allegations within the "four corners" of the complaint. *Morgan v. Swanson*, 659 F.3d 359, 401 (5th Cir. 2011). The extrinsic evidence of Joe Pags "About" page was apparently printed on May 17, 2024, more than six-months after this lawsuit was filed. It is plausible that Joe Pags altered its advertisement settings post-infringement, thus, there remains a question of disputed fact as to whether Joe Pags ran advertisements on the FB Account at the time of the Infringement in August 2022.

**POINT IV:   THE SAC ALLEGES SUFFICIENT FACTS TO ESTABLISH THAT THE COURT HS SPECIFIC JURISDICTION OVER M3 MEDIA**

Defendant M3 Media argues that the Court lacks personal jurisdiction over defendant M3 Media, which is a foreign company with headquarters in New York. Plaintiff concedes that the Court does not have general jurisdiction over M3 Media, but <u>specific</u> jurisdiction does exist by virtue of M3 Media's contract with Joe Pags. In order to support specific jurisdiction, the contract must create a "'substantial connection' with the forum." *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 230 n. 12 (Tex. 1991) (quoting *Burger King Corp. v. Rudzewicz,*

471 U.S. 462, 475 n. 18 (1985)). "That connection may exist when there is a long-term agreement, involving many contacts over a period of time." *Meader v. Ira Resources, Inc.,* 178 S.W.3d 338, 347–48 (Tex.App.-Houston [14th Dist.] 2005, no pet.) (citing *McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957)). To determine if the contract represents a substantial enough connection with Texas to constitute "purposeful availment," the Court considers the following factors: (1) prior negotiations; (2) future consequences; (3) the terms of the contract; and (4) the Parties' actual course of dealing. See *S & D Trading Acad., LLC v. AAFIS, Inc.,* 494 F. Supp. 2d 558, 565 (S.D. Tex. 2007) (citing *Burger King,* 471 U.S. at 479, 105 S.Ct. at 2185).

Here, the SAC alleges that in October 2021, Joe Pags entered into a written contract with M3 Media in the State of Texas which provided, in relevant part, that M3 Media would participate in the operation of the FB Account, among other digital assets controlled by Joe Pags. [SAC 26] Pursuant to that Agreement, Joe Pags would "have full access to the website during the term of this agreement with unlimited rights to post news and opinion to the site as they deem appropriate." Furthermore, by the express terms of that Agreement, M3 did not assume "any claim, license or other control over any of the intellectual property of Joe Pags including, but not limited to, the domain name, website, and web content hosted on behalf of those entities..."

Without any evidence, Defendants contend that that M3 Media's work was not conducted in the Texas even though they contracted to provide services to Joe Pags within the State of Texas. But at this stage, the parties have yet to conduct any jurisdictional discovery of what role M3 Media played in the maintenance of the FB Account; an account which is located in Texas by virtue of Joe Pags' ownership, operation and access thereto. Moreover, by its own terms, the contract between Joe Pags and M3 Media is of potential infinite duration. [Dkt. No. 26-8]. The first term is for 18 months, but the contract may be extended after the initial term with 30 days' notice. There is no

contractual limit on the number or duration of extensions and, therefore, the agreement can only be construed as a "long-term" agreement. *Meader v. Ira Resources, Inc.,* 178 S.W.3d 338, thereby subjecting M3 Media to specific jurisdiction.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendant's motion to dismiss the Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) should be DENIED in its entirety. In the event the Court grants the motion, Plaintiff respectfully requests leave of Court to file a third amended pleading to correct any pleading deficiencies.

Dated: September 9, 2024                    Respectfully submitted,

                                            **SANDERS LAW GROUP**

                                            By: <u>*/s Craig B. Sanders /*          </u>
                                            Craig B. Sanders
                                            James H. Freeman
                                            333 Earle Ovington Blvd., Ste. 402
                                            Uniondale, New York 11553
                                            (516) 203-7600
                                            csanders@sanderslaw.group
                                            jfreeman@sanderslaw.group

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing was served via CM/ECF on September 9, 2024 on all counsel of a record.

/s/ James H. Freeman /
James H. Freeman