IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| GLOBAL WEATHER PRODUCTIONS, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>JOE PAGS MEDIA, LLC, and McLAUGHLIN MEDIA MANAGEMENT LLC d/b/a M3 MEDIA MANAGEMENT,<br><br>*Defendants*. | Case No. 5:23-cv-01350-JKP-ESC |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................ ii

ARGUMENTS ..................................................................................................... 3

I.   The Opposition Highlights That JPM Is Not Subject to Liability Under the Copyright Act in Any Count and Should Be Dismissed From This Action ......................................................................................................... 3

   A.   There is No Plausible Direct Infringement Claim Against JPM .. 3

   B.   There is No Plausible Contributory Infringement Claim Against JPM ................................................................................................ 5

   C.   There is No Plausible Vicarious Infringement Claim Against JPM ................................................................................................ 5

II.  The Opposition Highlights That the Count Against M3 Should Be Dismissed for Lack of Personal Jurisdiction and Improper Venue ......... 8

III. The Opposition Implicitly Concedes That the SAC is Insufficient and Does Not Adequately Allege Copyright Infringement ........................ 9

CONCLUSION .................................................................................................. 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alcatel USA, Inc. v. DGI Techs., Inc.*,
    166 F.3d 772 (5th Cir. 1999) .................................................................................. 5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................. 7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................................. 7

*Bell v. Eagle Mt. Saginaw Indep. Sch. Dist.*,
    529 F. Supp. 3d 605 (N.D. Tex. 2021) ..................................................................... 8

*Cuvillier v. Taylor*,
    503 F.3d 397 (5th Cir. 2007) ................................................................................. 10

*Geophysical Serv., Inc. v. TGS-NOPEC Geophysical Co.*,
    850 F.3d 785 (5th Cir. 2017) ............................................................................... 5, 6

*MGM Studios, Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005) ............................................................................................. 5, 7

*Pervasive Software, Inc. v. Lexware GmbH & Co.*,
    688 F.3d 214 (5th Cir. 2012) ................................................................................... 8

*Randall D. Wolcott, M.D., P.A. v. Sebelius*,
    635 F.3d 757 (5th Cir. 2011) ................................................................................... 8

*Walk Haydel & Assocs. v. Coastal Power Prod. Co.*,
    517 F.3d 235 (5th Cir. 2008) ................................................................................... 8

*ZeniMax Media, Inc. v. Oculus VR, LLC*,
    166 F. Supp. 3d 697 (N.D. Tex. 2015) ................................................................ 6, 7

Plaintiff refused to serve the original complaint, despite repeated offers from M3 to accept service if Plaintiff corrected the errors with the complaint and invalid attempt at service on JPM; Plaintiff then frivolously moved for a default judgment on that complaint, misrepresenting to the Court that valid service occurred, arguing facts Plaintiff knew to be false, and forcing JPM to oppose that motion and seek dismissal for invalid service. *See, e.g.* ECF No. 7 (reflecting facially invalid service); ECF No. 11 (motion for default judgment based on invalid service); ECF No. 13 (motion to vacate default and dismiss); ECF No. 13-2 (December 22, 2023, letter advising Plaintiff of M3's responsibility for posting the video and offering to accept service if complaint is corrected so as to pursue the proper defendant); ECF No. 13-3 (January 24, 2024, letter addressing Plaintiff's invalid certificate of service as to JPM); ECF No. 13-4 (February 27, 2024, letter asking Plaintiff to correct the docket regarding invalid service so as to avoid the need for motions); ECF No. 13-5 (email memorializing Plaintiff's agreement to correct the docket as to the invalid service); ECF No. 13-6 (April 3, 2024, letter providing evidence to Plaintiff of M3's responsibility for posting the accused video so that a proper action could be filed); ECF No. 14 (opposition to motion for default judgment).

In seeking dismissal, JPM identified myriad deficiencies in the complaint. ECF No. 13. Although Plaintiff was granted leave to file a first amended complaint, ECF No. 21, the first amended complaint was even more deficient than the original complaint, *see* ECF No. 26-2. Pursuant to this Court's Standing Order in Civil Cases, Defendants sent a letter identifying the specific deficiencies in the first amended complaint to Plaintiff in an effort to avoid motion practice, providing Plaintiff the opportunity to cure the errors. *See* ECF No. 26-2.

Defendants specifically identified that (1) the lack of specificity in the allegations combined with Clement's separate lawsuit (Case No. 5:24-cv-00581-OLG, the "*Clement* lawsuit") created a deficiency as to Plaintiff's standing; (2) the exhibits in the first amended complaint did not show similarity of any protectible expression; (3) the fact that the accused video was only 0:59 in length compared to a video 3:31 in length contradicted the allegations that it was an "exact copy" of the asserted Video; (4) Plaintiff had no evidentiary basis to maintain a

1

claim of direct infringement against JPM and was violating Rule 11 by doing so; (5) there was no basis for the claim of contributory infringement because there were no factual allegations of "encouragement" or "inducement" and the evidence showed that JPM was not involved in posting the video; (6) there was no basis for the vicarious infringement claim because the evidence showed that there was no direct financial benefit to JPM; and (7) there was no personal jurisdiction in Texas over M3. ECF No. 26-2.

Despite having the opportunity to correct the errors in the first amended complaint and having Defendants' articulation of those errors (ECF No. 26-2), Plaintiff filed a Second Amended Complaint (ECF No. 25, "SAC") that **compounded those exact errors** in ways demonstrating that dismissal should be granted. *See* ECF No. 26. In moving to dismiss the SAC, Defendants' Motion (ECF No. 26) relied on evidence within the four (4) corners of the SAC, including evidence Plaintiff incorporated into the SAC, as well as judicially noticeable public records, like a federal trademark registration. Plaintiff's Opposition implicitly admits that the SAC is deficient. But Plaintiff seeks to further amend the SAC *without repleading*, by providing evidence through its Opposition that is not part of the SAC, evidence which **contradicts** the specific allegations in the SAC, arguing that this new evidence somehow supersedes the specific allegations and evidence in the SAC. *See generally* ECF No. 27.

Even if Plaintiff's new evidence is considered, the Opposition does not save the SAC from dismissal; it still fails to allege *any* plausible claim against JPM and it still fails to establish personal jurisdiction over M3. For those reasons alone the SAC is due to be dismissed. But going beyond those glaring deficiencies, if Plaintiff believes it can finally plead a proper claim against either defendant based on this new evidence, then the action should still be dismissed pursuant to the Court's Standing Order. Plaintiff chose to leave that evidence out of the complaint (ECF No. 1) and the first amended complaint (ECF No. 18), then withheld that evidence in filing the SAC (ECF No. 25) despite Defendants' letter identifying those as specific grounds requiring dismissal (ECF No. 26-2). Dismissal will give Plaintiff the opportunity to regroup, review its allegations and evidence, and file a new action—in an appropriate

jurisdiction—correcting the material errors plaguing its pleadings in this action.

## ARGUMENTS

**I. The Opposition Highlights That JPM Is Not Subject to Liability Under the Copyright Act in Any Count and Should Be Dismissed From This Action.**

Plaintiff includes Defendant JPM in all three (3) counts of the SAC, alleging that JPM "might" be liable for direct infringement, as an alternative to its allegation that M3 is liable for direct infringement, in Count I.  But it then alleges in Counts II and III, based on M3's alleged direct infringement, that JPM should be secondarily liable as a contributory infringer (Count II) and/or as a vicarious infringer (Count III).  Using the vast majority of the Opposition in trying to convince the Court to accept that Plaintiff is asserting a registered copyright—despite the allegations in the SAC alleging otherwise—the Opposition fails to address the deficiencies in the SAC regarding Plaintiff's conclusory allegations against JPM which are factually contradicted by the evidence incorporated into the SAC.

### A. There is No Plausible Direct Infringement Claim Against JPM.

Plaintiff's Opposition demonstrates that there is no basis for a direct infringement claim against JPM.  *See* ECF No. 27 at 12.[1]  Plaintiff states only that "the SAC alleges that [JPM] acted volitionally by owning and controlling the FB Account [SAC ¶ 3] and, *upon information and belief*, uploading the Video to the FB Account [SAC ¶ 29].  Alternatively, the SAC alleges that [JPM] acted volitionally by contracting with M3 Media to maintain the FB Account and, *upon information and belief*, uploading the Video to the FB Account. [SAC ¶¶ 3, 26, 30]." ECF No. 27 at 12 (emphasis added).  But the contract cited in the SAC specifically provides that M3 was responsible for controlling and uploading content to JPM's social media accounts, which includes the FB Account.  *See, e.g.*, ECF No 26-8 at 4 (services contracted include "Social Media Oversight and Posting"); ECF No. 26-9 (FB Account specifically noting that "This Page can have multiple admins. They may have permission to post content,

---

[1] Page references to Plaintiff's Opposition cite the memorandum page.  For example, ECF No. 27 at 12 refers to page 12 of the memorandum, corresponding to ECF Page 17 of 26.

comment, or send messages as the Page.").

Thus, the evidence in the SAC specifically contradicts and overcomes Plaintiff's "upon information and belief" allegations that JPM uploaded the accused video to the FB Account. It is also worth noting that prior to Plaintiff's filing of the SAC, M3 specifically admitted on at least seven (7) separate occasions, that it—not JPM—uploaded the accused video to the FB Account. *See, e.g.*, ECF Nos. 13-2, 13-3, 13-4, 13-5, 13-6, 13-7, 26-2. It is therefore unknown what "information" Plaintiff could possess to have formed a "belief" that JPM uploaded the accused video to the FB Account, and the SAC does not provide *any* factual allegation of "information" that could support such a "belief." *Cf.* ECF No. 27 at 13 (acknowledging M3's admission that it posted the accused video to the FB Account).

Plaintiff asks the Court to maintain this frivolous claim because there is the "possibility" that JPM posted the accused video to the FB Account. *See* ECF No. 27 at 12. Plaintiff mischaracterizes this as a factual dispute, *see ibid.*, but that is due to Plaintiff's failure to acknowledge that it has **no factual allegations** and **no plausible basis** for asserting JPM uploaded the accused video to the FB Account. The SAC provides direct evidence that M3 is the party that uploaded the accused video to the FB Account, ECF Nos. 26-8, 26-9, and, separately, the record shows that M3 has admitted on at least seven (7) separate occasions, including in the very letter that required Plaintiff to amend and file the SAC, that M3—not JPM—uploaded the accused video to the FB Account, *see* ECF No. 26-2.

There is no "factual dispute" that JPM did not upload the accused video, and there is no "possibility" that JPM uploaded the accused video; it was uploaded by M3, a Defendant in this action who has specifically admitted and acknowledged that it performed that act pursuant to its services agreement with JPM to provide "Social Media Oversight and Posting." *See* ECF No. 26-8 at 4. The claim of direct infringement against JPM in Count I of the SAC should be dismissed.

### B. There is No Plausible Contributory Infringement Claim Against JPM.

The Opposition clarifies that Plaintiff has no factual allegations to plausibly allege a claim of contributory infringement against JPM. Plaintiff recites its formulaic allegations in the Opposition, allegations "upon information and belief" which lack any factual information or explanation beyond the mere conclusion that JPM "caused, enabled, facilitated, and materially contributed" to M3's uploading of the accused video. *See* ECF No. 27 at 15-16. But even those conclusory allegations **only allege passive conduct by JPM**; they are not allegations that JPM "intentionally induc[ed] or encourag[ed] direct infringement" by M3. *See Geophysical Serv., Inc. v. TGS-NOPEC Geophysical Co.*, 850 F.3d 785, 798 (5th Cir. 2017) (quoting *MGM Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005)).

For contributory infringment, JPM would have needed to know that M3 was going to directly infringe, and then "intentionally induc[e] or encourag[e]" that direct infringement. *See ibid.*; *see also Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 790 (5th Cir. 1999). Plaintiff's allegations, while conclusory and discountable, are also irrelevant because there is no factual allegation that JPM knew that M3 was going to upload the accused video, performing the act of alleged direct infringement, and induced, encouraged, caused, etc., that alleged direct infringement. *See* ECF No. 27 at 15-16. The SAC, alleges only "upon information and belief" that JPM "had actual and/or constructive knowledge of M3 Media's [allegedly] infringing conduct and induced, caused, and/or materially contributed to that conduct **by failing to ensure that M3 Media had the proper license to publish copyrighted content on the FB Account**." ECF No. 25 ¶ 66. Plaintiff's "failure to supervise" allegation is the opposite of what is required under the law. *See Geophysical Serv.*, 850 F.3d at 798.

The SAC fails to allege—because it cannot—the necessary elements of a contributory infringment claim. Count II of the SAC should be dismissed.

### C. There is No Plausible Vicarious Infringement Claim Against JPM.

The Opposition highlights that the *actual evidence* for the SAC—the FB Account itself—

5

contradicts Plaintiff's conclusory and insufficient claim against JPM for vicarious infringement. *See* ECF No. 27 at 16-18.  Once again, Plaintiff's argument merely recites its conclusory allegations, arguing that they are sufficient at the pleadings stage. *Id.* at 17-18 (citing SAC ¶¶ 73-78).  But those allegations, again, are only "upon information and belief" without identifying any "information" that warrant Plaintiff's conclusory "belief."  ECF No. 25 ¶¶ 73-78. Plaintiff has no factual allegations that JPM had the "right and ability" to *actually supervise* M3's conduct, and no factual allegations that JPM received any "direct financial benefit" from the alleged infringement.  *See ZeniMax Media, Inc. v. Oculus VR, LLC*, 166 F. Supp. 3d 697, 704 (N.D. Tex. 2015); *see also Grokster*, 545 U.S. at 930 n.9 (vicarious infringement requires a defendant to "profit[] directly" from the infringement and have the "right and ability to supervise and control the direct infringer").  Plaintiff's conclusory allegations fall well short of that threshold and are factually contradicted by the evidence of the FB Account itself, evidence incorporated by reference into the SAC.

     Recognizing that its conclusory allegations are insufficient, Plaintiff's only argument in the Opposition is to characterize the FB Account as "extrinsic evidence".[2]  ECF No. 27 at 18.  Plaintiff acknowledges in its Opposition that the FB Account is not monetized, but questions whether the FB Account *could have been* monetized at the time the accused video was uploaded.  *See ibid.*  Plaintiff's argument attempts to shift the burden, suggesting that **speculative and hopeful possibilities** are sufficient in spite of the clear evidence of the FB Account itself.  If Plaintiff had a factual basis for alleging that the FB Account was monetized at the relevant time, Plaintiff had several opportunities to present that evidence; it *could have* done so in the complaint or the first amended complaint, and it *should have* done so in the SAC when this specific point was raised to Plaintiff in Defendants' letter.  *See* ECF No. 26-2 at 3. Plaintiff cannot seek refuge in "upon information and belief" pleading if it does not provide

---

[2] The ridiculousness of this assertion cannot be understated.  If the FB Account were indeed "extrinsic evidence", then the SAC does not support any cause of action because each Count relies on the FB Account and the presence of the accused video on the FB Account.

6

any "information" (i.e., factual allegations) to render such a "belief" plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (the pleading standard "demands more than the unadorned, the-defendant-unlawfully-harmed-me accusation.") (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Even considering Plaintiff's conclusory allegations on their own merit, they do not allege a **direct** financial benefit to JPM from the presence of the accused video on the FB Account. Plaintiff alleges only an *indirect* benefit, both financial and otherwise. *See* ECF No. 25 ¶¶ 73-78. The only *direct benefit* alleged is an increase in viewers of the FB Account. While that allegation is merely speculative, without any allegation to explain why the accused video would be seen by Facebook users who were not *already following* the FB Account, it is not a direct **financial** benefit—not "profit[ting] directly"—from the presence of the accused video on the FB Account. *Compare* ECF No. 25 ¶¶ 73-78 *with ZeniMax Media*, 166 F. Supp. 3d at 704 *and Grokster*, 545 U.S. at 930 n.9.

Under Plaintiff's theory, by increasing viewership of the FB Account—in some unspecified way—JPM *will be able to indirectly profit* by non-infringing means, e.g., advertising, enhanced status of his separate radio show, etc. *See* ECF No. 27 at 17-18. But Plaintiff offers nothing more than **the speculative hope** that there may be some means of increasing viewership to the FB Account or separate "corporate services and brandname", without providing any basis for the Court to accept such a conclusion and without providing any allegation as to how JPM would financially benefit *from the alleged infringement* by M3. *See Grokster*, 545 U.S. at 930 n.9. Plaintiff's argument also overlooks that its "screengrab" of the FB Account has no advertising associated with that posting, no link to any other JPM website, and no means to monetize the presence of the accused video on that page. *See* ECF No. 25-2.

Plaintiff's attempts to save this claim by asserting that the FB Account itself, the very account cited extensively throughout the SAC and relied upon by Plaintiff to allege all causes of action, is "extrinsic evidence" that cannot be relied upon. ECF No. 27 at 18. But the FB Account is central to the SAC, relied upon by Plaintiff, and is therefore incorporated into the

7

SAC.  *See* ECF No. 26 at 7-8, 16 (addressing that the FB "About" page is incorporated into the SAC); *see also Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011); *Bell v. Eagle Mt. Saginaw Indep. Scho. Dist.*, 529 F. Supp. 3d 605, 611 (N.D. Tex. 2021).

The SAC fails to allege—because it cannot—the necessary elements of a vicarious infringment claim. Count III of the SAC should be dismissed

## II. The Opposition Highlights That the Count Against M3 Should Be Dismissed for Lack of Personal Jurisdiction and Improper Venue.

The SAC only alleges that M3 is liable (as an alternative to JPM being liable) for direct copyright infringement based on M3's posting of the accused video on the FB Account.  ECF No. 25 ¶¶ 51-60.  But the SAC does not, and Plaintiff cannot, satisfy its pleading-stage burden of making a *prima facie* showing of personal jurisdiction over M3 in Texas.  *See* ECF No. 26 at 17-18; *see also Pervasive Software, Inc. v. Lexware GmbH & Co.*, 688 F.3d 214, 219 (5th Cir. 2012).  After the pleadings stage, a plaintiff must establish by a preponderance of the evidence that jurisdiction over a defendant is proper, either at a pre-trial evidentiary hearing or at trial.  *Walk Haydel & Assocs. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241-42 (5th Cir. 2008).  Plaintiff has failed to meet its pleading burden and cannot meet its evidentiary burden if this case was to go forward.  ECF No. 26 at 17-18.[3]

As implicitly conceded in Opposition, Plaintiff has no evidence to make a *prima facie* showing of personal jurisdiction over M3 in Texas. *See* ECF No. 27 at 18-20.  Plaintiff's **only basis** for alleging personal jurisdiction over M3 in Texas is the *existence of* the JPM-M3 contract.  *See* ECF No. 27 at 19 (citing ECF No. 26-8 (contract)).  Interestingly, Plaintiff cites factors for the Court's consideration, e.g., prior negotiations, future correspondence, terms of the contract, parties' course of dealings, but does not identify **any** aspect of the contract that supports jurisdiction based on those factors.  ECF No. 27 at 19.  The contract itself, however,

---

[3] Indeed, if this case was to go forward, the Court should conduct an evidentiary hearing on whether M3 is subject to personal jurisdiction in Texas before permitting Plaintiff to waste further time and resources addressing the merits of the case, so as to avoid unnecessary labor by the parties and the Court.  *See Walk Haydel*, 517 F.3d at 241-42 n.10 (collecting cases).

references communications with M3 *at M3's location*.  ECF No. 26-8 at 6-7 (payments to be made to non-resident M3).  It also recites the terms, timeline, length of relationship, etc.  *See* ECF No. 26-8.  None of these terms provide a basis for M3's conduct outside of Texas to be somehow "deemed" sufficient for specific personal jurisdiction; M3's conduct was performed by M3's personnel—who are not located in Texas, as conceded by Plaintiff.

As addressed above, the SAC and Plaintiff's arguments make clear that JPM is not, and cannot be, liable for direct infringement, contributory infringement, or vicarious infringement.  *Supra*, §I.  This is a case brought by a non-Texas entity (Plaintiff), against a non-Texas entity (M3), about conduct that did not occur in Texas (posting on Facebook).  Personal Jurisdiction over M3 is not sufficiently pleaded and would not be able to be factually established.  The only claim against M3, Count I, should be dismissed for lack of personal jurisdiction so that Plaintiff can try again (if it has sufficient evidence) in a proper jurisdiction.

### III. The Opposition Implicitly Concedes That the SAC Is Insufficient and Does Not Adequately Allege Copyright Infringement.

Finally, Plaintiff's Opposition implicitly concedes that the SAC is deficient as to all claims and must be amended in at least the way Plaintiff attempts to do *through* its Opposition.  *See* ECF No. 27.  Plaintiff concedes that the SAC alleges that (1) a 3:07 Video is registered with the U.S. Copyright Office, (2) that the video "screengrab" attached to the SAC and compared to the accused video, is a 3:31 video, and (3) that the video posted to YouTube is a 3:32 video.  *See* ECF No. 27 at 8-9 and n.4.  Despite the discussions specifically addressing the length of the videos as evidencing Plaintiff's deficient pleading, *see* ECF No. 26-2 at 2 (addressing the facial deficiency in alleging that a 0:59 video is an "exact copy" of a 3:31 video), Plaintiff's SAC compounded that problem by adding in new allegations specifically addressing a 3:07 video as being the registered video and providing a YouTube link to a 3:32 video.  *See* ECF No. 25 ¶ 16.  Plaintiff's Opposition now asserts that this was a "typographical error", attempting to amend the allegations of the SAC once again.  *See* ECF No. 27 at 9.

Further, despite Defendants addressing that the "screengrab" comparison in the first

9

amended complaint (ECF Nos. 18-1, 18-2) showed different lighting, angle, subject matter, etc., ECF No. 26-2 at 2, Plaintiff included the same deficient exhibits in the SAC, *see* ECF Nos. 25-1, 25-2. After choosing to maintain this deficiency in filing the SAC, Plaintiff now attempts to cure it through additional evidence. *See* ECF No. 27 at 10 (providing a new image comparison); *see also* ECF No. 27–2 (YouTube screenshot). Such evidence could have, and should have, been provided in the SAC to avoid having to address this issue in the Motion.

Likewise, Plaintiff's standing deficiency based on the separate *Clement* lawsuit and counsel's assertions to *that* court were addressed to Plaintiff's counsel before the SAC was filed. ECF No. 26-2. Yet Plaintiff maintained that knowingly invalid action until September 6, 2024, the last court day before its Opposition to the present Motion was due. *See* ECF No. 27-10. Plaintiff could have dismissed that action prior to forcing Defendants to address the issue in their Motion, but maintained it so that Defendants were required to do so.

The SAC is deficient and must be amended. Plaintiff concedes as much by providing replacement evidence and allegations in the Opposition.[4]

## CONCLUSION

"[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Culliver v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 558) (alterations omitted). Here, the allegations and Plaintiff's Opposition clarify *at least* that (1) there are no plausible claims against JPM and (2) M3 is not subject to personal jurisdiction in Texas. Plaintiff also implicitly concedes that the SAC, as filed, is insufficient and must be amended as it attempt to do through its Opposition. The action should be dismissed for Plaintiff to try again, if it can, in a proper jurisdiction.

---

[4] Plaintiff's remaining arguments do not bear addressing, as Plaintiff's free licensing to YouTube users and the accused video being a news clip reproduced about, and during, a newsworthy event, can both be developed through Plaintiff's licensing practices to Weather-Nation TV and evidence demonstrating YouTube's "Service" allows users to download videos, and is not limited to embedding them.

Dated: September 16, 2024                     Respectfully submitted,

*/s/ Andrew D. Lockton*
Edward F. McHale
Florida Bar No. 190300
Andrew D. Lockton
Florida Bar No. 115519
California Bar No. 301186
**MCHALE & SLAVIN, P.A.**
2855 PGA Boulevard
Palm Beach Gardens, Florida 33410
(561) 625-6575
(561) 625-6572 fax
emchale@mchaleslavin.com
alockton@mchaleslavin.com
litigation@mchaleslavin.com

*Attorneys for Defendants Joe Pags Media, LLC and McLaughlin Media Management, LLC*
