**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| GLOBAL WEATHER PRODUCTIONS, LLC, | § | |
| | § | Case No. 5:23-cv-01350-MA-ESC |
| *Plaintiff*, | § | |
| v. | § | |
| JOE PAGS MEDIA, LLC, | § | |
| *Defendant*. | § | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant Joe Pags Media, LLC respectfully moves, pursuant to Rule 56, Fed. R. Civ. P., for the Court to enter judgment in favor of JPM on each of the claims in Plaintiff Global Weather Productions, LLC's Second Amended Complaint (ECF No. 25), as set forth in the accompanying memorandum of law and supported by the attached Appendix.

Dated: January 22, 2026

Respectfully submitted,

*<u>/s/ Andrew D. Lockton</u>*
Edward F. McHale
FL Bar No. 190300
Andrew D. Lockton
FL Bar No. 115519
CA Bar No. 301186
**MCHALE & SLAVIN, P.A.**
2855 PGA Boulevard
Palm Beach Gardens, Florida 33410
(561) 625-6575
emchale@mchaleslavin.com
alockton@mchaleslavin.com
litigation@mchaleslavin.com

*Attorneys for Defendant Joe Pags Media, LLC*

# TABLE OF CONTENTS

Page

Table of Authorities ........ ii

Introduction ........ 1

Statement of Undisputed Facts ........ 2

Legal Standard ........ 6

Arguments ........ 7

I. Judgment Should Be Entered for Defendant JPM on Count I Because the Only Evidence Demonstrates That JPM Did Not Directly Infringe Plaintiff's Copyright ........ 7

II. Judgement Should Be Entered for Defendant JPM on All Counts Because the Plaintiff Cannot Prove "Substantial Similarity" Between the 0:59 Accused Video Clip and the Asserted 3:07 Video ........ 8

III. Judgment Should Be Entered for Defendant JPM on Count II Because There is No Genuine Dispute That JPM Did Not Contributorily Infringe Plaintiff's Copyright ........ 10

IV. Judgment Should Be Entered for Defendant JPM on Count III Because There is No Genuine Dispute That JPM Did Not Vicariously Infringe Plaintiff's Copyright ........ 11

A. JPM Did Not Have the "Right and Ability to Control or Supervise" M3's Conduct in Posting the Accused Video Clip ........ 12

B. JPM Did Not Receive a "Direct Financial Benefit" From the Accused Video Clip Being Posted on the Facebook Account ........ 14

V. Judgment Should Be Entered for Defendant JPM on Its "Fair Use" Affirmative Defense Because the Alleged Copyright Infringement Was Posting the 0:59 Accused Video Clip of a News Broadcast Alerting the Public About Dangerous Weather Conditions, Without Impacting Plaintiff's Ability to Exploit Its Work in Any Way ........ 16

VI. Judgment Should Be Entered for Defendant JPM on Its Unclean Hands Affirmative Defense Due to Plaintiff's Misconduct ........ 19

Conclusion ........ 21

Certificate of Service ........ 23

## TABLE OF AUTHORITIES

Page(s)

Cases

*Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772 (5th Cir. 1999)................................ 10-11

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........................................................ 6-7

*Bell v. Eagle Mt. Saginaw Indep. Sch. Dist.*, 27 F.4th 313 (5th Cir. 2022)....................... 16-18

*Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 577 (5th Cir. 2003)..........................................9

*BWP Media USA, Inc. v. T & S Software Assocs., Inc.*, 852 F.3d 436 (5th Cir. 2017) .......... 7-8

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994) ...............................................16, 18

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)........................................................................ 6-7

*Cmty. For Creative Non-Violence v. Reid*, 490 U.S. 730 (1989) ............................................13

*Compaq Computer Corp. v. Ergonome Inc.*, 137 F. Supp. 2d 768 (S.D. Tex. 2001)............. 6-7

*Compaq Comput. Corp. v. Ergonome Inc.*, 387 F.3d 403 (5th Cir. 2004) .........................16, 18

*Creations Unlimited, Inc. v. McCain*, 112 F.3d 814 (5th Cir. 1997).................................. 8-10

*Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082 (5th Cir. 1994) .............................................7, 15

*Dynastudy, Inc. v. Houston Indep. Sch. Dist.*, 325 F. Supp. 3d 767, 777 (S.D. Tex. 2017) .....12

*Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2014)..............................................................14

*EMI Christian Music Grp. v. MP3tunes, LLC*, 844 F.3d 79 (2d Cir. 2016)............................14

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991) ..............................................8

*Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 (9th Cir. 1996).......................................12

*Fruge v. Parker Drilling Co.*, 337 F.3d 558 (5th Cir. 2003) ...................................................13

*General Bldg. Contractors Ass'n v. Pa.*, 458 U.S. 375 (1982) ...............................................13

*Geophysical Serv., Inc. v. TGS-NOPEC Geophysical Co.*, 850 F.3d 785 (5th Cir. 2017) . 10-11

*Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 32 (2021) .........................................................17

*Harper & Row, Publrs. v. National Enters.*, 471 U.S. 539 (1985) .................................. 16-18

*Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224 (5th Cir. 2016)......................................7, 15

Cases—continued

*Janes v. Watson*, No. SA-05-CA-0473-XR, 2006 WL 2322820 (W.D. Tex. Aug. 2, 2006) ....20

*Johnson v. Globalsantafe Offshore Servs.*, 799 F.3d 317 (5th Cir. 2015) ....13

*Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240 (1933) ....19

*King v. Ames*, 179 F.3d 370 (5th Cir. 1999) .... 9-10

*Latimer v. Smithkline & French Lab.*, 919 F.2d 301 (5th Cir. 1990) ....6

*Lawler v. Gilliam*, 569 F.2d 1283 (4th Cir. 1978) ....19

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) .... 6-7, 15

*Logue v. United States*, 412 U.S. 521 (1973) ....13

*Lujan v. National Wildlife Fed'n*, 497 U.S. 871 (1990) ....7, 15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) .... 6-7, 15

*MGM Studios, Inc. v. Grokster*, 545 U.S. 913 (2005) .... 8, 10-12, 14

*Mitchell Bros. Film Group v. Cinema Adult Theater*, 604 F.2d 852 (5th Cir. 1979) ....19

*Monge v. Maya Mags., Inc.*, 688 F.3d 1164 (9th Cir. 2012) ....16

*Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318 (1992) ....13

*Nola Spice Designs, L.L.C. v. Haydel Enters.*, 783 F.3d 527 (5th Cir. 2015) ....9

*NXIVM Corp. v. Ross Inst.*, 364 F.3d 471 (2d Cir. 2004) ....17

*Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701 (9th Cir. 2007) ....12

*Peel & Co. v. The Rug Market*, 238 F.3d 391 (5th Cir. 2001) .... 9-10

*Richardson v. Townsquare Media, Inc.*,
No. 24-CV-4217, 2025 WL 89191 (S.D.N.Y. Jan. 14, 2025) ....9

*Rudkowski v. Mic Network, Inc.*,
No. 17-CV-3647, 2018 WL 1801307 (S.D.N.Y. Mar. 23, 2018) ....9

*Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) .... 7-8

*Sony Music Ent. v. Cox Communs., Inc.*, 93 F.4th 222 (4th Cir. 2022) ....12, 14

*Stewart v. Abend*, 495 U.S. 207 (1990) ....17

Cases—continued

*Voces v. Energy Res. Tech., G.O.M., L.L.C.*, 704 Fed. Appx. 345 (5th Cir. 2017)....................13

Statutes

Copyright Act of 1976, 17 U.S.C. § 101, *et seq.*
17 U.S.C. § 107....................16
17 U.S.C. § 107(3)....................18
17 U.S.C. § 107(4)....................18

Rules

Federal Rules of Civil Procedure
56(a)....................6
56(e)....................7

Other Authorities

2 F. Harper & F. James, Law of Torts § 26.3 (1956)....................13

Barton Beebe, *An Empirical Study of U.S. Copyright Fair Use Opinions, 1978-2005*, 156 U. Pa. L. Rev. 549, 584 (2008)....................16

Melville B. Nimmer & David Nimmer, 4 *Nimmer on Copyright* § 13.05(A)(4) (Matthew Bender rev. ed. 2021)....................16-17

Restatement (Second) of Agency (1958)
§ 1....................13
§ 220....................13
§ 220(2)....................13

W. Seavey, Law of Agency § 84 (1964)....................13

Pursuant to Rule 56, Fed. R. Civ. P., Defendant Joe Pags Media, LLC (hereafter "JPM") respectfully moves for summary judgment and/or partial summary judgment to be entered in its favor and against Plaintiff Global Weather Productions, LLC, on Counts I–III contained the Second Amended Complaint (ECF No. 25, "SAC").

## INTRODUCTION

Summary Judgment should be entered for JPM on each of Counts I–III of the SAC. JPM, however, does not have any liability under the Copyright Act. Each of the claims in this action is based on the posting of a fifty-nine-second (0:59) "Accused Video Clip" on a Facebook account associated with JPM. Count I asserts direct copyright infringement. But the Accused Video Clip was posted by third-party independent contractor McLaughlin Media Management LLC d/b/a M3 Media Management ("M3"), more specifically, by one of M3's principals, Blair Cullen. Because JPM did not post the Accused Video Clip, it did not directly infringe Plaintiff's copyright in the asserted Video. Judgement for JPM should be entered on Count I because JPM did not post the Accused Video Clip and, therefore, did not commit any act of alleged direct infringement.

Count II asserts contributory copyright infringement, but JPM did not encourage or contribute to that posting. Count III asserts vicarious copyright infringement, but JPM did not have the right and ability to supervise the conduct of its independent contractor, M3. Moreover, that posting did not result in any direct financial benefit to JPM. JPM did not even know about the posting until it was raised by Plaintiff through this lawsuit. Because M3 is an independent contractor, hired to independently manage and control various online accounts associated with JPM, including the Facebook account, and posted the Accused Video Clip without JPM's knowledge or involvement, JPM could not contributorily infringe or vicariously infringe Plaintiff's copyright. Regardless of whether M3 committed an act of infringement by posting the Accused Video Clip, the Copyright Act does not provide for or impose any liability on JPM.

Additionally, summary judgment should be entered for JPM on all Counts because Plaintiff does not have sufficient evidence to establish the necessary element of "substantial similarity" between the registered three-minute-and-seven-second (3:07) Video and the fifty-nine-second

(0:59) Accused Video Clip. Without being able to establish "substantial similarity," Plaintiff cannot establish that posting the 0:59 Accused Video Clip constitutes actionable copyright infringement, fatal to all of Plaintiff's claims. Plaintiff's only evidence is a single screenshot image from the 0:59 Accused Video Clip on the Facebook account. However, that screenshot bears the registered trademark of WeatherNation TV, Inc., confirming that the Accused Video Clip was something different than the registered 3:07 Video. Plaintiff did not archive the Accused Video Clip before commencing this action and the Accused Video Clip was removed from the Facebook account at Plaintiff's instruction. Neither Plaintiff, JPM, nor M3 has a copy of the Accused Video Clip, meaning that a jury would be unable to compare the 0:59 Accused Video Clip to the 3:07 Video to determine if actionable copying occurred.

## STATEMENT OF UNDISPUTED FACTS

Each Count in the SAC is based on the alleged infringement of Plaintiff's three-minute-and-seven-second (3:07) video of water rescues occurring on Interstate 30 in downtown Dallas, after a flash flooding event in August 2022 (the "Video"). ECF No. 25 ¶¶ 2, 16, 27–28; Counts I–III. A fifty-nine-second (0:59) video clip (the "Accused Video Clip") was posted to the Facebook account associated with JPM. ECF No. 25 ¶¶ 27–28.

JPM did not reproduce, distribute, or display the Plaintiff's Video. Ex. A, ¶¶ 5–12; Ex. B, ¶¶ 5–16. The Accused Video Clip was posted to the Facebook account by Mr. Blair Cullen of M3, an independent contractor hired by JPM to, among other roles, manage JPM's social media. Ex. A, ¶¶ 5–12; Ex. B, ¶¶ 5–16; ECF No. 25 ¶ 28. JPM did not commit a volitational act related to the alleged copyright infringement. Ex. A, ¶¶ 5–6; Ex. B, ¶ 16. JPM did not post the Accused Video Clip on the Facebook account, it did not authorize that posting, and it did not even know about that posting until after this litigation was instituted. Ex. A, ¶¶ 5–12; Ex. B, ¶¶ 5–16. Following the institution of this action, M3 was notified that it needed to remove the 0:59 Accused Video Clip from the Facebook account, and immediately complied. *See, e.g.*, Ex. L at 1; Ex. D at 272:5–273:2, 275:25–276:8.

Plaintiff was informed by at least December 22, 2023, that M3—**not JPM**—posted the Accused Video Clip on the Facebook account, and that JPM did not directly infringe Plaintiff's copyright. Exs. G, H, I, J, L. After that correspondence, Plaintiff filed a "Certificate of Service", stating that service occurred. ECF No. 7; *cf.* Ex. G. Plaintiff was informed, again, that it was pursuing the wrong party, and Plaintiff was informed that its attempted service was legally deficient and, therefore, void. Ex. H. When the Clerk modified the docket entry to reflect "SUMMONS RETURN EXECUTED," despite no such executed return having been filed, Plaintiff was notified, *again*, that service never occurred and that Plaintiff was pursuing the wrong party. Ex. I.

On March 5, 2024, Plaintiff filed a motion for clerk's default with an affidavit asserting under penalty of perjury that service had occurred. ECF No. 8. Relying on that affidavit, the Clerk entered a default. ECF No. 9. On March 13, 2024, counsel for JPM telephoned counsel for Plaintiff to address (1) that service had never occurred and (2) that Plaintiff was pursuing the wrong party. Ex. J. It was discussed that Plaintiff was pursuing its claim against JPM merely based on the *appearance* that JPM was the entity that posted the Accused Video Clip. Ex. J. JPM produced the contract with M3 to demonstrate that M3—not JPM—was the proper entity to pursue. Ex. J. It was expressly stated at that time that "it is most efficient and economical for all parties and the Court if the Texas suit was simply dismissed, rather than engaging in unnecessary motion practice. Then, [Plaintiff] and M3 can either attempt to resolve this dispute between themselves or through separate litigation in the Southern District of New York." Ex. J.

Despite those communications, Plaintiff filed a motion for default judgment, once again stating under oath that proper service occurred. ECF No. 11. As a result, JPM had to engage in motion practice, *see, e.g.*, ECF Nos. 13, 14, that far exceeded the value of this action, *see* Ex. C at 133:13–134:24 (discussing licenses to commercial news agencies for only $2,500). In response to that motion practice, Plaintiff filed an amended complaint (ECF No. 18), and then the SAC (ECF No. 25), attempting to add M3 as a defendant in *Texas*, where it was not subject to personal jurisdiction. *See, e.g.*, ECF Nos. 18, 25, 26, 29 (dismissing M3 for lack of personal jurisdiction).

In August of 2025, Plaintiff filed a separate litigation against M3 in the Southern District of New York, based on M3 posting the Accused Video Clip on the Facebook account and, thereby, committing the act of alleged *direct* copyright infringement at issue in this action. Exs. E, F.

Plaintiff's allegation that the 0:59 Accused Video Clip constitutes copyright infringement is based on a single screenshot—a still image—from the 0:59 Accused Video Clip. ECF No. 25-2. Plaintiff does not have a copy of the Accused Video Clip and has not presented any evidence comparing the Accused Video Clip to the asserted 3:07 Video. *See* ECF No. 45 at 5.

In October of 2021, JPM hired M3 as an independent contractor and turned over ownership and control of the Facebook account to M3 so that M3 could independently manage and control the Facebook account. Ex. A, ¶¶ 7–12; EX. B, ¶¶ 5–8, 11–16; Ex. J at 3–13 (Agreement). JPM was not aware that M3 posted the 0:59 Accused Video Clip until after the lawsuit was filed, as JPM is not involved in the management of the Facebook account. Ex. A, ¶¶ 5–12; *see also* Ex. B, ¶¶ 5–8, 12–17. Further, JPM did not participate in the posting of the Accused Video Clip and did not induce, cause, or contribute to the posting of the Accused Video Clip. Ex. A, ¶¶ 5–12; EX. B, ¶¶ 5–8, 11–16. JPM hired M3 as an independent contractor to perform technical web-related services so that JPM would not have to supervise or be involved in those activities and could instead focus on its business of putting on a talk radio show. Ex. A, ¶¶ 5–12; EX. B, ¶¶ 5–8, 11–16. M3 was hired as an independent contractor, so that it would independently manage the technical aspects of its website, newsletter, and social media management services. Ex. A, ¶¶ 7–12; Ex. B, ¶¶ 5–8, 11–16. From JPM's perspective, "Facebook" is, and was, a "nonentity" to JPM, particularly since, at the relevant time, the Facebook account was "blocked" or "blacklisted" by Meta. Ex. A, ¶¶ 13–16; Ex. B, ¶ 20; Ex. C at 68:14–69:6, 86:5–18, 128:17–23.

M3 was not acting under the control of JPM. Ex. B, ¶ 12. Rather, M3 was given autonomy, independent authority and control, to perform services under the contract with JPM. Ex. A, ¶¶ 7–12; Ex. B, ¶¶ 5–8, 11–16; Ex. C at 30:1–10, 82:22–86:18, 93:9–15, 112:5–113:2; *see also* Ex. C at 46:2–20 (addressing M3's autonomy with respect to the joepags.com website). As part of that agreement, M3 became the "owner" and "administrator" of the Facebook account, and JPM was

merely a user that had limited rights with respect to the Facebook account. Ex. A, ¶ 12; Ex. B, ¶¶ 13–14.

JPM did not directly profit from M3's posting of the 0:59 Accused Video Clip on the Facebook account; JPM did not receive any direct financial benefit from that conduct. *See, e.g.*, Ex. A, ¶¶ 13–16: Ex. B, ¶¶ 19–20; Ex. C at 58:2–17, 74:13–75:19, 80:4–19, 95:8–96:17, 133:13–135:11; Ex. D at 171:16–25. During the corporate deposition of M3, it was explained that any revenue from the Facebook account would have been provided directly to M3, not JPM, being deposited in a single account that receives revenue from Meta for *all* of M3's clients. Ex. D at 324:20–329:15. There is no evidence that JPM received any revenue from the posting of the Accused Video Clip.

The 0:59 Accused Video Clip was a publication from a news company, WeatherNation TV, Inc., about dangerous weather conditions that existed at the time it was posted. ECF No. 25-2 (description and screenshot showing WeatherNation TV trademark); Ex. M (WeatherNation TV trademark registration). Both the 0:59 Accused Video Clip and the 3:07 Video include a recording of a factual event—water rescues during a dangerous weather event—and the 0:59 Accused Video Clip was from a news video that included a *de minimis* portion of the recordation of that event. ECF No. 25 ¶ 2; ECF No. 25-2 (description and screenshot showing WeatherNation TV trademark); Ex. M (WeatherNation TV trademark registration). In posting the Accused Video Clip, M3's purpose was to alert people about the dangerous weather conditions occurring that day and a water rescue due to those dangerous conditions. ECF No. 25-2 (screenshot showing WeatherNation TV trademark with description: "Heavy rain causes flooding, road closures and dramatic rescue in Dallas, TX"); Ex. D at 245:20–247:12. But only a *de minimis* portion of the Plaintiff's 3:07 Video was used in posting the 0:59 Accused Video Clip. Ex. D at 245:20–247:12, 251:19–252:7.

The posting of the Accused Video Clip did not impact Plaintiff's ability to license its 3:07 Video. *See* Ex. C at 133:22–134:24. Prior to any licensing activity, Plaintiff posted the 3:07 Video to YouTube, freely disseminating the Video for the public to view and share online for free. ECF

No. 25 ¶ 16; ECF No. 26-5 (YoutTube Terms of Service) at 4–5 (uploading to YouTube authorizes other users the right to "access [the] Content through the Service, and to use that Content, including to reproduce, distribute, prepare derivative works, display, and perform it, only as enabled by a feature of the Service (such as video playback or embeds)."). Despite making it available for free online, Plaintiff was still able to license its 3:07 Video to large commercial news entities. *See* Ex. C at 133:22–134:24.

## LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). The existence of a factual dispute is not by itself sufficient grounds to defeat a motion for summary judgment; rather, "the requirement is that there can be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). A dispute is "genuine" if a reasonable trier of fact could return a verdict for the nonmovant. *Id.* at 248. A fact is "material" only if it "might affect the outcome of the suit under the governing law." *Ibid.* In deciding a motion for summary judgment, all evidence and reasonable inferences are viewed in the light most favorable to the nonmovant. *Id.* at 249.

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion. *Celotex*, 477 U.S. at 323. "If the non-movant bears the burden of proof at trial, however, the movant for summary judgment need not support the motion with evidence negating the opponent's case." *Compaq Computer Corp. v. Ergonome Inc.*, 137 F. Supp. 2d 768, 771 (S.D. Tex. 2001); *accord Celotex*, 471 U.S. at 323–25. "Instead, the movant may satisfy its burden by showing that there is an absence of evidence to support the non-movant's case." *Compaq*, 137 F. Supp. 2d at 771 (citing *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990) and *Little*, 37 F.3d at 1075).

If the movant carries that initial burden, the burden shifts to the nonmovant to present competent summary judgment evidence showing the existence of a genuine dispute. *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *see also Little*, 37 F.2d at 1075 (citing *Celotex*, 477 U.S. at 325); Fed. R. Civ. P. 56(c). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' . . . by 'conclusory allegations,' . . . by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little*, 37 F.3d at 1075 (quoting *Matsushita*, 475 U.S. at 586; *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 871–73 (1990); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994)); *accord Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 234 (5th Cir. 2016) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment."). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247-48 (emphasis in original). "Rather, the moving party must 'come forward with "specific facts showing that there is a genuine issue for trial."'" *Compaq*, 137 F. Supp. 2d at 771 (quoting *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e))).

## ARGUMENTS

### I. Judgment Should Be Entered for Defendant JPM on Count I Because the Only Evidence Demonstrates That JPM Did Not Directly Infringe Plaintiff's Copyright.

Judgment should be entered for JPM on Count I because the undisputed facts establish that JPM **did not** commit any act of direct copyright infringement. JPM did not reproduce, distribute, or display the Plaintiff's Work; the Accused Video Clip was posted online by Mr. Cullen of M3, an independent contractor hired by JPM to, among other roles, manage JPM's social media. Ex. A, ¶¶ 5–12; Ex. B, ¶¶ 5–16. Indeed, Plaintiff has admitted in a related action that M3 Media—not JPM—committed the act of *direct* copyright infringement. Exs. E, F. "When there is a question as to who infringed, the analysis can turn on whether the type of infringement is direct or secondary." *BWP Media USA, Inc. v. T & S Software Assocs., Inc.*, 852 F.3d 436, 439 (5th Cir. 2017). "Direct liability is imposed on those who 'trespass[] into [the copyright owner's] exclusive domain by using or authorizing the use of the copyrighted work . . . .'" *Ibid.* (quoting *Sony Corp. of*

*America v. Universal City Studios, Inc.*, 464 U.S. 417, 433 (1984)). "Secondary liability involves liability for actions of third parties." *Ibid.* (citing *MGM Studios, Inc. v. Grokster*, 545 U.S. 913, 930 (2005)). For direct copyright infringement, a plaintiff must prove (1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original. *Id.* at 438-39 (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). Direct copyright infringement also requires volitional conduct by the defendant, which is "conduct by a person who causes in some meaningful way an infringement." *Id.* at 440 and n.1 (quotation omitted).

The facts here are clear and undisputable. JPM did not commit a volitational act related to the alleged copyright infringement. Ex. A, ¶¶ 5–6; Ex. B, ¶ 16. JPM did not post the Accused Video Clip on the Facebook account, it did not authorize that posting, and it did not even know about that posting until after this litigation was instituted. Ex. A, ¶¶ 5–12; Ex. B, ¶¶ 5–16. In fact, Plaintiff has known for over 2 years that M3—**not JPM**— posted the Accused Video Clip online, and that JPM did not directly infringe Plaintiff's copyright. Exs. G, H, I, J, L. Plaintiff has now conceded that M3—**not JPM**—committed the act of *alleged* direct infringement by posting the Accused Video Clip on the Facebook account, and has filed a separate lawsuit against M3 for that act of direct infringement, implicitly conceding that judgment should be entered for JPM on Count I. Exs. E, F.

Accordingly, there is no evidence to raise a genuine dispute of material fact regarding Count I, and judgment on Count I should be entered for JPM.

## II. Judgment Should Be Entered for Defendant JPM on All Counts Because The Plaintiff Cannot Prove "Substantial Similarity" Between the 0:59 Accused Video Clip and the Asserted 3:07 Video.

"Not all copying, however, is copyright infringement." *Feist*, 499 U.S. at 361. "To determine whether an instance of copying is *legally actionable*, a side-by-side comparison must be made between the original and the copy to determine whether a layman would view the two works as 'substantially similar.'" *Creations Unlimited, Inc. v. McCain*, 112 F.3d 814, 816 (5th Cir. 1997)) (emphasis in original). Assessing "substantial similarity" requires a side-by-side comparison of the copyrighted work and the allegedly infringing work, so that the factfinder can assess whether

they are "substantially similar." *See, e.g.*, *ibid.*; *Nola Spice Designs, L.L.C. v. Haydel Enters.*, 783 F.3d 527, 550 (5th Cir. 2015); *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 577 (5th Cir. 2003) ("[T]he law of this circuit prohibits finding copyright infringement without a side-by-side comparison of the works.").

Here, however, Plaintiff lacks evidence to permit a factfinder to conduct the required "substantial similarity" analysis between (1) the 0:59 Accused Video Clip posted on the Facebook Account and (2) the 3:07 Video asserted as being infringed. This failure of proof is fatal to all of Plaintiff's claims because it means there is no genuine issue of material fact regarding direct infringement. *See King v. Ames*, 179 F.3d 370, 376 (5th Cir. 1999) ("[C]opying is an issue to be determined by comparison of works, not credibility. King's failure to adduce evidence for such a comparison vitiates her claim.") (citation omitted); *Peel & Co. v. The Rug Market*, 238 F.3d 391, 398 (5th Cir. 2001) (summary judgment is proper on copyright infringement claim if the evidence does not permit a finding of substantial similarity). As reflected in Plaintiff's proposed exhibit list (ECF No. 45), Plaintiff's only evidence to support substantial similarity is a copy of the 3:07 Video, and a ***screenshot*** of the alleged copyright infringement, i.e., a single still image from the 0:59 Accused Video Clip. *See* ECF No. 45 at 5.

A single screenshot from the 0:59 Accused Video Clip is legally insufficient to establish "substantial similarity" between the works, rendering Plaintiff unable to establish infringement of its copyright. "Single still-frame screenshots from videos posted on social media platforms, which make up only a very small fraction of the original video, are generally considered to constitute *de minimis* use and fall below the substantial similarity threshold." *Richardson v. Townsquare Media, Inc.*, No. 24-CV-4217, 2025 WL 89191, at *4 (S.D.N.Y. Jan. 14, 2025); *see also Rudkowski v. Mic Network, Inc.*, No. 17-CV-3647, 2018 WL 1801307, at *4 (S.D.N.Y. Mar. 23, 2018).

Here, M3 was notified that it needed to remove the 0:59 Accused Video Clip from the Facebook account, and immediately complied. *See, e.g.*, Ex. L at 1; Ex. D at 272:5–273:2, 275:25–276:8. As a result, there is no copy of the 0:59 Accused Video Clip for a potential jury to compare to the 3:07 Video to conduct the *required* side-by-side analysis, i.e., the jury cannot determine

whether a copyright infringement occurred. *See, e.g.*, *Creations Unlimited*, 112 F.3d at 816 ("To determine whether an instance of copying is *legally actionable*, a side-by-side comparison must be made between the original and the copy to determine whether a layman would view the two works as 'substantially similar.'") (emphasis in original); *King*, 179 F.3d at 376 ("[C]opying is an issue to be determined by comparison of works, not credibility. King's failure to adduce evidence for such a comparison vitiates her claim.") (citation omitted); *Peel*, 238 F.3d at 398 (summary judgment is proper on copyright infringement claim if the evidence does not permit a finding of substantial similarity).

Accordingly, partial summary judgment should be entered that the 0:59 Accused Video Clip is not substantially similar to the 3:07 Video. Without "substantial similarity", Plaintiff cannot establish infringement of the copyright, which then requires summary judgment to be entered for JPM on Counts I–III of the Second Amended Complaint.

## III. Judgment Should Be Entered for Defendant JPM on Count II Because There is No Genuine Dispute That JPM Did Not Contributorily Infringe Plaintiff's Copyright.

Judgment should be entered for JPM on Plaintiff's secondary liability theory of contributory infringment in Count II because the undisputed facts establish that JPM did not "intentionally induce or encourage" the alleged direct infringement. Contributory infringement is "intentionally inducing or encouraging direct infringement." *Geophysical Serv., Inc. v. TGS-NOPEC Geophysical Co.*, 850 F.3d 785, 798 (5th Cir. 2017) (quoting *Grokster, Ltd.*, 545 U.S. at 930). To establish a claim for contributory infringement, a copyright owner must show that the defendant, with knowledge of the allegedly infringing activity, induced, caused or materially contributed to the infringing conduct of another. *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 790 (5th Cir. 1999).

Here, the undisputed facts clearly establish that JPM (1) lacked knowledge of the allegedly infringing activity until after this lawsuit was filed, and (2) did not participate in, induce, cause, or materially contribute to the alleged infringement. Ex. A, ¶¶ 5–12; EX. B, ¶¶ 5–8, 11–16. JPM hired M3 as an independent contractor and turned over ownership and control of the Facebook

account to M3 so that M3 could independently manage and control the Facebook account. Ex. A, ¶¶ 7–12; EX. B, ¶¶ 5–8, 11–16. JPM was not aware that M3 posted the 0:59 Accused Video Clip until after the lawsuit was filed, as JPM is not involved in the management of the Facebook account. Ex. A, ¶¶ 5–12; *see also* Ex. B, ¶¶ 5–8, 12–17.

Even the allegations in the SAC show that Plaintiff has (and had) no legitimate basis to bring Count II. Plaintiff's theory is that JPM "induced, caused and/or materially contributed to that conduct ***by failing to ensure*** that M3 media had the proper licenses to publish" material on the Facebook account. SAC ¶ 66 (emphasis added). First, Plaintiff's "failing to supervise" theory[1] is not "intentionally inducing or encouraging direct infringement." *Cf. Geophysical Serv.*, 850 F.3d at 798. Secondly, the purpose of JPM hiring M3 as an independent contractor to perform technical web-related services was so that JPM would not have to supervise or be involved in those activities and could instead focus on its business of putting on a talk radio show. Ex. A, ¶¶ 5–12; EX. B, ¶¶ 5–8, 11–16. Plaintiff has no evidence that JPM, "with knowledge of the allegedly infringing activity, induced, caused or materially contributed to the infringing conduct of another." *See Alcatel*, 166 F.3d at 790.

Accordingly, there is no genuine dispute of material fact and summary judgment on Count II should be entered for JPM.

## IV. Judgment Should Be Entered for Defendant JPM on Count III Because There is No Genuine Dispute That JPM Did Not Vicariously Infringe Plaintiff's Copyright.

Judgment should be entered for JPM on Count III because the undisputed facts establish: (1) that JPM did not have the right and ability to supervise or control the allegedly infringing conduct of M3 and (2) that JPM did not have a direct financial benefit from the allegedly infringing conduct. Liability for vicarious infringment requires establishing that "defendant **profits directly** from the infringement and has a right and ability to supervise and control the direct infringer, even if the defendant initially lacks knowledge of the infringment." *Grokster*, 545 U.S. at 930 n.9

[1] It is notable that this "failure to supervise" theory Plaintiff asserts to support its contributory infringement theory (*see* SAC ¶ 66), contradicts Plaintiff's arguments for the "right and ability to supervise" prong of its vicarious infringment theory (Count III).

(emphasis added). "Vicarious copyright infringement occurs when a defendant 'profit[s] from direct infringement while declining to exercise a right to stop or limit it.'" *Dynastudy, Inc. v. Houston Indep. Sch. Dist.*, 325 F. Supp. 3d 767, 777 (S.D. Tex. 2017) (citing *Grokster*, 545 U.S. at 930). "Vicarious liability for copyright infringement is an 'outgrowth of the agency principles of respondeat superior.'" *Sony Music Ent. v. Cox Communs., Inc.*, 93 F.4th 222, 230 (4th Cir. 2022), *cert. denied*,[2] 145 S. Ct. 2844 (June 30, 2025) (quoting *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 262 (9th Cir. 1996)).

### A. JPM Did Not Have the "Right and Ability to Control or Supervise" M3's Conduct in Posting the Accused Video Clip.

Plaintiff cannot satisfy its burden under the first prong of the vicarious infringement analysis, i.e., that JPM had the "right and ability to control or supervise" M3's allegedly infringing conduct. In *Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701 (9th Cir. 2007), the Ninth Circuit addressed this common-law vicarious liability doctrine based on the Supreme Court's *Grokster* decision, explaining that "*Grokster* states that one 'infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it.'" *Id.* at 729 (quoting *Grokster*, 545 U.S. at 930). "As this formulation indicates, to succeed in imposing vicarious liability, a plaintiff must establish that the defendant exercises the requisite control over the direct infringer and that the defendant derives a direct financial benefit from the direct infringement." *Id.* at 729-30 (citing *Grokster*, 545 U.S. at 930). "Thus, under *Grokster*, a defendant exercises control over a direct infringer when he has both a legal right to stop or limit the direct infringing conduct, as well as the practical ability to do so." *Id.* at 730.

This formulation tracks common law agency principles for determining whether a principal is liable for the acts of another. "Under the common law of agency, the existence of an employment relationship hinges on '"the hiring party's right to control the manner and means by which the

---

[2] Sony's petition for certiorari on the issue of vicarious infringement was denied. 145 S. Ct. 2844. However, Cox's petition for certiorari on issues of contributory infringement was granted. 145 S. Ct. 2841. The Supreme Court held oral argument on the contributory infringement issues on December 1, 2025, but the Court has not yet issued an opinion.

product is accomplished.”’” *Johnson v. Globalsantafe Offshore Servs.*, 799 F.3d 317, 321 (5th Cir. 2015) (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992) (quoting *Cmty. For Creative Non-Violence v. Reid*, 490 U.S. 730, 751 (1989) (“*Reid*”))). “At the core of agency is a ‘fiduciary relation’ arising from ‘consent by one person to another that the other shall act on his behalf and subject to his control.’” *General Bldg. Contractors Ass’n v. Pa.*, 458 U.S. 375, 393 (1982) (quoting Restatement (Second) of Agency § 1 (1958) (“Restatement”)); *see also id.* at 392 (“‘Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other to so act.”) (quoting Restatement § 1).

“Equally central to the master-servant relation is the master’s control over or right to control the physical activities of the servant.” *Id.* at 493 (citing Restatement § 220; 2 F. Harper & F. James, Law of Torts § 26.3 (1956); W. Seavey, Law of Agency § 84 (1964); and *Logue v. United States*, 412 U.S. 521, 527 (1973)). Notably, “[o]perational control exists only if the principal has direct supervision over the step-by-step process of accomplishing the work such that the contractor is not entirely free to do the work in his own way.” *Fruge v. Parker Drilling Co.*, 337 F.3d 558, 564 (5th Cir. 2003); *see also Voces v. Energy Res. Tech., G.O.M., L.L.C.*, 704 Fed. Appx. 345, 350-51 (5th Cir. 2017) (quoting same).

“The Second Restatement of Agency lists factors distinguishing employees from independent contractors, including ‘the extent of control which, by the agreement, the master may exercise over the details of the work;’ ‘whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;’ and ‘whether or not the parties believe they are creating the relation of master and servant.’” *Johnson*, 799 F.3d at 322 (quoting Restatement § 220(2)). These factors from the Restatement, and others, were cited with approval by the Supreme Court in *Reid* for determining whether an employment (i.e., master/servant) relation existed or an independent contractor relation existed for the purposes of the Copyright Act. *Reid*, 490 U.S. at 751-52 (citing Restatement § 220(2)).

Here, the evidence is clear. JPM hired M3 as an independent contractor, to independently manage the technical aspects of its website, newsletter, and social media management services. Ex. A, ¶¶ 7–12; Ex. B, ¶¶ 5–8, 11–16. There was no agreement between the parties that M3 was acting under the control of JPM; to the contrary, M3 was given autonomy, independent authority and control, to perform services under the contract with JPM. Ex. A, ¶¶ 7–12; Ex. B, ¶¶ 5–8, 11–16; Ex. C at 30:1–10, 82:22–86:18, 93:9–15, 112:5–113:2; *see also* Ex. C at 46:2–20 (addressing M3's autonomy with respect to the joepags.com website). As a result of that agreement, M3 became the "owner" and "administrator" of the Facebook account, and JPM was merely a user that had limited access rights with respect to the Facebook account. Ex. A, ¶ 12; Ex. B, ¶¶ 13–14. JPM has never even seen the Accused Video Clip and was not aware that it was posted on the Facebook account until after this lawsuit was filed. Ex. A, ¶ 10. "Facebook" is, and was, a "nonentity" to JPM, particularly since, at the relevant time, the Facebook account was "blocked" or "blacklisted" by Meta. Ex. A, ¶¶ 13–16; Ex. B, ¶ 20; Ex. C at 68:14–69:6, 86:5–18, 128:17–23.

There is no evidence, and Plaintiff has failed to present any in the course of this action, that JPM had the "right and ability to control or supervise" the allegedly infringing conduct of M3 in posting the 0:59 Accused Video Clip to the Facebook account. Without such evidence, Plaintiff cannot satisfy its burden under the first prong of the vicarious infringement analysis. Accordingly, summary judgment should be entered for JPM on Count III.

### B. JPM Did Not Receive a "Direct Financial Benefit" From the Accused Video Clip Being Posted on the Facebook Account.

Plaintiff further cannot satisfy its burden under the second prong of the vicarious infringement analysis, i.e., that JPM received a "direct financial benefit" from the alleged infringement. "The essential aspect of the 'direct financial benefit' inquiry is whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps, regardless of how substantial the benefit is in proportion to the defendant's overall profits." *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2014). As the Fourth Circuit recently articulated, "the crux of the financial benefit inquiry is whether a causal relationship exists between the infringing activity and

a financial benefit to the defendant." *Cox Communs.*, 93 F.4th at 231. "If copyright infringement draws customers to the defendant's service or incentivizes them to pay more for their service, that financial benefit may profit from infringement." *Id.* at 231–32 (citing *EMI Christian Music Grp. v. MP3tunes, LLC*, 844 F.3d 79, 99 (2d Cir. 2016)). "But in every case, the financial benefit to the defendant must flow directly from the third party's acts of infringement to establish vicarious liability." *Id.* at 232; *see also Grokster*, 545 U.S. at 930 & n.9.

JPM did not directly profit from the posting of the 0:59 Accused Video Clip on the Facebook account; it did not receive any direct financial benefit from that conduct. *See, e.g.*, Ex. A, ¶¶ 13–16: Ex. B, ¶¶ 19–20; Ex. C at 58:2–17, 74:13–75:19, 80:4–19, 95:8–96:17, 133:13–135:11; Ex. D at 171:16–25. As explained during the deposition of M3, any revenue from the Facebook account would have been provided to M3, not JPM. M3 has an account that receives all revenue from Meta for *all* of M3's clients. Ex. D at 324:20–329:15. The only "evidence" Plaintiff addressed during discovery are Meta records of payments *to Shawnee Digital for M3's clients*; but none of those payments reflect a payment related to the posting of the 0:59 Accused Video Clip on the Facebook account. Ex. D at 329:16–330:20, 332:14–335:11, 336:11–337:14, 338:5–342:2, 345:9–346:11. The only evidence produced shows that JPM did not receive any money from the Facebook account during the relevant time period, i.e., while the 0:59 Accused Video Clip was posted to the Facebook account. Ex. D at 174:21–176:22, 329:16–330:16.

There is no evidence that JPM received a direct financial benefit from M3's posting of the 0:59 Accused Video Clip, and Plaintiff has not presented any competent evidence that such a *direct* financial benefit occurred. Speculation or assumptions are not sufficient for Plaintiff to satisfy its burden at summary judgment. *See, e.g.*, *Little*, 37 F.3d at 1075 ("This burden is not satisfied with 'some metaphysical doubt as to the material facts,' . . . by 'conclusory allegations,' . . . by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence.") (quoting *Matsushita*, 475 U.S. at 586; *Lujan*, 497 U.S. at 871–73; *Davis*, 14 F.3d at 1086); *Heinsohn*, 832 F.3d at 234 ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment."). Without evidence, Plaintiff cannot satisfy its burden under the

second prong of the vicarious infringement analysis. Accordingly, summary judgment should be entered for JPM on Count III.

**V. Judgment Should Be Entered for Defendant JPM on Its "Fair Use" Affirmative Defense Because the Alleged Copyright Infringement Was Posting the 0:59 Accused Video Clip of a News Broadcast Alerting the Public About Dangerous Weather Conditions, Without Impacting Plaintiff's Ability to Exploit Its Work in Any Way.**

Partial summary judgment should also be entered for JPM on its "fair use" affirmative defense, resulting in summary judgment being entered for JPM on Counts I–III. "Fair use" is an affirmative defense the can be resolved on summary judgment, or even on the pleadings if they contain all facts sufficient for a court to evaluate each of the statutory factors. *Bell v. Eagle Mt. Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 320 (5th Cir. 2022). "The fair-use doctrine balances the 'inherent tension' between copyright's interest in protecting author's works and permitting others to reference them in cultural conversation." *Id.* at 321 (citing *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 575 (1994)). The Copyright Act codifies factors that should be considered:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantial similarity of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work.

*Ibid.* (quoting 17 U.S.C. § 107).

But these are not exclusive factors. *Bell*, 27 F.4th at 320 (citing *Harper & Row, Publrs. v. National Enters.*, 471 U.S. 539, 560 (1985)). "'All are to be explored, and the results weighed together, in light of the purposes of copyright.'" *Ibid.* (quoting *Campbell*, 510 U.S. at 578). "A fair-use defense can succeed even if one or more factors favor the claimant." *Ibid.* (citing *Campbell*, 510 U.S. at 578, and *Compaq Comput. Corp. v. Ergonome Inc.*, 387 F.3d 403, 409-10 (5th Cir. 2004)). While courts typically give particular attention to factors one and four, *ibid.* (citing *Monge v. Maya Mags., Inc.*, 688 F.3d 1164, 1171 (9th Cir. 2012), and Barton Beebe, *An Empirical Study of U.S. Copyright Fair Use Opinions, 1978-2005*, 156 U. Pa. L. Rev. 549, 584 (2008)), "ultimately, courts have 'almost complete discretion in determining whether any given factor is present in any particular case' and whether the totality favors fair use," *ibid.* (citing Melville B.

Nimmer & David Nimmer, 4 *Nimmer on Copyright* § 13.05(A)(4) (Matthew Bender rev. ed. 2021)).

The first statutory factor is viewed as having three subparts, (1) commerciality, i.e., "whether the user stands to profit from the exploitation of the copyrighted material without paying the customary price," *Bell*, 27 F.4th at 321–22 (quoting *Harper & Row*, 471 U.S. at 562); (2) whether the user acted in good faith, *id.* at 322 (citing *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 32 (2021) and *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 478 (2d Cir. 2004)); and (3) "whether the use is 'transformative,' meaning it 'adds something new' to the copyrighted work," *ibid.* (quoting *Google*, 593 U.S. at 29-30).

The first factor favors judgment for JPM. The posting of the 0:59 Accused Video Clip was not a commercial use of that clip or of the Plaintiff's asserted 3:07 Video. There was no profit from the posting of the 0:59 Accused Video Clip. Ex. A, ¶¶ 13–16: Ex. B, ¶¶ 19–20; Ex. C at 58:2–17, 74:13–75:19, 80:4–19, 95:8–96:17, 133:13–135:11; Ex. D at 171:16–25. Additionally, the 0:59 Accused Video Clip was a publication from a news company about dangerous weather conditions that existed at the time it was posted. ECF No. 25-2 (description and screenshot showing WeatherNation TV trademark); Ex. M (WeatherNation TV trademark registration).

The second statutory factor, "the nature of the copyrighted work," "is more likely to be found in factual works than in fictional works." *Bell*, 27 F.4th at 323 (quoting *Stewart v. Abend*, 495 U.S. 207, 237 (1990)). Courts analyzing this factor "consider whether the work has been appropriated for its 'expressive elements,' rather than to disseminate 'the underlying facts.'" *Ibid.* (quoting *Harper & Row*, 471 U.S. at 563-64).

The second factor favors judgement for JPM, because the asserted 3:07 Video was the recording of a factual event and the 0:59 Accused Video Clip was from a news broadcast by WeatherNation TV, Inc., that included at least a *de minimis* portion of that recordation of a factual event. ECF No. 25 ¶ 2; ECF No. 25-2 (description and screenshot showing WeatherNation TV trademark); Ex. M (WeatherNation TV trademark registration). There is no evidence or argument, nor could there be, that the 0:59 Accused Video Clip was disseminated because of expressive

elements. Rather, the Accused Video Clip was disseminated because of the underlying facts, i.e., the dangerous weather conditions occurring that day and a water rescue due to those dangerous conditions. ECF No. 25-2 (screenshot showing WeatherNation TV trademark with description: "Heavy rain causes flooding, road closures and dramatic rescue in Dallas, TX"); Ex. D at 245:20–247:12.

<u>The third statutory factor</u> "examines 'the amount and substantiality of the portion used in relation to the copyrighted work as a whole,'" *Bell*, 27 F.4th at 323-24 (quoting 17 U.S.C. § 107(3)), and considers "whether the amount copied is either a quantitatively or qualitatively significant part of the original," *id.* at 324 (citing *Campbell*, 510 U.S. at 586-87). "Even a relatively small amount of copying can weigh against fair use if it captures 'the heart' of the work." *Ibid.* (citing *Harper & Row*, 471 U.S. at 565).

The third factor favors judgment for JPM. At this point, there is no evidence that anything more than a single image from the asserted 3:07 Video was included in the 0:59 Accused Video Clip. *See supra*, § II; ECF No. 25-2; *see also* Ex. D at 251:19–252:7. Because the asserted 3:07 Video was of a factual event, i.e., a water rescue, that was merely recorded by the Plaintiff, the "heart" of the work is not found in those events themselves, the "heart" of the work is only found in some original *expression* of the Plaintiff. Here, there is no evidence that the 0:59 Accused Video Clip captures the "heart" of Plaintiff's expression.

<u>The fourth statutory factor</u> examines the effect on the market for, and value of, the copyrighted work. *Bell*, 27 F.4th at 324 (citing 17 U.S.C. § 107(4)). Courts "consider actual market harm but, more broadly, whether widespread use of the work in the same infringing fashion 'would result in a substantially adverse impact on the potential market' for the original and any derivatives." *Ibid.* (citing *Campbell*, 510 U.S. at 590, also citing *Compaq*, 387 F.3d at 410). "'This last factor is undoubtedly the single most important element of fair use.'" *Ibid.* (quoting *Harper & Row*, 471 U.S. at 566).

Finally, the fourth factor favors judgment for JPM. As admitted in the pleadings, the Plaintiff posted the 3:07 Video to YouTube, freely disseminating the Video for the public to view and

share online for free. ECF No. 25 ¶ 16; ECF No. 26-5 (YoutTube Terms of Service) at 4–5 (uploading to YouTube authorizes other users the right to "access [the] Content through the Service, and to use that Content, including to reproduce, distribute, prepare derivative works, display, and perform it, only as enabled by a feature of the Service (such as video playback or embeds)."). While Plaintiff has identified a limited number of licenses it entered into for the asserted 3:07 Video, each of those licenses was to large commercial entities, rather than for an online posting. *See* Ex. C at 133:22–134:24. Further, the ability of the Plaintiff to license the work was not impacted by his authorization for online sharing of the 3:07 Video through YouTube. *See* Ex. C at 133:22–134:24. There is no evidence or plausible argument that posting of the 0:59 Accused Video Clip would have adversely impacted the Plaintiff's ability to exploits its 3:07 Video.

Accordingly, each of the fair use factors weighs in favor of holding that posting the 0:59 Accused Video Clip was a "fair use," even if it constituted infringement by M3. Partial summary judgment should therefore be entered for JPM on its fair use affirmative defense, resulting in summary judgment for JPM on Counts I–III.

**VI. Judgment Should Be Entered for Defendant JPM on Its Unclean Hands Affirmative Defense Due to Plaintiff's Misconduct.**

Partial summary judgment should be entered for JPM on its affirmative defense of unclean hands and, as a result, summary judgment should be entered for JPM on Counts I–III. "The maxim of unclean hands is not applied where plaintiff's misconduct is not directly related to the merits of the controversy between the parties, but only where the wrongful acts 'in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication.'" *Mitchell Bros. Film Group v. Cinema Adult Theater*, 604 F.2d 852, 863 (5th Cir. 1979) (quoting *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933)). "The alleged wrongdoing of the plaintiff does not bar relief unless the defendant can show that he has personally been injured by the plaintiff's conduct." *Ibid.* (citing *Lawler v. Gilliam*, 569 F.2d 1283, 1294 (4th Cir. 1978)). "The doctrine of unclean hands applies to a litigant whose own conduct in connection with the same matter or transaction has been unconscientious, unjust, marked by a want of good

faith or violates the principles of equity and righteous dealing." *Janes v. Watson*, No. SA-05-CA-0473-XR, 2006 WL 2322820, at *16 (W.D. Tex. Aug. 2, 2006).

Here, Plaintiff has misused the power of the Court, filing false declarations to prolong an action that should have been dismissed years ago. Upon filing this action, Plaintiff was promptly informed that JPM was not the party that posted the Accused Video Clip. Ex. G; Ex. L. After that correspondence, Plaintiff filed an invalid "Certificate of Service", misrepresenting to the Court that service occurred. ECF No. 7. Plaintiff was informed, again, that it was pursuing the wrong party, and informed that its attempt at service was legally deficient and, therefore, void. Ex. H. Plaintiff never responded to those letters. When the Clerk incorrectly modified the docket entry to reflect "SUMMONS RETURN EXECUTED," despite no such executed return having been filed, Plaintiff was notified, *again*, that service never occurred and that Plaintiff was pursuing the wrong party. Ex. I.

On March 5, 2024, Plaintiff filed a motion for clerk's default with an affidavit falsely asserting that service had occurred. ECF No. 8. Plaintiff's affidavit was knowingly false, given the repeated correspondence regarding the fact that service *had not* occurred. The Clerk relied on Plaintiff's false affidavit to enter a default. ECF No. 9. On March 13, 2024, counsel for JPM telephoned counsel for Plaintiff to addresses both that service had never occurred and that Plaintiff was pursuing the wrong party. Ex. J. It was discussed that Plaintiff was pursuing its claim against JPM merely based on the *appearance* that JPM was the entity that posted the Accused Video Clip. Ex. J. JPM produced the contract with M3 to demonstrate that M3—not JPM—was the proper entity to pursue. Ex. J. It was expressly stated at that time that "it is most efficient and economical for all parties and the Court if the Texas suit was simply dismissed, rather than engaging in unnecessary motion practice. Then, [Plaintiff] and M3 can either attempt to resolve this dispute between themselves or through separate litigation in the Southern District of New York." Ex. J.

Instead, Plaintiff filed a motion for default judgment, once again, falsely stating under oath that proper service occurred. ECF No. 11. Plaintiff vexatiously multiplied these proceedings by seeking a default judgment against the wrong party based on knowingly false affidavits submitted

to the Court regarding service of the complaint. As a result, JPM had to engage in motion practice far exceeding the value of this action. *See* Ex. C at 133:13–134:24 (discussing licenses to commercial news agencies for only $2,500); ECF Nos. 13, 14. All this, while Plaintiff had representations from JPM and M3, and documentary evidence supporting those representations, that it was pursuing the *wrong* party for the alleged infringement. Rather than pursue the correct party in the correct venue, Plaintiff then filed an amended complaint, and then the SAC, attempting to add M3 as a defendant in *Texas*, where it was not subject to personal jurisdiction. ECF Nos. 18, 25, 26, 29 (dismissing M3 for lack of personal jurisdiction).

At every stage of this action, Plaintiff has misrepresented critical facts in order to prolong this action and multiply the fees and costs required to defend; Plaintiff is misusing its copyright and abusing its right to institute litigation. Now, in August of 2025, Plaintiff finally filed a claim against M3 for the infringement at issue in this action. Exs. E, F. Plaintiff should have dismissed this lawsuit at the end of 2023, or beginning of 2024, when it was aware that the only proper defendant was M3; on April 3, 2024, it was invited to attempt a resolution with M3 or pursue an infringement action in New York. Ex. J. Instead, Plaintiff is misusing its copyright abusing the power of the Court to extort money from JPM—an innocent defendant that has nothing to do with Plaintiff's claims.

Plaintiff's misconduct, including repeated false affidavits submitted to the Court, should bar its claims under the doctrine of unclean hands. Partial summary judgment should be entered for JPM on its unclean hands affirmative defense, resulting in summary judgment being entered for JPM on Counts I–III.

## CONCLUSION

For the foregoing reasons, Defendant JPM respectfully requests that judgment be entered in its favor on Counts I-III of Plaintiff's Second Amended Complaint (ECF No. 25).

Dated: January 22, 2026

Respectfully submitted,

*/s/ Andrew D. Lockton*

Edward F. McHale
Florida Bar No. 190300
Andrew D. Lockton
Florida Bar No. 115519
California Bar No. 301186
**McHale & Slavin, P.A.**
2855 PGA Boulevard
Palm Beach Gardens, Florida 33410
(561) 625-6575
(561) 625-6572 fax
emchale@mchaleslavin.com
alockton@mchaleslavin.com
litigation@mchaleslavin.com

*Attorneys for Defendants Joe Pags Media, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing Defendant's Motion for Summary Judgment was filed electronically with the Court on January 22, 2026, and thereby served on counsel of record via the Court's CM/ECF system. Counsel includes:

SANDERS LAW GROUP
Craig Sanders
James H. Freeman
333 Earle Ovington Blvd., Suite 402
Uniondale, NY 115533
(516) 203-7600
csanders@sanderslaw.group
jfreeman@sanderslaw.group

*Attorneys for Plaintiff Global Weather Productions, LLC*

*/s/ Andrew D. Lockton*
Andrew D. Lockton