**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| GLOBAL WEATHER PRODUCTIONS, LLC, | § | |
| | § | Case No. 5:23-cv-01350-MA-ESC |
| *Plaintiff*, | § | |
| v. | § | |
| JOE PAGS MEDIA, LLC, | § | |
| *Defendant*. | § | |

**DEFENDANT'S MOTION TO DISMISS FOR LACK OF STANDING**

Defendants Joe Pags Media, LLC respectfully moves, pursuant to Rules 12(b)(1) and 12(c), Fed. R. Civ. P., for the Court to dismiss Plaintiff Global Weather Productions, LLC's Second Amended Complaint (ECF No. 25) and close this action due to Plaintiff's lack of standing based on Plaintiff not having the right to assert infringement of *Mr. Michael Brandon Clement*'s copy-righted work and because Count III of the Second Amended Complaint does not set forth a legally cognizable cause of action, as set forth in the accompanying memorandum of law.

Dated: March 17, 2026

Respectfully submitted,

*/s/ Andrew D. Lockton*
Edward F. McHale
FL Bar No. 190300
Andrew D. Lockton
FL Bar No. 115519
CA Bar No. 301186
**MCHALE & SLAVIN, P.A.**
2855 PGA Boulevard
Palm Beach Gardens, Florida 33410
(561) 625-6575
emchale@mchaleslavin.com
alockton@mchaleslavin.com
litigation@mchaleslavin.com

*Attorneys for Defendant Joe Pags Media, LLC*

# TABLE OF CONTENTS

Page

Table of Authorities ... ii

Introduction and Summary of the Argument ... 1

Factual Allegations ... 4

Arguments ... 6

I. Plaintiff Lacks Standing to Bring Copyright Infringement Claims for Copyrights Owned by *Clement* ... 6

II. Count III Should Be Dismissed Because It Does Not State a Legally Cognizable Cause of Action ... 12

A. Secondary Liability Doctrines Recognized by the Supreme Court ... 13

B. Secondary Liability Doctrines Recognized in the Common Law ... 17

C. Count III Does Not Raise a Cognizable Cause of Action or Legal Theory for Vicarious Liability ... 18

Conclusion ... 20

Certificate of Service ... 22

## TABLE OF AUTHORITIES

Page(s)

Cases

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ....................13

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994).12

*Coca-Cola Co. v. Snow Crest Beverages, Inc.*, 64 F. Supp. 980 (D. Mass. 1946)....................16

*Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518 (1972) ....................17

*Deutsch v. Arnold*, 89 F.2d 686 (2d. Cir. 1938) ....................14

*Dreamland Ball Room, Inc. v. Shapiro, Bernstein & Co.*, 36 F.2d 354 (7th Cir. 1929)...........14

*Effects Assocs., Inc. v. Cohen*, 908 F.2d 555 (9th Cir. 1990) ....................7, 11

*Famous Music Corp. v. Bay State Harness Horse Racing & Breeding Assn., Inc.*, 554 F.2d 1213 (1st Cir. 1977) ....................14

*Fed. Treasury Enter. Sojuzplodimport v. SPI Spirits Ltd.*, 726 F.3d 62 (2d Cir. 2013) ......7, 11

*Inwood Labs v. Ives Labs.*, 456 U.S. 844 (1982) ....................16

*Kalem Co. v. Harper Brothers*, 222 U.S. 55 (1911)....................13

*KECA Music, Inc. v. Dingus McGee's Co.*, 432 F. Supp. 72 (W.D. Mo. 1977) ....................14

*Konigsberg, Int'l, Inc. v. Rice*, 16 F.3d 355 (9th Cir. 1994)....................7

*Lyrick Studios, Inc. v. Big Idea Prods.*, 420 F.3d 388 (5th Cir. 2005) ....................2, 7, 11

*MGM Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005)....................3-4, 15-17, 19

*Petroliam Nasional Berhard v. GoDaddy.com, Inc.*, 737 F.3d 546 (9th Cir. 2013)....................12

*Playboy Enters., Inc. v. Dumas*, 53 F.3d 549 (2d Cir. 1995)....................7

*Radio Television Espanola S.A. v. New World Entm't, Ltd.*, 183 F.3d 922 (9th Cir. 1999)........7

*Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984)..........12-15, 17, 19-20

*Summit Off. Park, Inc. v. U.S. Steel Corp.*, 639 F.2d 1278 (5th Cir. 1981)....................2

*Sweet Gisele, Inc. v. True Rock CEO, LLC*, Case No. 17 CV 5170, 2018 U.S. Dist. LEXIS 151262 (E.D.N.Y. Sept. 4, 2018)....................7, 11

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021).................... 6-7

Cases—continued

*Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023) ....................3

*Universal City Studios, Inc. v. Sony Corp. of Am.*, 480 F. Supp. 429 (C.D. Cal. 1979) ..........12

*Viral DRM LLC v Seven W. Media Ltd.*, 768 F. Supp. 3d 1025 (N.D. Cal. 2025) .............2, 10

*William R. Warner & Co. v. Eli Lilly & Co.*, 265 U.S. 526 (1924) ....................16

Statutes

Copyright Act of 1976, 17 U.S.C. § 101, *et seq.*
17 U.S.C. § 106 ....................8
17 U.S.C. § 204(a) ....................7
17 U.S.C. § 410(c) .................... 6-7
17 U.S.C. § 501(b) .................... 7-8
17 U.S.C. § 505 ....................

35 U.S.C. § 271(c) ....................15

Rules

Federal Rules of Civil Procedure
12(b)(1) ....................1, 13, 20
12(c) .................... 1-2, 13, 20
56(c) ....................13

Other Authorities

Restatement (Second) of Agency (A.L.I. 1958)
§ 2....................3, 17
§ 219....................3, 17
§ 220....................3, 17

Restatement (Second) Torts (A.L.I. 1965)
§ 875....................3, 18
§ 876.................... 3, 18-19
§ 877.................... 3, 18-19
§ 877(a) ....................19
§ 877(c) ....................19

Webster's Third New International Dictionary (1993)....................13

2 Noah Webster, American Dictionary of the English Language (1st ed., 1828) ....................13

Defendant Joe Pags Media, LLC (hereafter "JPM") respectfully moves this Court to dismiss the Second Amended Complaint (ECF No. 25, "SAC") and action filed by Plaintiff Global Weather Productions, LLC ("Plaintiff") and the specific relief requested therein, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(c), as set forth below.[1]

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

There is a critical deficiency that requires dismissal of all claims: Plaintiff does not own any *copyright(s)* in the Asserted Video. Michael Brandon Clement owns the *copyrights*. Plaintiff merely has a limited right "for **use**" of Clement's "intellectual property," which, under scrutiny, is really no more than a naked "hunting license." Ex. A (purported "copyright assignment") (emphasis added). That is insufficient for *Plaintiff* to have standing in this action; it does not assign rights under the Copyright Act and, therefore, requires dismissal of the Second Amended Complaint (ECF No. 25, "SAC"). Clement, *not* Plaintiff, is the only party who could have brought suit. Shortly after *Plaintiff* filed this action, Clement *separately* filed a lawsuit asserting the same infringement of the same Asserted Video against iHeart Media in 2024 (while this action was pending) asserting that **he**—not Plaintiff—owned the copyrights in the Asserted Video. *See Clement v. iHeartMedia Inc.*, Case 5:24-cv-00581-OLG, ECF No. 1 ¶¶ 2, 10–17 (W.D. Tex. May 29, 2024).

Deeper investigation into Clement reveals that he operates a series of interrelated entities which, inconsistently, exist to "manage," "use," or sometimes "own" ***his*** copyrights. Those entities include, at least: Plaintiff Global Weather Productions, LLC, a Wyoming LLC (*see* Ex. B); WXchasing, LLC (Mississippi LLC; *see* Ex. C); CorClips, LLC (Mississippi LLC; *see* Ex. D); Live Storms Media LLC (Alabama LLC); and Viral DRM LLC (Mississippi LLC; *see* Ex. E). Clement has caused other actions to be filed that assert copyright infringement of ***his works*** through his entity Viral DRM, but courts have correctly recognized that Viral DRM lacks standing to sue for infringement of *Clement's* copyrighted works, and required the copyright owner to be added as the plaintiff for copyright infringement claims; Clement, in his *individual* capacity, was

[1] This critical deficiency was also raised in JPM's opposition to Plaintiff's motion for summary judgment. *See* ECF No. 62 at ECF pp.10–14. Additional evidence has since been uncovered.

added because the claims were based on alleged infringement of *his* works. *See, e.g.*, *Viral DRM LLC v. Seven W. Media Ltd.*, 768 F. Supp. 3d 1025, 1028–31 (N.D. Cal. 2025); *id.*, Case No. 24-cv-06354, ECF No. 35 (N.D. Cal. Mar. 17, 2025) (adding, *inter alia*, Clement as a plaintiff for the claims of copyright infringement). Those facts, and even the fact that *Clement* (individually) purported to assign or exclusively license his copyrighted works to Viral DRM (as well as to his other entities) reflects that *Clement* continues to own the copyrights in works authored by him in his individual capacity—he **did not** assign his copyrighted works to Plaintiff Global Weather Productions, LLC, and did not assign the copyrights in the Asserted Video at issue here. *See* Ex. A.

This fundamental deficiency cannot be overcome by mere allegations or declarations from Plaintiff or Clement; under 17 U.S.C. § 204(a), no copyright conveyance is *valid* until documented in writing. *Lyrick Studios, Inc. v. Big Idea Prods.*, 420 F.3d 388, 391–92 (5th Cir. 2005). The purpose of that requirement is, *inter alia*, to prevent this exact type of situation from arising, one where it cannot be determined who the true owner of the asserted copyright is. Moreover, when a plaintiff lacks standing from the outset of any action, the only remedy permitted is dismissal. *See Summit Off. Park, Inc. v. U.S. Steel Corp.*, 639 F.2d 1278, 1282 (5th Cir. 1981) ("where a plaintiff never had standing to assert a claim against the defendants, it does not have standing to amend the complaint and control the litigation by substituting new plaintiffs, a new class, and a new cause of action.").

Separately, Count III is not a legally cognizable cause of action; it should be dismissed for lack of standing or, alternatively, dismissed under Rule 12(c). As explained in detail herein, there is no judiciable claim for "vicarious copyright infringement", even though that incorrect terminology has invaded the legal lexicon; rather, a defendant can be vicariously *liable* for another's copyright infringement. Such *liability* exists in the law for a contributory copyright infringer, following common law doctrines of secondary liability that require proving culpable conduct and an "unlawful purpose"; alternatively, a defendant can be *strictly* vicariously liable under the common law doctrine of *respondeat superior*. *See infra* at pp.17–18.

The Supreme Court has never approved of a theory of liability as alleged in Count III, it is unprecedented in the common law, and the Court explicitly declined to address such a theory of liability in *MGM Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005). *See id.* at 930 n.9. But even as framed by the Court when articulating the theory of liability it did not address, the Court's articulation was that MGM's theory was based on the defendants contributing to the direct infringement committed by another. *See ibid.* That proposed theory required that a defendant know or learn about the direct infringement and then allow such infringement to continue by declining to stop or limit it, all while profiting from the infringement—i.e., conduct that provides circumstantial evidence of the defendant's "unlawful purpose" beyond merely equivocal conduct. *See ibid.*; *see also id.* at 939 n.12 ("Of course, in the absence of other evidence of intent, a court would be unable to find contributory infringement liability merely based on a failure to take affirmative steps to prevent infringement . . . ."). Such a theory would be readily observed as a form of accomplice liability.

The only other form of vicarious liability recognized in the common law comes from the doctrine of *respondeat superior*. Under that theory, a "master" is *strictly* liable for the torts committed by a "servant" when committed in the course and scope of the "servant's" employment, subject to certain exceptions. *See, e.g.*, Restatement (Second) Agency § 2 (A.L.I. 1958) (defining, "master", "servant", and "independent contractor"); *id.* § 219 (articulating the limited circumstances for when a "master" is liable for the torts committed by a "servant"); *id.* § 220 (providing factors for considering whether someone is a "servant" or an "independent contractor"). Alternatively, the common law recognized secondary liability from inducing tortious conduct or from notions of "aiding and abetting." *See* Restatement (Second) Torts §§ 875–877 (A.L.I. 1965). Those theories, however, require purposeful *misfeasance*—an "'affirmative act' 'with the intent of facilitating the offense's commission.'" *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 490 (2023).

Count III does not articulate any recognized form of secondary liability. Rather, Count II alleges secondary liability based on contributory infringement, and so Count III cannot be a redundant Count for the same theory of contributing to the infringement. But Count III does not

allege *respondeat superior* either; instead, it is premised on JPM being "liable as a vicarious infringer since it profited from the Infringement while declining to exercise a right to stop or limit it." SAC ¶ 78. Not only is that not a recognized theory of liability, it fails as a matter of law. *See Grokster*, 545 U.S. at 939 n.12. As such, Count III should be dismissed.

**FACTUAL ALLEGATIONS**

The "Asserted Video" was authored by Clement. SAC ¶¶ 15, 17, 19; *see also* ECF No. 58-2 at ECF p.15. The Asserted Video was *not* a work made for hire. ECF No. 58-2 at ECF p.15. The copyright was registered with the U.S. Copyright Office on behalf of *Clement* as the copyright claimant and author. *Ibid.* And although the SAC alleges that *Plaintiff* is the owner of the asserted copyrights "[v]ia written assignment," SAC ¶¶ 2, 20, it also alleges that "Clement's videos are original, creative works in which ***he owns*** protectable copyright interests, *id.* ¶ 15 (emphasis added). The purported "written assignment" does not identify the Asserted Video as being the subject of any assignment to Plaintiff and does not identify any *copyright* rights that are purported to be assigned. Ex. A. Rather, the "written agreement" purports to transfer rights to **use** Clement's intellectual property. Ex. A. The "written agreement" also specifies that the "assignment shall continue until this Agreement is terminated by [Clement] in writing." Ex. A.

*Plaintiff* (not Clement) filed the SAC asserting three (3) separate Counts against JPM based on the same allegedly infringing conduct: Count I is a claim for direct copyright infringement based on the Accused Video being posted on a Facebook Account associated with JPM; Count II is titled "contributory copyright infringement," asserting that JPM is secondarily liable for having contributed to the alleged direct infringement by third-party McLaughlin Media Management, LLC d/b/a M3 Media Management ("M3"), which posted the Accused Video on the Facebook Account; and Count III is titled "vicarious copyright infringement," again alleging that JPM is secondarily liable for alleged copyright infringement committed by M3. ECF No. 25 (SAC). Though Count II specifies that the liability theory is based on a contributory infringement theory, Count III does not identify the basis for the alleged liability.

The theory of liability in Count III of the SAC is that JPM "is liable as a vicarious infringer since it profited from the Infringement while declining to exercise a right to stop or limit it." SAC ¶ 78. To support such a theory, the SAC alleges:

- "Upon information and belief" JPM "had the right and ability to supervise and/or control the infringing conduct of its Employees, Agents, Affiliates, Vendors and/or members, and declined to exercise the right and ability to supervise or control that infringing conduct, despite its legal right to stop or limit the direct infringing conduct as well as the practical ability to do so." SAC ¶ 73.

- "As a direct and proximate result of such refusal to exercise its right to stop or limit the infringing conduct, [JPM] has continued to infringe upon Plaintiff's Video, which in turn generates profits for [JPM] directly from the use of the Infringement." SAC ¶ 74.

- "Upon information and belief, [JPM] enjoyed a direct financial benefit from the Infringement from, *inter alia*, advertising revenue from the increased traffic to its FB Account and from increase in fees paid by advertisers and sponsor." SAC ¶ 75.

- "Upon information and belief, in the alternative, [JPM] receives a material and/or financial benefit from operating the FB Account as it promotes Joe Pags' corporate services and brandname." SAC ¶ 76.

- "Upon information and belief, [JPM] enjoyed a directed financial benefit from using the appeal or 'draw' of Plaintiff's Video to increase user traffic to the FB Account, thereby increasing advertising or other revenue, and/or by increasing Joe Pags' customer base." SAC ¶ 77.

The allegations do not clearly state whether Count III is asserting a second count based on alleged contributory infringement or whether it asserts a liability theory based on *respondeat superior*, as recognized in the common law.

While this action was pending, *Clement* filed a separate lawsuit asserting copyright infringement for the Asserted Video against iHeartMedia, Inc. *See Clement v. iHeartMedia, Inc.*, Case No. 5:24-cv-00581-OLG, ECF No. 1 (W.D. Tex. May 29, 2024) (the "iHeartMedia Action"). In the iHeartMedia Action, Clement asserted the same "Asserted Video" that is at issue in this action, but asserted that he—Clement—owns the copyrights in the Asserted Video. *See id.* ¶¶ 2, 40. Clement is also a copyright plaintiff, in his individual capacity, in several lawsuits initially filed solely by Clements company Viral DRM LLC. *See, e.g.*, *Viral DRM LLC v. Navarro et al*, Case No. 3:24-cv-06511-SI, ECF No. 16 (N.D. Cal May 19, 2025) (Michael Brandon Clement is

a named plaintiff in the First Amended Complaint, asserting multiple video copyrights); *Viral DRM LLC v. Dominguez et al*, Case No. 5:24-cv-06598-PCP, ECF No. 18 (N.D. Cal. Mar. 19, 2025) (same); *Viral DRM LLC v. Sharma et al*, Case No. 5:24-cv-0681-EKL, ECF No. 24 (N.D. Cal. Apr. 1, 2025) (same); *Viral DRM LLC v. Livingstone et al*, Case No. 4:24-cv-06852-SVK, ECF No. 19 (N.D. Cal. Mar. 19, 2025) (same); *Viral DRM LLC v. RA Lawyers et al*, 3:24-cv-06858-TLT, ECF No. 29 (N.D. Cal. Mar. 17, 2025) (same); *Viral DRM LLC v. Romero et al*, 3:24-cv-07060-RFL, ECF No. 17 (N.D. Cal. Mar. 19, 2025) (same); *Viral DRM LLC v. Narula et al*, 4:24-cv-07109-JSW, ECF No. 21 (N.D. Cal. Mar. 25, 2025) (same); *Viral DRM LLC v. Lacomba et al*, 3:24-cv-07108-WHO, ECF No. 19 (N.D. Cal. Mar. 17, 2025) (same); *Clement et al v. News Nation Network Pvt. Ltd.*, Case No. 3:25-cv-01540-WHO (N.D. Cal. May 1, 2025) (same).

## ARGUMENTS

### I. Plaintiff Lacks Standing to Bring Copyright Infringement Claims for Copyrights Owned by *Clement*.

Michael Brandon Clement—not Plaintiff Global Weather Productions, LLC—owns the copyrights in the Asserted Video. *See* ECF No. 58-2 at ECF p.15 (registration certificate); *see also* Ex. A (no assignment of *copyright* rights in Asserted Video). As reflected in the registration certificate, Mr. Clement is the author and claimant of the copyright in the Asserted Video, and it was not a work made for hire. ECF No. 58-2 at ECF p.15. These facts are legally presumed to be correct. *See* 17 U.S.C. § 410(c). Attempting to overcome that legal presumption, Plaintiff asserts and has argued that it "obtained the Video's copyright from Clement through a written assignment agreement." SAC ¶¶ 2, 40. The purported "written assignment," however, does not identify that any *copyright rights* were "assigned" and does not identify that any rights in the *Asserted Work* were "assigned." ECF No. 58-2 at P015–P016. As a matter of law, Plaintiff **is not** the owner of any of the *copyrights* in the Asserted Work, and all claims must be dismissed for Plaintiff's lack of standing to assert *Mr. Clement's* "Work."

"[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek[.]" *TransUnion LLC v. Ramirez*,

594 U.S. 413, 431 (2021). Under the Copyright Act, only the "legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right." 17 U.S.C. § 501(b). While rights under the Copyright Act initially vest in the author of a work, or the commissioning party in the case of a work made for hire, 17 U.S.C. § 410(c), ownership rights can also be transferred via a written instrument, *id.* § 204(a) ("A transfer of copyright ownership . . . is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent.").

Section 204(a) of the 1976 Copyright Act mandates that no transfer of a copyright is valid without a signed writing conveying such right or rights. 17 U.S.C. § 204(a); *see also Lyrick*, 420 F.3d at 391–92 ("Rather than serving an evidentiary function and making otherwise valid agreements unenforceable, under § 204(a) 'a transfer of copyright is simply "not valid" without a writing.'") (quoting *Konigsberg, Int'l, Inc. v. Rice*, 16 F.3d 355, 357 (9th Cir. 1994)). To be a valid transfer of copyright, the writing "must . . . show an agreement to transfer ***copyright***." *Id.* at 392 (citing *Radio Television Espanola S.A. v. New World Entm't, Ltd.*, 183 F.3d 922, 927 (9th Cir. 1999); *Playboy Enters., Inc. v. Dumas*, 53 F.3d 549, 564 (2d Cir. 1995)) (emphasis added). As noted in *Lyrick*, "a statement reading 'payee acknowledges payment in full for the assignment to Playboy Enterprises, Inc. of all right, title, and interest in and to the following items: [a description of a painting followed]' was insufficient to transfer copyright under § 204(a)." *Id.* at 392 n.1 (quoting *Playboy Enters.*, 53 F.3d at 560) (alteration in original). The Second Circuit has also noted the "[a]lthough it may seem formalistic, the 'writing requirement' is rooted in real policy concerns," including that "[a] clear writing effecting an assignment signals to the parties **and the world** that the assign[ee] is the party that owns the [rights] and is authorized to exclude others from use." *Fed. Treasury Enter. Sojuzplodimport v. SPI Spirits Ltd.*, 726 F.3d 62, 74 (2d Cir. 2013) (citing *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 557 (9th Cir. 1990)) (emphasis added); *see also Sweet Gisele, Inc. v. True Rock CEO, LLC*, Case No. 17 CV 5170, 2018 U.S. Dist. LEXIS 151262, at *5-6 (E.D.N.Y. Sept. 4, 2018) (citing same).

Here, the purported "assignment" is clear that no *copyright* rights, i.e., rights as described in 17 U.S.C. § 106, were transferred to Plaintiff; only rights to "use" "intellectual property", rights to "receive and retain proceeds," and rights to sue. Ex. A. That is not a valid assignment of *copyright* rights to the Plaintiff and, therefore, Plaintiff does not have the right to sue, and this action must be dismissed. *See* 17 U.S.C. § 501(b). The Asserted Video is not identified in the agreement, nor are any of the associated *copyrights* for the Asserted Video. *See* Ex. A. The "agreement" also specifies that the "Assignment" addressed in paragraph 1, is only "during the term of this Agreement," i.e., that "[s]uch assignment shall continue until this Agreement is terminated by Photographer in writing." Ex. A (§1). If the "assignment" can be terminated by Clement at will, and is only limited to a "term," it is not an assignment; it is nothing more than a license. Further, the plain language of the "assignment" is also limited to "Photographer's rights, titles, interests to all intellectual property, **for use** (in whole, in part, or as modified or changed) **in any and all media**" during the term of the "agreement." *Ibid.* (emphasis added). The agreement also specifies that it "shall be governed by the laws of the State of New York." Ex. A (§4).

The assignment does not identify any specific work assigned; rather, it purports to assign "all of Photographer's rights, titles and interests to all intellectual property, for use (in whole, in part, or as modified or changed) in any and all media, now known or hereafter created by Photographer during term of this Agreement, all together with all causes of action accruing or occurring before or during the term of this Agreement, including the right to receive and retain any proceeds related thereto." *See* Ex. A. No specific work(s) is/are referenced in the purported "assignment," only the reference to Clement being a "photographer"; no reference to videos is made in the "assignment." *Ibid.* By the plain language, the purported "assignment" does not transfer the display right, the reproduction right, the distribution right, or all "copyrights" in the Asserted Video. *Ibid.*; *see also* 17 U.S.C. § 106 (listing the copyright exclusive rights).

Further, although that "assignment" is dated and "effective" as of June 4, 2023, Mr. Clement in his *personal capacity* as copyright owner has been, and is currently, a copyright plaintiff in many actions, negating any argument by Plaintiff that the "assignment" includes all *video*

copyrights (e.g., including the asserted Video at issue here). *See, e.g.*, *Clement v. IHeartMedia Inc.*, Case No. 5:24-cv-00581, ECF No. 1 (W.D. Tex. May 24, 2024) (complaint filed May 29, 2024, asserting infringement of the same Video as in this action and asserting Clement owned the copyright); *Viral DRM LLC v. Navarro et al*, Case No. 3:24-cv-06511-SI, ECF No. 16 (N.D. Cal May 19, 2025) (Michael Brandon Clement is a named plaintiff in the First Amended Complaint, asserting multiple video copyrights); *Viral DRM LLC v. Dominguez et al*, Case No. 5:24-cv-06598-PCP, ECF No. 18 (N.D. Cal. Mar. 19, 2025) (same); *Viral DRM LLC v. Sharma et al*, Case No. 5:24-cv-0681-EKL, ECF No. 24 (N.D. Cal. Apr. 1, 2025) (same); *Viral DRM LLC v. Livingstone et al*, Case No. 4:24-cv-06852-SVK, ECF No. 19 (N.D. Cal. Mar. 19, 2025) (same); *Viral DRM LLC v. RA Lawyers et al*, 3:24-cv-06858-TLT, ECF No. 29 (N.D. Cal. Mar. 17, 2025) (same); *Viral DRM LLC v. Romero et al*, 3:24-cv-07060-RFL, ECF No. 17 (N.D. Cal. Mar. 19, 2025) (same); *Viral DRM LLC v. Narula et al*, 4:24-cv-07109-JSW, ECF No. 21 (N.D. Cal. Mar. 25, 2025) (same); *Viral DRM LLC v. Lacomba et al*, 3:24-cv-07108-WHO, ECF No. 19 (N.D. Cal. Mar. 17, 2025) (same); *Clement et al v. News Nation Network Pvt. Ltd.*, Case No. 3:25-cv-01540-WHO (N.D. Cal. May 1, 2025) (same).

In the various "Viral DRM" cases, one of Clement's *other* companies, Viral DRM, argued that it had standing to sue for infringement of various copyrighted works, including those authored by Clement. *See, e.g.*, Ex. F ¶¶ 1-2, 8; Ex. G ¶¶ 1-3. To support this argument, Viral DRM submitted a declaration from Clement and submitted his written agreement with Viral DRM that, according to Clement, "grant[ed] an exclusive worldwide license to Viral DRM to display, store, transmit and distribute the videographer's works," and expressing that it is Clement's understanding "that the display right would also include the performance right since the performance right is equivalent to the display right for motion pictures." Ex. G ¶ 3. Clement explained, however, that "[t]he 'ownership' of copyright is retained by the author in the agreement." *Ibid.* Clement's written agreement with Viral DRM was separately filed in the *Seven W. Media* case. *See* Ex. H. That agreement, entered into on September 19, 2022, grants rights to Viral DRM for works authored by

Clement, for three (3) year terms that can only be terminated within thirty (30) days of the termination for any renewal term. Ex. H at pp.5–10.

Judge Orrick, reviewing the Viral DRM agreement and the evidence submitted by Clement, correctly held that Viral DRM lacked standing to assert copyrights owned by Clement (and others). *Seven W. Media Ltd.*, 768 F. Supp. 3d at 1028–31. But because Viral DRM had standing for other claims, Judge Orrick granted leave to amend so that Viral DRM could "name whichever plaintiffs it believes are necessary to pursue the copyright infringement claims when it amends." *Id.* at 1032. In response, an amended pleading was filed that added Clement as a plaintiff because he owns the copyrights in his work; other authors were similarly added as copyright owners. *See, e.g.*, *Seven W. Media Ltd.*, Case No. 3:24-cv-06354-WHO, ECF No. 35 (N.D. Cal Mar. 17, 2025) (amended complaint naming, *inter alia*, Clement as a copyright owner).

Clement's conduct confirms that Plaintiff Global Weather Productions lacks standing in this action. *First*, Clements filed the iHeartMedia Action in 2024, stating that *he*—individually—owned the copyrights in the Asserted Video. Case No. 5:24-cv-00581-OLG, ECF No. 1 at ¶¶ 2, 40 (W.D. Tex. May 29, 2024).[2] Beyond that, the purported "written agreement" that supposedly transferred ownership of the copyrights in the Asserted Video to Plaintiff does not mention the Asserted Video and does not specify *copyright* rights as being transferred. Ex. A. Further, that agreement, entered into on June 4, 2023, warrants and represents that Clement is the sole and exclusive owner of the rights addressed and that none of them have been encumbered in any way. Ex. A at § 3. But Clement's agreement with Viral DRM, entered into on September 19, 2022, encumbers at least some of the copyrighted works owned by Clement, granting exclusive rights to Viral DRM for three (3) year periods. Ex. H. And whereas the agreement with Viral DRM

[2] Interestingly, yet still *another* one of Clement's companies, WXchasing, LLC, indicates that *it* is the entity to contact for licensing the copyright in the Asserted Video, through the website www.wxchasing.com, as stated on the YouTube post referenced in the SAC. *See, e.g.*, SAC ¶ 16; https://www.youtube.com/watch?v=rhR-R-cgAXA (last visited March 17, 2026; printout of webpage previously filed at ECF No. 26-3).

specifically addresses *copyrights*, Clement's "written agreement" with Plaintiff **does not**. *Compare* Ex. H *with* Ex. A.

Assuming *arguendo* that the "written agreement" with Plaintiff addressed "all" *copyrights* owned by Clement, then Clement could not own *any* copyrights in any of his works unless he terminated the "written agreement" with Plaintiff. *See* Ex. A. Yet, in case after case, Clement caused Viral DRM to assert claims of infringement for works that he concedes are owned by him in his individual capacity. *See, e.g.*, *supra* pp.8–9 (listing cases where Clement was added as a plaintiff because *he*, not Viral DRM, owned the work authored by Clement). For Clement to own his copyrights as he has stated in sworn declarations and through pleadings filed in courts, either the purported "written agreement" with Plaintiff did not assign *copyrights* rights, or any such purported transfer of rights was terminated, pursuant to the termination provision of the "written agreement" and those rights reverted to Clement. *See* Ex. A. If so, that would confirm the plain text of the termination provision and confirm that the "written agreement" is merely a license that could be terminated at any point by Clement; it is not, as a matter of law, an *assignment* or *transfer* of any copyright rights.

The Court can determine that, as a matter of law, the purported assignment agreement is insufficient to transfer a valid *copyright* right to Plaintiff Global Weather Productions. *See Lyrick*, 420 F.3d at 392. "[T]he 'writing requirement' is rooted in real policy concerns," including that "[a] clear writing effecting an assignment signals to the parties **and the world** that the assign[ee] is the party that owns the [rights] and is authorized to exclude others from use." *Fed. Treasury Enter.*, 726 F.3d at 74 (citing *Effects*, 908 F.2d at 557) (emphasis added); *see also Sweet Gisele*, 2018 U.S. Dist. LEXIS 151262, at *5-6. The writing in this case is anything but clear, and Mr. Clement's conduct contradicts any assertion that Plaintiff is the owner of the copyright rights in the Asserted Video. The "written agreement" with Plaintiff fails to "signal" to the world that Plaintiff owns the *copyright* asserted in this Action, even if it supposedly was granted a naked right to sue—which would not confer standing to proceed and would necessarily have been terminated for Clement to continue as a copyright plaintiff in other actions.

Accordingly, as confirmed by Plaintiff's evidence and Clement's conduct with respect to his other entities and his conduct before other District Courts across the country, Plaintiff does not own the copyrights in the Asserted Video. This action should be dismissed for Plaintiff's lack of standing to proceed with claims based on *Clement's* copyrighted work.

## II. Count III Should Be Dismissed Because It Does Not State a Legally Cognizable Cause of Action.

"The Copyright Act does not expressly render anyone liable for infringement committed by another." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 434 (1984). And "when Congress enacts a statute under which a person may sue and recover damages from a private defendant for the defendant's violation of some statutory norm, there is no general presumption that the plaintiff may also sue aiders and abettors." *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 182 (1994). Despite there being no general presumption of secondary liability, *ibid.*, courts can infer a cause of action for secondary liability "where circumstances suggest that Congress intended to incorporate common law principles into a statute." *Petroliam Nasional Berhard v. GoDaddy.com, Inc.*, 737 F.3d 546, 552 (9th Cir. 2013).

The Court confirmed in *Grokster* that the Copyright Act incorporates secondary liability doctrines "from common law principles [that] are well established in the law." *Id.* at 930. That recognition flowed from the Court's understanding that "vicarious liability is imposed in virtually all areas of the law, and the concept of contributory infringement is merely a species of the broader problem of identifying the circumstances in which it is just to hold one individual accountable for the actions of another." *Sony*, 464 U.S. at 435. Thus, contributory copyright infringers may be found vicariously liable. *Id.* at 437–39.[3]

[3] In reaching this holding, the Court noted in *Sony*, and reiterated in *Grokster*, that """the lines between direct infringement, contributory infringement and vicarious liability are not clearly drawn" . . . [R]easoned analysis of [the *Sony* plaintiffs' contributory infringement claim] necessarily entails consideration of arguments and case law which may also be forwarded under other labels, and indeed the parties . . . rely upon such arguments and authority in support of their respective positions on the issue of contributory infringement.'" *Grokster*, 545 U.S. at 930 n.9 (quoting *Sony*, 464 U.S. at 437, n.17 (quoting *Universal City Studios, Inc. v. Sony Corp. of Am.*, 480 F. Supp. 429, 457–58 (C.D. Cal. 1979))).

In Count II, Plaintiff brought a claim against JPM to hold it vicariously liable for M3's conduct, as a contributory infringer.[4] SAC ¶¶ 61–71. In Count III, Plaintiff filed a separate claim against JPM for "vicarious copyright infringement," terminology that was used inaccurately but which would be better understood as simply "vicarious liability for copyright infringement." SAC at ¶¶ 72–82. The law does not recognize an action for "vicarious infringement"; rather, a party can be vicariously *liable* for conduct of another,[5] under limited circumstances.

Because Count III does not set forth an independent cause of action or provide a judicially recognized basis for subjecting JPM to secondary liability, as discussed herein, Count III should be dismissed under Rule 12(b)(1) or 12(c).

**A. Secondary Liability Doctrines Recognized by the Supreme Court.**

In *Sony*, the Court approved of a first secondary liability theory incorporated into the Copyright Act. Looking to *Kalem Co. v. Harper Brothers*, 222 U.S. 55 (1911), the Court distinguished between when a defendant may properly be held vicariously liable as a "contributory infringer" of copyright and when a defendant is not vicariously liable. *Sony*, 464 U.S. at 437–39 & n.18.

---

[4] Plaintiff did not oppose JPM's motion for summary judgment as to Count II, conceding that claim. *Compare* ECF No. 57 at ECF pp.15-16 (JPM's motion) *with* ECF No. 61 (Plaintiff's opposition); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) ("Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

[5] Webster's Third New International Dictionary (1993) (defining "vicarious" as: "1 : having the function of a substitute : serving instead of someone or something else : acting for a principal : representing or taking the place of something primary or original : DELEGATED . . . 2 : per-formed or suffered by one person as a substitute for another or to the benefit or advantage of an-other : SUBSTITUTIONARY . . . 3 : experienced or realized through imaginative or sympathetic participation in the experience of another . . . 4 : occurring in an unexpected or abnormal part of the body instead of the usual one . . . ."); *ibid.* (defining "vicariously" as: "in a vicarious manner : as, by, or through a substitute . . . .").

2 Noah Webster, American Dictionary of the English Language (1st ed., 1828) ("Vicarious, *a.* [L. *vicarious*.] Deputed ; delegated ; as *vicarious* power or authority. 2. Acting for another ; filing the place of another ; as a *vicarious* agent or officer. 3. Substituted in the place of another ; as a *vicarious* sacrifice. The doctrine of *vicarious* punishment has occasioned much controversy."); *ibid.* ("Vicariously, *adv.* In place of another ; by substitution.") (an electronic copy can be viewed at the Internet Archive, https://archive.org/details/americandictiona00websrich/page/n859/mode/2up (last visited March 11, 2026)).

"Justice Holmes stated [in *Kalem*] that the [film] producer had 'contributed' to the infringement of the copyright, and the label 'contributory infringement' has been applied in a number of lower court copyright cases involving an ongoing relationship between the direct infringer and the contributory infringer." *Sony*, 464 U.S. at 437.

"In such cases, as in other situations in which the imposition of vicarious liability is manifestly just, the 'contributory' infringer was in a position to control the use of the copyrighted works by others and had authorized the use without permission from the copyright owner." *Id.* at 437 & n.18. Those "other situations" referenced by the Court were "[t]he so-called 'dance hall cases." *Id.* at 437 n.18; *see, e.g.*, *Famous Music Corp. v. Bay State Harness Horse Racing & Breeding Assn., Inc.*, 554 F.2d 1213 (1st Cir. 1977) (racetrack retained infringer to supply music to paying customers); *KECA Music, Inc. v. Dingus McGee's Co.*, 432 F. Supp. 72 (W.D. Mo. 1977) (cocktail lounge hired musicians to supply music to paying customers); *Dreamland Ball Room, Inc. v. Shapiro, Bernstein & Co.*, 36 F.2d 354 (7th Cir. 1929) (dance hall hired orchestra to supply music to paying customers). The Court contrasted the so-called dance-hall cases "with the so-called landlord-tenant cases, in which landlords who leased premises to a direct infringer for a fixed rental and did not participate directly in any infringing activity were found not to be liable for contributory infringement." *Sony*, 464 U.S. at 437 n.18. (citing *Deutsch v. Arnold*, 89 F.2d 686 (2d. Cir. 1938)).

But the theory of liability in the "dance-hall cases" did not apply in *Sony* because the only contact between Sony and the Betamax users (i.e., the alleged infringers) was at the moment of sale and, further, the record showed no evidence that any infringement was "induced or encouraged by" Sony. 464 U.S. at 437–38. Therefore, the Court explained that "[i]f vicarious liability is to be imposed on Sony in th[at] case, it must rest on the fact that [it] ha[d] sold equipment with constructive knowledge of the fact that its customers may use that equipment to make unauthorized copies of copyrighted material." *Id.* at 439. The Court explained, however, that "[t]here is no precedent in the law of copyright for the imposition of vicarious liability on such a theory." *Ibid.*

Therefore, the Court looked to the Patent Act's codification of contributory infringement in 35 U.S.C. § 271(c), referencing a historical kinship of between patent law and copyright law, and created the first theory of vicarious liability for copyright infringement: the theory that a defendant can be vicariously liable as a contributory infringement based on the sale of an article that lacks any substantial non-infringing uses. *Sony*, 464 U.S. at 439–42; *see also Grokster*, 545 U.S. at 931 ("On [the *Sony*] facts, with no evidence of stated or indicated intent to promote infringing uses, the only conceivable basis for imposing liability was on a theory of contributory infringement arising from its sale of VCRs to consumers with knowledge that some would use them to infringe."). The Court held, however, that Sony was not liable under that new vicarious liability theory because it was merely selling Betamax devices (i.e., VCRs), and those devices had substantial non-infringing uses. *Sony*, 464 U.S. at 456.

In *Grokster*, the Court expanded upon the secondary liability doctrines for copyright claims, holding that the Ninth Circuit erred by reading *Sony* "as limiting secondary liability quite beyond the circumstances which the case applied." *Grokster*, 545 U.S. at 933. The vicarious liability doctrine in *Sony*, for contributory infringement, was "devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement." *Grokster*, 545 U.S. at 932; *see also id.* at 932–33 ("Conversely, the doctrine absolves the equivocal conduct of selling an item with substantial lawful as well as unlawful uses, and limits liability to instances of more acute fault than the mere understanding that some one's products will be misused.") Thus, "*Sony* barred secondary liability based on presuming or imputing intent to cause infringement solely from the design or distribution of a product capable of substantial lawful use, which the distributor knows is in fact used for infringement." *Grokster*, 545 U.S. at 933. But *Sony* "did not displace other theories of secondary liability." *Id.* at 934.

"*Sony*'s rule limits imputing culpable intent as a matter of law from the characteristics or uses of a distributed product," but it allows for other common law theories of liability where there is other evidence of culpable intent. *Grokster*, 545 U.S. at 934. As such, the Court in *Grokster*

analyzed theories of liability based on an "unlawful purpose," i.e., the "purpose of bringing about acts of infringement." *Id.* at 935–40. Secondary liability in *Grokster* was premised on the defendants' *inducement* of infringement by third parties. *Id.* at 937–40. MGM also argued a vicarious liability theory based on imposing liability "when the defendant profits directly from the infringement and has a right and ability to supervise the direct infringer, even if the defendant *initially* lacks knowledge of the infringement." *Id.* at 930 n.9 (emphasis added). However, "[b]ecause the Court resolve[d] the case based on an inducement theory, there [wa]s no need to analyze separately MGM's vicarious liability theory." *Ibid.*

The Court has similarly explained in trademark cases that a defendant can be *vicariously liable* for infringement as a contributory infringer. *Inwood Labs v. Ives Labs.*, 456 U.S. 844 (1982). In *Inwood* the Court was called on "to consider the circumstances under which a manufacturer of a generic drug, designed to duplicate the appearance of a similar drug marketed by a competitor under a registered trademark, can be held *vicariously liable* for infringement of that trademark by pharmacist who dispense the generic drug." *Id.* at 8486 (emphasis added). But the question was whether *vicarious liability* existed based on *contributory infringement*:

> As the lower courts correctly discerned, liability for trademark infringement can extend beyond those who actually mislabel goods with the mark of another. Even if a manufacturer does not directly control others in the chain of distribution, it can be held responsible for their infringing activities under certain circumstances. Thus, if a manufacturer or distributor *intentionally induces* another to infringe, or if it *continues to supply* its products to one *whom it knows or has reason to know* is engaging in trademark infringement, the manufacturer or distributor *contributorily responsible* for any harm done as a result of the deceit.

456 U.S. at 853–54 (citing *William R. Warner & Co. v. Eli Lilly & Co.*, 265 U.S. 526 (1924); *Coca-Cola Co. v. Snow Crest Beverages, Inc.*, 64 F. Supp. 980 (D. Mass. 1946)) (emphasis added); *see also id.* at 860 (White, J., concurring) ("On appeal after trial, a majority of the Second Circuit found defendants liable for *contributory infringement* by revising and expanding *the doctrine of contributory trademark infringment*.") (emphasis added).

The Court's copyright and trademark cases—Acts that do not include statutory causes of action for indirect infringement—establish that those Acts incorporate only the secondary liability doctrines that were developed in the common law. A defendant can be vicariously *liable* as a contributory infringer if it sells the means of infringing, if it is also established that the defendant had the "unlawful purpose" of bringing about infringement by another. *Grokster*, 545 U.S. at 934–40. That "unlawful purpose" can be presumed when there are no non-infringing uses of a device, as in *Sony*, but it can also be shown through acts of inducement or other direct evidence of such an "unlawful purpose." *Id.* at 933–35.

The Court's *Sony* and *Grokster* cases, with its included discussion of secondary liability, confirm that secondary liability requires *both* a culpable act *and* a culpable mental state.

**B. Secondary Liability Doctrines Recognized in the Common Law.**

In discussing secondary liability in *Sony* and *Grokster*, the Court articulated that secondary liability for copyright infringement claims can only come from the common law. As the Court reiterated in *Sony*, "'[t]he direction of Art. I is that *Congress* shall have the power to promote the progress of science and the useful arts. When, as here, the Constitution is permissive, the sign of how far Congress has chosen to go can come only from Congress.'" 464 U.S. at 456 (quoting *Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518, 530 (1972)) (emphasis in original). And while Congress has the ability to revise the Copyright Act and create causes of action for indirect infringement, it is not the role of the courts "to apply laws that have not yet been written." *Ibid.* The Copyright Act does not articulate any basis for secondary liability, so the only secondary liability doctrines that can exist are those that existed in the common law. *See id.* at 930–31.

At the time the 1976 Copyright Act was passed, strict vicarious liability existed under the doctrine of *respondeat superior*. *See, e.g.*, Restatement (Second) Agency § 2 (defining, "master", "servant", and "independent contractor"); *id.* § 219 (articulating the limited circumstances for when a "master" is liable for the torts committed by a "servant"); *id.* § 220 (providing factors for considering whether someone is a "servant" or an "independent contractor"). Alternatively,

secondary liability could be found based on common law principles such as from inducing tortious conduct or from aiding and abetting. *See* Restatement (Second) Torts §§ 875–877.

Vicarious liability exists in the common law only in the form of strict vicarious liability under *respondeat superior*, i.e., without needing to prove a culpable mental state, or in the form of the various formulations of "aiding and abetting" liability, where a culpable mental state must either be proved, or else presumed from the specific conduct as in *Sony*.

### C. Count III Does Not Raise a Cognizable Cause of Action or Legal Theory for Vicarious Liability.

Count III of the Second Amended Complaint brings a claim titled "Vicarious Copyright Infringement." SAC, Count III. Principally, Plaintiff's theory of liability is that JPM "is liable as a vicarious infringer since it profited from the Infringement while declining to exercise a right to stop or limit it." SAC ¶ 78. To support that theory, the SAC also alleges:

- "Upon information and belief" JPM "had the right and ability to supervise and/or control the infringing conduct of its Employees, Agents, Affiliates, Vendors and/or members, and declined to exercise the right and ability to supervise or control that infringing conduct, despite its legal right to stop or limit the direct infringing conduct as well as the practical ability to do so." SAC ¶ 73.

- "As a direct and proximate result of such refusal to exercise its right to stop or limit the infringing conduct, [JPM] has continued to infringe upon Plaintiff's Video, which in turn generates profits for [JPM] directly from the use of the Infringement." SAC ¶ 74.

- "Upon information and belief, [JPM] enjoyed a direct financial benefit from the Infringement from, *inter alia*, advertising revenue from the increased traffic to its FB Account and from increase in fees paid by advertisers and sponsor." SAC ¶ 75.

- "Upon information and belief, in the alternative, [JPM] receives a material and/or financial benefit from operating the FB Account as it promotes Joe Pags' corporate services and brandname." SAC ¶ 76.

- "Upon information and belief, [JPM] enjoyed a directed financial benefit from using the appeal or 'draw' of Plaintiff's Video to increase user traffic to the FB Account, thereby increasing advertising or other revenue, and/or by increasing Joe Pags' customer base." SAC ¶ 77.

None of the allegations in Counts III support a theory of liability recognized by the Supreme Court, the Fifth Circuit, or the common law secondary liability theories that are understood to be incorporated into the Copyright Act.

Count III is not based on vicarious liability for the sale of a good with no non-infringing uses, *cf. Sony*, 464 U.S. at 456; *see also* Restatement (Second) Torts § 877(c), or from any allegation that JPM induced M3 to commit an act of alleged copyright infringement, *cf. Grokster*, 545 U.S. at 936–37; *see also* Restatement (Second) Torts § 877(a). As such, there is no Supreme Court precedent for a liability theory as alleged in Count III. The closest analog to the SAC's theory is the argument raised by MGM and referenced in *dicta* by the Court as the argument it did not address in *Grokster*, i.e., MGM's theory of imposing liability "when the defendant profits directly from the infringement and has a right and ability to supervise the direct infringer, even if the defendant *initially lacks* knowledge of the infringement." *See* 545 U.S. at 930 n.9 (emphasis added). Importantly, neither the Supreme Court nor the Fifth Circuit has ever approved of such a theory of secondary liability for copyright infringement.[6]

While the SAC appears to attempt to track the sentence in *Grokster*, acting as if the Court's footnote stating MGM's theory set forth elements of a cause of action, the Court's language in *Grokster* tracked a theory of aiding and abetting liability that requires a culpable mental state. *See Grokster*, 545 U.S. at 937–40 (analyzing the evidence in the context of addressing that the cause of action required showing an unlawful purpose); *see also id.* at 940 ("The unlawful objective is unmistakable."). The statement "even if the defendant initially lacks knowledge of the infringement," captures common law aiding and abetting principles: The secondarily liable defendant must know of, or learn of, the infringing conduct and aid and assist the direct infringer by permitting it to occur while receiving a financial benefit the infringement. *Compare Grokster*, 545 U.S. at 930 n.9 *with* Restatement (Second) Torts §§ 876–877. Knowingly permitting copyright infringement

---

[6] While courts in this district and around the country have articulated a "claim" for "vicarious infringement" with two (2) elements, *see, e.g.*, ECF No. 57 at ECF pp.16–17, as discussed herein, those are not "causes of action," they do not have "elements", and they reflect a misapplication of the law that has never been approved of by the Fifth Circuit or Supreme Court.

to continue because the defendant was profiting from that conduct is strong evidence that the defendant had an "unlawful purpose," a culpable mental state. *Cf. Sony*, 464 U.S. at 437 & n.18 (addressing "situations in which the imposition of vicarious liability is manifestly just, [because] the 'contributory' infringer was in a position to control the use of the copyrighted works by others **and had authorized the use without permission** from the copyright owner," with reference to the so-called "dance-hall cases") (emphasis added).

Count III is not an independent cause of action or legal theory. While Count III seemingly attempts a second bite at establishing secondary liability for contributory infringement, to the extent that it is merely a *second* (duplicative) claim for liability as a contributory infringer, that claim should be dismissed. But still, Count III does not set forth *facts* to support a culpable mental state by JPM, or even culpable acts by JPM, and is therefore deficient on its face to raise a plausible claim for relief. Alternatively, if Count III was attempting to set forth a liability theory based on agency principles of *respondeat superior*, it completely fails to identify facts for the necessary master-servant relationship, or that M3 was acting in the course and scope of employment with JPM. As such, dismissal of Count III pursuant to Rule 12(c) is appropriate, because Plaintiff has not alleged (and did not put forth facts at summary judgment) to support a claim for vicarious liability against JPM.

Here, the allegations of Count III do not raise a judicially cognizable claim for secondary liability against JPM. Moreover, even if all recognized secondary liability theories are considered, the allegations demonstrate that there is no basis for such claims. As such, Count III should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully requests that the Court dismiss Plaintiff's Second Amended Complaint (ECF No. 25) and this action for lack of standing because Plaintiff does not own the copyright in the Asserted Video, and dismiss Count III for failing to raise a plausible claim for relief under Rule 12(b)(1) and/or Rule 12(c).

Dated: March 17, 2026

Respectfully submitted,

*/s/ Andrew D. Lockton*
Edward F. McHale
FL Bar No. 190300
Andrew D. Lockton
FL Bar No. 115519; CA Bar No. 301186
**MCHALE & SLAVIN, P.A.**
2855 PGA Boulevard
Palm Beach Gardens, Florida 33410
(561) 625-6575
emchale@mchaleslavin.com
alockton@mchaleslavin.com
litigation@mchaleslavin.com

*Attorneys for Defendant Joe Pags Media, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing Motion to Dismiss For Lack of Standing was filed electronically with the Court on March 17, 2026, and thereby served on counsel of record via the Court's CM/ECF system. Counsel includes:

SANDERS LAW GROUP
Craig Sanders
James H. Freeman
333 Earle Ovington Blvd., Suite 402
Uniondale, NY 115533
(516) 203-7600
csanders@sanderslaw.group
jfreeman@sanderslaw.group

*Attorneys for Plaintiff Global Weather Productions, LLC*

*/s/ Andrew D. Lockton*
Andrew D. Lockton