IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| GLOBAL WEATHER PRODUCTIONS, LLC, | § | SA-23-CV-01350-MA |
| *Plaintiff,* | § | |
| vs. | § | |
| JOE PAGS MEDIA, LLC, | § | |
| *Defendant.* | § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Micaela Alvarez:**

This Report and Recommendation concerns Defendant Joe Pags Media's Motion for Summary Judgment [#57] and Plaintiff Global Weather Productions' Motion for Summary Judgment [#58]. All pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#49]. The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that Defendant Joe Pags Media's Motion for Summary Judgment [#57] and Plaintiff's Motion for Summary Judgment [#58] both be **GRANTED IN PART and DENIED IN PART.** Specifically, Defendant Joe Pags Media should be awarded summary judgment on Plaintiff's direct copyright infringement claim, and Plaintiff should be awarded summary judgment on its vicarious copyright infringement claim and request for statutory damages.

## I. Background

This case arises from the alleged unauthorized posting of a video owned by Plaintiff Global Weather Productions, LLC ("Global Weather") on the Facebook page of talk show host Joseph Pagliarulo ("Joe Pags"). Michael Clement, the founding and managing member of Global Weather and a non-party to this suit, is a professional videographer who specializes in videographing certain weather events. The video posted on Joe Pags's Facebook page was a segment of a video that Clement created of a flash-flooding event and rescue that occurred in Downtown Dallas on IH-30 in August 2022 ("the Video").

The live pleading is the Second Amended Complaint [#25]. In the Second Amended Complaint, Global Weather alleges direct copyright infringement by Defendants Joe Pags Media and M3 Media, a media consulting firm that Joe Pags Media hired to manage the Joe Pags Facebook page. The district judge who was previously presiding over this case,[1] U.S. District Judge Jason Pulliam, has already dismissed M3 Media from the lawsuit for lack of personal jurisdiction, leaving Joe Pags Media as the sole remaining defendant. (*See* Order on Mtn. to Dismiss [#29], at 16.) In the Second Amended Complaint, Global Weather also alleges vicarious copyright infringement by Joe Pags Media.[2] Global Weather seeks statutory damages and the award of attorney's fees pursuant to the Copyright Act, 17 U.S.C. § 501, *et. seq*.

Joe Pags Media has filed a motion for summary judgment, arguing that it is neither directly nor vicariously liable for copyright infringement and that it prevails on its affirmative defenses of fair use and unclean hands as a matter of law. Global Weather has filed a cross-motion for summary

---

[1] This case was originally assigned to Judge Pulliam but was subsequently transferred to U.S. District Judge Micaela Alvarez. *See* Transfer Order [#48].

[2] Global Weather's live pleading includes a contributory copyright infringement in Count II of the Second Amended Complaint, but Global Weather has since withdrawn this claim for relief. (Joint Discovery/Case Management Plan [#32], at 1; Mot. Summ. J. [#58], at 22 n.10.)

judgment, arguing that Joe Pags Media is directly or, alternatively, vicariously liable for copyright infringement as a matter of law. Global Weather further asserts that Joe Pags Media's affirmative defenses fail and that it is entitled to statutory damages as a matter of law. Responses and replies have been filed to both motions. The motions are therefore ripe for the Court's review and reflect that both parties agree that this case should be resolved on the briefing and no fact issues remain to be tried to the jury.

## II. Summary Judgment Standard

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion" and "identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by setting forth particular facts indicating there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may

satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).

When parties file cross-motions for summary judgment, the Court reviews "each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Cooley v. Hous. Auth. of City of Slidell*, 747 F.3d 295, 298 (5th Cir. 2014) (quoting *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001)). "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Westphal*, 230 F.3d at 174 (citing *Celotex Corp.* 477 U.S. at 322).

## III. Summary Judgment Record

The summary-judgment record establishes the following facts. Where there is a factual dispute between the parties, it is noted. Clement is in the business of videographing newsworthy events, particularly storms and other natural disasters, and commercially licensing such videos to news media outlets. (Clement Decl., Pl. Ex. 1 [#58-2], at ¶ 3.[3]) On August 22, 2022, Clement created the Video, which captures water rescues in downtown Dallas, Texas, following a flash flood. (*Id.* at ¶ 4; Facebook Screen Recording, Pl. Ex. 1-A [#58-2].) Clement published the Video to his YouTube account on the same day. (Clement Decl. Pl. Ex. 1 [#58-2], at ¶¶ 8-9.) On September 1, 2022, Clement obtained a copyright registration certificate for the Video bearing registration number PA 2-374-324. (Clement Decl., Pl. Ex. 1 [#58-2], at ¶ 13; Certificate of Registration, Pl. Ex. 1-C [#58-2].) The Video is on deposit with the U.S. Copyright Office. (Clement Decl., Pl. Ex. 1 [#58-

[3] Both parties have included appendices containing exhibit labels in their motions for summary judgment. (Def. Mot. Summ. J. Appendix [#57-1]; Pl. Mot. Summ. J. Appendix [#58-1].) Evidence is cited herein according to the exhibit labels assigned by the parties in their appendices. Citations include references to the corresponding ECF entry number to indicate where the evidence appears on the docket.

2], at ¶ 15; Carillo Decl., Pl. Ex. 4 [#58-2], at ¶ 8; Acknowledgement of Deposit, Pl. Ex. 4-D [#58-2].) After Clement published the Video on his YouTube account, several news media outlets contacted him seeking license to publish the Video on their websites. (Clement Decl., Pl. Ex. 1 [#58-2], at ¶10.) The Video was licensed to various third-party news media outlets at the rate of $2,500. (*Id.* at ¶11; Licensing Records, Pl. Ex. 1-D [#58-2].) Clement later transferred ownership of the Video, including copyright, to Global Weather by written agreement (the "Copyright Assignment") on June 4, 2023. (Clement Dep. [#58-2], at ¶ 16; Copyright Assignment, Pl. Ex. 1-E. [#58-2].)

On August 23, 2022, a 59-second clip of the Video—which has a full duration of three minutes and 32 seconds—was posted on the official Joe Pags Facebook account. (Facebook Screen Recording, Pl. Ex. 1-A. [#58-2];[4] Clement Decl., Pl. Ex. 1 [#58-2], at ¶ 29; Def. Resp. to First Set of Requests for Admission, Pl. Ex. 2-H [#58-2], RFAs 47, 78, 82.) Joe Pags is a talk show host and the sole managing member of Defendant Joe Pags Media. (Clement Decl., Pl. Ex. 1 [#58-2], at ¶ 17; Tex. Sec. of State Business Registration, Pl. Ex. 1-F [#58-2].) Joe Pags has worked in the media industry for more than 35 years and is familiar with basic principles of copyright law. (Pagliarulo Decl., Def. Ex. A [#57-2], at ¶ 4; Pagliarulo Dep., Pl. Ex. 2-J [#58-2], 25:21-26:15.) He has operated Joe Pags Media for over a decade. (Pagliarulo Dep., Pl. Ex. 2-J [#58-2], 16:21-17:6.) The

[4] Joe Pags Media objects to the admissibility of the screen-recorded Video segment, contending that it is inadmissible because Global Weather did not produce the full screen recording during discovery and instead only produced screenshots. Joe Pags Media does not assert that Global Weather failed to respond to a specific discovery request or comply with a motion to compel, and Global Weather's Rule 26(a) initial disclosures identified "Screengrabs of Defendant's Facebook Account, including evidence of the unauthorized use of the Video." (Initial Disclosures [#62-15], at 8.) Joe Pags Media has therefore not identified a basis for exclusion of the screen-recorded Video segment under any provision of Federal Rule of Civil Procedure 37. This objection is therefore overruled.

Joe Pags Show discusses daily news and current events, among other topics, and has "millions of listeners." (Pagliarulo Dep., Pl. Ex. 2-J [#58-2], 35:13-20, 50:14.)

According to Mr. Pagliarulo, M3 Media posted the Video to the Joe Pags Facebook account. (Pagliarulo Decl., Def. Ex. A [#57-2], at ¶ 10.) M3 Media is a media consulting firm that Joe Pags Media hired to perform website, newsletter, and social media management services, which include posting content on social media accounts. (*Id.* at ¶¶ 7–9; Cullen Decl., Def. Ex. B [#57-3], at ¶¶ 5, 16; M3-Joe Pags Media Agreement, Def. Ex. J. [#57-11].) M3 Media's Chief Technology Officer ("CTO"), Blair Cullen, posted the Video and testified that M3 Media obtained the Video from Grabien, a third-party service that aggregates content that airs on major television, radio, and podcast networks and allows subscribers to access and repost that content. (Cullen Decl., Def. Ex. B [#57-3], at ¶ 18.) The CTO also testified that M3 Media has a subscription with Grabien, but the record does not contain documentary evidence of the subscription nor of Grabien having a license to use the Video. (Cullen Dep., Def. Ex. D [#57-5], at 195:9-15.)

According to Mr. Pagliarulo, he "granted M3 Media 'ownership' access" to the Facebook account and administer privileges when Joe Pags Media hired M3 Media and entered a written agreement with the company in October 2021. (Pagliarulo Decl., Def. Ex. A [#58-2], at ¶ 12; Cullen Decl., Def. Ex. B [#58-3], at ¶ 13-14.; M3-Joe Pags Media Agreement, Def. Ex. J [#57-11].) Joe Pags Media contends this made M3 Media the owner of the Facebook page, but Global Weather disputes this contention. Joe Pags Media has had continuous access to the Facebook account since it was created in 2008. (Pagliarulo Dep., Pl. Ex. 2-J [#58-2], 62:5-15, 73:17-23, 74:3-8, 92:22.) According to Mr. Pagliarulo, Joe Pags Media does not supervise or control what M3 Media posts on its social media accounts, and that neither he nor anyone else at Joe Pags Media was aware that M3 Media posted the Video on the Facebook page until after this lawsuit was filed. (Pagliarulo Decl.,

Def. Ex. A [#57-2], at ¶¶ 10–12.) Joe Pags Media does not have written policies in place to assess whether use of videos on Joe Pags Media's online platforms constitute fair use. (Pagliarulo Dep., Pl. Ex. 2-J [#58-2], 23:17-20.) The general public cannot access the Facebook account to post any videos; only Joe Pags Media and M3 Media had access to the account when the Video was posted. (Pagliarulo Dep., Pl. Ex. 2-J [#58-2], 32:13-16, 121:20-25.)

Joe Pags Media has paid M3 Media a fixed monthly fee for its services since October 2021. (*Id.* at 114:1-8.) It retains power to terminate M3 Media and deny its access to the Joe Pags Facebook account. (*Id.* at 67:23-25.) Per the terms of the agreement between the two companies, M3 Media receives 50 percent of revenue obtained from monetization of the websites and social media accounts it manages on behalf of Joe Pags Media. (M3-Joe Pags Media Agreement, Def. Ex. J [#57-11].) According to M3 Media's CTO, Blair Cullen, this revenue split would apply to advertising revenue generated by the Joe Pags Facebook account if the account reached the site traffic threshold for monetization established by Meta Platforms, Inc. ("Meta"), the operator of Facebook. (Cullen Dep., Def. Ex. D [#57-5], 64:10-17, 131:12-132:2.)

The Joe Pags Facebook account promotes the Joe Pags Show. Joseph McDonald, Global Weather's retained expert in social media marketing, concluded that content posted on the Joe Pags Facebook page drives site engagement, generates revenues through Facebook's monetization options, and lures traffic to Joe Pags Media's talk show and online store. (McDonald Report, Pl. Ex. 2-F [#58-2], at 229-244.) Mr. Pagliarulo conceded in his deposition that Joe Pags Media has received revenue generated through advertising and subscription fees on the Facebook account, although he could not recall when or how much, and he described the amount as minimal. (Pagliarulo Dep., Pl. Ex. 2-J [#58-2], 80:4-82:20.) But Plaintiff obtained and produced Meta business records, which indicate that the Joe Pags Facebook account generated revenue via

advertising and paid subscriptions at the time the alleged copyright infringement took place in August 2022. (Meta Business Records, Pl. Ex. 5-A [#58-2].[5]) The records state that during and after that time period, payments were made to Shawnee Digital, an LLC that M3 Media uses as a "bank account." (Cullen Dep., Def. Ex. D [#57-5], 154:19-156:8; Velazquez Aff., Pl. Ex. 5 [#58-2], at ¶¶ 8-9.[6])

## IV. Analysis

Both Global Weather and Joe Pags Media seek summary judgment on Global Weather's direct and vicarious copyright infringement claims under the Copyright Act. Joe Pags Media contends that it is entitled to summary judgment on Global Weather's direct infringement claim because it was not Joe Pags Media but instead M3 Media that posted a segment of the Video on the Joe Pags Media Facebook page. Joe Pags Media also asserts that it is not vicariously liable for copyright infringement because it did not have the right and ability to control or supervise M3 Media's content posting, and because publishing the Video segment did not result in any direct financial benefit to Joe Pags Media. Joe Pags Media further argues that Global Weather's claims fail as a matter of law because Global Weather cannot prove substantial similarity between the

[5] Although Ms. Velazquez's declaration is labeled as Exhibit 4 in Plaintiff's index to its appendix [#58-1], it should be Exhibit 5 because the Carillo declaration, which precedes the Velazquez declaration in the record, is also labeled as Exhibit 4. The Meta Business Records should therefore be labeled as Exhibit 5-A rather than 4-A.

[6] Joe Pags Media objects to the admissibility of Ms. Velazquez's declaration (Pl. Ex. 5), arguing that it is based on her interpretation of written documents rather than based on her personal knowledge. *See* Fed. R. Civ. P. 56(c)(4). This objection is overruled. Regardless, in drafting this report and recommendation, the undersigned relied only on the portions of the declaration that are properly within the scope of her testimony as Meta's custodian of records. *See* Fed. R. Evid. 803(6).

Joe Pags Media also objects to the admissibility of Mr. Sanders's declaration (Pl. Ex. 2). This objection is also overruled, and again, the undersigned only relied on the declaration in so far as it authenticates the documents attached to it.

copyrighted Video and the clip posted on the Joe Pags Facebook page. Finally, Joe Pags Media asserts it is entitled to summary judgment on the affirmative defenses of fair use and unclean hands.

In its cross-motion for summary judgment, Global Weather contends that the summary-judgment record establishes as a matter of law that Global Weather owns a valid copyright in the Video and that Joe Pags Media factually copied the Video. In the alternative, Global Weather contends that Joe Pags Media is vicariously liable for copyright infringement. Global Weather further asserts that Joe Pags Media's affirmative defenses fail as a matter of law. Global Weather maintains that, because Joe Pags Media acted with reckless disregard for or willful blindness to Global Weather's copyright, it is entitled to statutory damages amounting $12,500—a five-times multiple of the $2,500 licensing fee charged to other news media outlets for use of the Video.

The Court should find that Joe Pags Media is entitled to summary judgment as to Global Weather's direct infringement claim, but that Global Weather is entitled to summary judgment on its vicarious infringement claim. The Court should further find that Global Weather is entitled to summary judgment on Joe Pags Media's affirmative defenses and, that due to Joe Pags Media's willful infringement, it is entitled to statutory damages and attorneys' fees as a matter of law.

**A. Joe Pags Media is entitled to summary judgment on Global Weather's direct copyright infringement claim.**

Both parties seek summary judgment on Global Weather's direct infringement claim. To prevail on such a claim, a plaintiff must prove (1) that the plaintiff owns a valid copyright, and (2) that the defendant copied constituent elements of the work that are original. *Baidsen v. I'm Ready Prods., Inc.*, 693 F.3d 491, 499 (5th Cir. 2012). Regarding the second element, liability for direct copyright infringement requires volitional conduct by the defendant, which is "conduct by a person who causes in some meaningful way an infringement." *BWP Media USA, Inc. v. T&S Software Assocs., Inc.*, 852 F.3d 436, 440 n.1 (5th Cir. 2017) (emphasis omitted) (quoting *CoStar Grp., Inc. v.*

*LoopNet Inc.*, 373 F.3d 544, 551 (4th Cir. 2004)). Joe Pags Media has established that it did not engage in the required volitional conduct, so it is entitled to summary judgment on this claim.

**i. Global Weather owns a valid copyright in the Video.**

To establish the first element of direct infringement, a plaintiff must prove that the work is copyrightable and original and that it is owned by the plaintiff. *Compaq Comput. Corp. v. Ergonome Inc.*, 387 F.3d 403, 408 (5th Cir. 2004). Under the Copyright Act, a certificate of copyright registration made before or within five years of the first publication of the work constitutes prima facie evidence of the validity of the copyright. *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 549 (5th Cir. 2015) (quoting 17 U.S.C. § 410(c)). However, a certificate of copyright registration creates only a rebuttable presumption of validity. *Norma Ribbon & Trimming, Inc. v. Little*, 51 F.3d 45, 47 (5th Cir. 1995). Once the plaintiff provides a certificate, the burden shifts to the defendant to offer evidence to disprove the validity of the copyright by showing the work at issue is unprotectable. *Jane Envy, LLC v. Infinite Classic Inc.*, No. SA:14-CV-065-DAE, 2016 WL 797612, at *4 (W.D. Tex. Feb. 26, 2016) (citing *Engenium Sols., Inc. v. Symphonic Techs., Inc.*, 924 F. Supp. 2d 757, 776 (S.D. Tex. 2013)). To establish that a work is original, a plaintiff must show only that it was "independently created by the author" and possesses "at least some minimal degree of creativity." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991). In this case, only the ownership of a valid copyright is in dispute; the originality of the Video is not contested.

Here, Global Weather has provided a certificate of copyright registration made within five years of the first publication of the Video. (Certificate of Registration, Pl. Ex. 1-C [#58-2].) Clement published the Video to his YouTube account on August 22, 2022, and obtained a copyright registration certificate for the Video on September 1, 2022. (*Id.*; Clement Decl., Pl. Ex. 1 [#58-2], at

¶¶ 8-9, 13.) Later, Clement assigned the copyright to Global Weather. (Copyright Assignment, Pl. Ex. 1-E. [#58-2].) Therefore, Global Weather has presumptively established it is the owner of a valid copyright in the Video.

To rebut the presumptive validity of Global Weather's ownership of the copyright, Joe Pags Media argues that the June 4, 2023 Copyright Assignment is insufficient as a matter of law to transfer ownership of the copyright in the Video from Clement to Global Weather. In support of this argument, Joe Pags Media offers evidence of other copyright infringement actions where Clement, rather than Global Weather, brought lawsuits against other alleged infringers of the copyright in the Video. Joe Pags Media contends that these other lawsuits establish Clement's continued ownership of copyright in the Video and disprove Global Weather's ownership of the copyright. Joe Pags Media raises the same arguments in its Motion to Dismiss for Lack of Standing [#74].

For the reasons discussed in the undersigned's Report and Recommendation addressing Joe Pags Media's motion to dismiss, also entered today, these arguments are unavailing. By its terms, the Copyright Assignment conferred copyright in the Video to Global Weather. Joe Pags Media has thus failed to disprove that Global Weather owns a valid copyright in the Video.

**ii. The segment posted on the Joe Pags Facebook page contained constituent elements of the Video that are original, but it was not posted by Joe Pags Media.**

To establish the second element of direct infringement, a plaintiff must prove that the defendant factually copied the plaintiff's copyrighted work and must also prove "substantial similarity" between the copy and the copyrighted work. *Guzman v. Hacienda Records and Recording Studio*, 808 F.3d 1031, 1037 (5th Cir. 2015). Originality is not contested here. And, again, for the copying to be attributed to the defendant, the defendant must cause "in some meaningful way an infringement." *BWP Media USA, Inc.,* 852 F.3d at 440 n.1.

**Factual copying**. In this case, Global Weather has established factual copying of the Video. Factual copying may be inferred from "(1) proof that the defendant had access to the copyrighted work prior to the creation of the infringing work and (2) probative similarity." *Guzman*, 808 F.3d at 1037 (quoting *Positive Black Talk Inc. v. Cash Money Recs. Inc.*, 394 F.3d 357, 368 (5th Cir. 2004), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 167 (2010)). When access cannot be shown, a plaintiff may prove factual copying "by showing such a 'striking similarity' between the two works that the similarity could only be explained by actual copying." *Armour v. Knowles*, 512 F.3d 147, 152 n.3 (5th Cir. 2007) (citing *Positive Black Talk Inc.*, 394 F.3d at 371 n.10.) The copyrighted work and the alleged infringing work will be deemed "probatively similar" if they are "adequately similar" when compared as a whole. *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004) (per curiam).

A comparison of the Video and alleged infringing segment shows that the segment posted on the Joe Pags Facebook page is a 59-second portion of the original three minute and 32-second Video. (Facebook Screen Recording, Pl. Ex. 1-A [#58-2].) The posted segment can only be explained by "actual copying." *Armour*, 512 F.3d at 152 n.3. Joe Pags Media responds that the copying is not legally actionable because the Video segment is limited to "pure factual matter" that includes no protectible expressive elements or, at most, constitutes a *de minimis* copying of expressive elements contained in the Video. However, Joe Pags Media fails to identify legal authority supporting its position that an *actual copying* of one-third of an original work constitutes *de minimis* copying just because the video depicts a real-life situation. In contrast, Global Weather has pointed to similarities between the videos "that can only be explained by copying, rather than by coincidence, independent creation, or prior common source." *Batiste v. Lewis*, 976 F.3d 493, 504 (5th Cir. 2020) (quoting

*Guzman*, 808 F.3d at 1039). Global Weather has thus established the second element of its direct infringement claim.

**<u>Volitional Conduct</u>**. Ultimately, Global Weather's direct infringement claim fails because it does not have evidence that establishes the requisite volitional conduct by Joe Pags Media. To be directly liable, Joe Pags Media must "cause in some meaningful way" the infringement. *See BWP Media*, 852 F.3d at 440 n.1. Direct liability for infringement is imposed only on those who use or authorize the use of copyrighted work. *Id.* at 439 (quoting *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 433 (1984)). In contrast, vicarious liability for infringement, discussed infra, arises from the actions of third parties. *Id.* (citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005)). Joe Pags Media has established as a matter of law that it did not cause the infringement in some meaningful way for purposes of direct liability. *See id.* at 440 n.1. But, for reasons discussed in the following section, Joe Pags Media is *vicariously* liable for the acts of M3 Media.

Global Weather asserts that Joe Pags Media is directly liable because, within this circuit, the volitional conduct requirement has only been invoked to shield internet service providers ("ISPs") that serve as "passive conduit[s]" for infringing material. *See id.* at 439 (discussing *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs.*, 907 F. Supp. 1361 (N.D. Cal. 1995)). Global Weather contends that the Fifth Circuit's volitional conduct standard asks whether the defendant "proximately caused" the infringement. This argument mischaracterizes the Fifth Circuit's holding in *BWP Media*. *See id.* at 440 n.1 (acknowledging, without adopting, the Ninth Circuit's statement that the "volitional conduct" inquiry is derived from causation analyses in *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017)).

In *BWP Media*, the ISP defendant hosted an internet forum on which third-party users posted images that infringed copyrights owned by the plaintiffs. The Fifth Circuit declined to impose liability for direct infringement because the ISP defendant's connection to the infringement was merely passive, citing concerns that "it does not make sense to adopt a rule that could lead to the liability of countless parties whose role in the infringement is nothing more than setting up and operating a system that is necessary for the functioning of the internet." *Id*. at 442 (quoting *Netcom*, 907 F. Supp. At 1372). As Global Weather emphasizes, those concerns are not present here because the undisputed evidence establishes that no party other than Joe Pags Media or M3 Media had the ability to post content to the Facebook page. However, imposing direct liability in this instance would stretch the volitional-conduct standard too far. Although sister circuits have adopted a proximate-cause standard, the Fifth Circuit has not done so.

It is undisputed that M3 Media, not Joe Pags Media, posted the infringing Video on the Facebook page. Global Weather does not contest that Joe Pags Media does not control what M3 Media chooses to post on Joe Pags Media's social media accounts. Global Weather's arguments related to Joe Pags Media's conduct—including hiring M3 Media to manage its Facebook account, its power to terminate M3 Media, and its continual access to and posting on the Facebook page—are better couched in terms of vicarious liability.[7]

Joe Pags Media is therefore entitled to summary judgment on Global Weather's direct infringement copyright claim, as Global Weather has not presented sufficient evidence sufficient to raise a genuine fact issue for trial on the volitional conduct requirement of a direct infringement claim.

---

[7] Global Weather argues that Joe Pags Media is directly liable for M3 Media's acts under agency principles, but Joe Pags Media correctly responds that doctrines of *secondary*—not direct—liability have developed from common law agency principles in the area of copyright law. *Grokster*, 545 U.S. at 930.

### B. Global Weather is entitled to summary judgment on its vicarious infringement claim.

Both parties seek summary judgment on Global Weather's vicarious copyright infringement claim. To prevail on a claim for vicarious infringement, a plaintiff must prove that (1) the defendant has a direct financial interest in the infringing activity, and (2) the defendant holds the right and ability to supervise the activity that causes the infringement but declines to exercise the right to stop or limit it. *Grokster*, 545 U.S. at 930 (citing *Shapiro, Bernstein & Co. v. H. L. Gree Co.*, 316 F.2d 304, 307 (2d Cir. 1963)). The defendant's intent or knowledge of the infringement is not an element of a claim for vicarious liability. *Id.* at 930 n.9. For the reasons that follow, Global Weather is entitled to judgment as a matter of law on its vicarious infringement claim arising from M3 Media's infringement of Global Weather's copyright in the Video.

#### i. Joe Pags Media has a direct financial interest in the infringing Video segment's posting on the Facebook account.

Global Weather has submitted sufficient evidence of Joe Pags Media's financial interest in the posting of the infringing Video segment. District courts within the Fifth Circuit have followed the Ninth Circuit's ruling that a financial benefit "exists where the availability of infringing material acts as a draw for customers." *See, e.g., UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC,* No. A–17–CA–365–LY, 2018 WL 1096871, at *10 (W.D. Tex. Feb. 28, 2018) (quoting *Ellison v. Robertson,* 357 F.3d 1072, 1078 (9th Cir. 2004), *report and recommendation adopted*, 2018 WL 1905124 (W.D. Tex. Mar. 28, 2018). The central aspect of the "direct financial benefit" inquiry is "whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps, regardless of *how substantial* the benefit is in proportion to a defendant's overall profits." *Ellison*, 357 F. 3d at 1079 (emphasis in original). Other circuits have agreed with this formulation of the financial benefit inquiry. *See EMI Christian Music Grp. v. MP3tunes, LLC*,

844 F.3d 79, 99 (2d Cir. 2016); *Sony Music Ent. v. Cox Commc'ns, Inc.*, 93 F.4th 222, 231-32 (4th Cir. 2024), *cert denied*, 145 S. Ct. 2844 (June 30, 2025).

The summary-judgment record establishes that the Joe Pags Facebook account was monetized at the time the Video was posted, as M3 Media received payments from Meta during the relevant time period. (Meta Business Records, Pl. Ex. 5-A [#58-2].) The summary-judgment evidence also includes an expert report that concludes that content posted on the Joe Pags Facebook page drives site engagement, generates revenues through Facebook's monetization options, and lures traffic to Joe Pags Media's talk show and online store. (McDonald Report, Pl. Ex. 2-F [#58-2], at 229-244.) The record thus establishes that, in addition to the payments from Meta, Joe Pags Media derived other financial benefits from M3 Media posting the Video and other content.

For its part, Joe Pags Media has failed to establish a genuine dispute of material fact as to its contention that it did not have a financial interest in the Video segment and other content posted on its Facebook account. Joe Pags Media maintains that the Meta business records show only that M3 Media, not Joe Pags Media, received payments from Meta during the relevant time period. Even assuming that the payments from Meta were the only benefits derived from posting the Video (they were not, as noted above), Joe Pags Media's argument is not supported by the summary judgment record. The record contains an agreement between Joe Pags Media and M3 Media establishes that Joe Pags Media was entitled to a 50 percent share of the Meta revenue. (M3-Joe Pags Media Agreement, Def. Ex. J [#57-11]; Cullen Dep., Def. Ex. D [#57-5], 64:10-17, 131:12-132:2.) As a result, no reasonable juror could conclude that Joe Pags Media did not have a financial interest in content posted on the Joe Pags Facebook page. It is immaterial whether the direct financial benefit obtained was or was not substantial in proportion to Joe Pags Media's overall profits. *See Ellison*, 357 F. 3d at 1079.

**ii. Joe Pags Media holds the right and ability to supervise the activity that caused the infringement, but did not exercise this right.**

Joe Pags Media has also failed to establish a genuine dispute of material fact as to its right and ability to limit the use of its Facebook page for infringing purposes. To be vicariously liable for copyright infringement by a third party, a defendant must also hold the right and ability to supervise the activity that causes the infringement but decline to exercise the right to stop or limit it. *Grokster*, 545 U.S. at 930. Again, the undisputed summary-judgment evidence establishes that no party other than Joe Pags Media or M3 Media had the ability to post content to the Facebook page. (Pagliarulo Dep., Pl. Ex. 2-J [#58-2], 32:13-16, 121:23-25.) Furthermore, Joe Pags Media retained the power to terminate M3 Media's ability to access and post on the Facebook page. (*Id.* at 67:23-25.) Joe Pags Media thus had the ability to supervise the activity that caused the infringement but did not exercise it. Turning a blind eye to the content M3 Media chose to post does not absolve Joe Pags Media of vicarious liability for the posts to its page. Global Weather is therefore entitled to judgment as a matter of law on its vicarious infringement claim.

**C. Global Weather is entitled to summary judgment on Joe Pags Media's affirmative defenses.**

In its motion for summary judgment, Joe Pags Media seeks summary judgment on its affirmative defenses of fair use and unclean hands. In its cross-motion for summary judgment, Global Weather asserts that all eight of Joe Pags Media's affirmative defenses fail as a matter of law and that Global Weather is therefore entitled to summary judgment on these defenses. This Report and Recommendation does not address Joe Pags Media's asserted defenses of failure to state a claim and lack of standing because they were addressed in Judge Pulliam's prior Memorandum Opinion and Order [#29] and the undersigned's Report and Recommendation on Joe Pags Media's motions to

dismiss, also entered today, respectively.[8] With regard to the other affirmative defenses, the undersigned recommends that Global Weather be granted summary judgment on Joe Pags Media's affirmative defenses of fair use, unclean hands, actual or implied license, and equitable estoppel.

**i. Fair use**

Both parties seek summary judgment on Joe Pags Media's fair use defense. The Copyright Act lists four factors to determine "whether the use made of a work in any particular case is a fair use":

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107; *Keck v. Mix Creative Learning Ctr., L.L.C.*, 116 F.4th 448, 453 (5th Cir. 2024). All four factors are weighed together in light of the purposes of copyright. *Keck,* 116 F.4th at 453 (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994)). Courts typically assign the most weight to the first and fourth factors. *Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 321 (5th Cir. 2022).

The first factor, the purpose and character of the work, favors Global Weather. This factor's central inquiry is whether the new work "adds something new, with a further purpose or different character" to the original work—in other words, whether the new use is "transformative." *Keck,* 116

[8] This Report and Recommendation will also not address in depth the asserted defense of Global Weather's failure to register copyright in the allegedly infringing Video, which is raised only cursorily in the parties' briefing. Global Weather possesses copyright in the Video for the reasons discussed in Section A.1. Joe Pags Media has failed to demonstrate there is any fact dispute for trial on this issue.

F.4th at 453 (quoting *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 527-28 (2023)). Here, it is undisputed that the Video was an actual copy of approximately one-third of the original video created by Clement. Joe Pags Media's use of the Video was therefore in no way transformative, and this factor weighs against fair use.

The second factor, the nature of the work, favors Joe Pags Media. Fair use is more likely to be found in "factual works than in fictional works." *Bell*, 27 F.4th at 323 (quoting *Stewart v. Abend*, 495 U.S. 207, 237 (1990)). Courts also consider whether the work has been published, as the "scope of fair use is 'narrower with respect to unpublished works.'" *Id.* (quoting *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 563-64 (1985)). The work at the heart of this dispute is a video of a flash-flooding event and rescue that occurred in Downtown Dallas. The work is therefore primarily factual. It is also undisputed that the work was published on Clement's YouTube account. This factor therefore favors a finding of fair use.

The third factor favors Global Weather. This factor examines "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." *Bell*, 27 F.4th at 323-24 (quoting 17 U.S.C. § 107(3)). Courts consider whether the amount copied "is either a quantitatively or qualitatively significant part of the original. *Id.* at 324 (citing *Campbell*, 510 U.S. at 586-87). Here, the Video is a quantitatively significant part—nearly one third—of the original. This factor weighs against fair use.

The fourth factor also favors Global Weather. In assessing the fourth factor, courts look to whether widespread use of the work in the same infringing manner "would result in a substantially adverse impact on the potential market" for the work. *Campbell*, 510 U.S. at 590. The fourth factor is the most important element of fair use. *Harper*, 471 U.S. at 566. Joe Pags Media contends that, because its Facebook account is different from the "large commercial entities" to which Global

Weather licensed the Video, its use of the Video did not adversely affect Global Weather's ability to exploit the work. This argument is unsupported and factually dubious. The more obvious inference is that widespread use of the Video in the same infringing manner would adversely affect the potential market for the original work. As Global Weather points out, Joe Pags Media has not presented "favorable evidence about relevant markets" that would support its dubious factual assertion that the type of use engaged in by Joe Pags Media would not affect the market for this work. *See Campbell*, 510 U.S. at 590. The fourth factor thus weighs against finding fair use.

In sum, three of the four factors all weigh against finding fair use, including the two more important factors. Only the second factor weighs in the other direction. On this record, no reasonable jury could conclude that Joe Pags Media's posting of the Video constituted a fair use. Considering all factors together, Global Weather is therefore entitled to judgment as a matter of law on Joe Pags Media's fair-use defense.

**ii. Unclean hands**

Both parties also seek summary judgment on Joe Pags Media's unclean hands defense. The defense applies only where the plaintiff's wrongful acts "in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication." *Mitchell Bros. Film Grp. v. Cinema Adult Theater*, 604 F.2d 852, 863 (5th Cir. 1979) (quoting *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933)). Courts have found unclean hands when a party makes "serious misrepresentations," such as by "falsifying a court order, by falsifying evidence, or by misrepresenting the scope of his copyright to the court and opposing party," or by defrauding the Copyright Office. *Energy Intel. Grp., Inc. v. Kayne Anderson Cap. Advisors, L.P.*, 948 F.3d 261, 267 n.4 (5th Cir. 2020).

Joe Pags Media fails to establish this affirmative defense. Joe Pags Media argues that Global Weather is misusing its copyright to "extort" damages by naming Joe Pags Media as a defendant in this suit. But there is no evidence of extortion or fraudulent conduct in the summary-judgment record. Joe Pags Media has not identified any legal authority that would suggest the record should be construed otherwise. No reasonable jury could conclude that Global Weather had unclean hands in this litigation, and Global Weather is entitled to judgment as a matter of law on this defense.

**iii. Actual or implied license**

Global Weather also seeks judgment as a matter of law on Joe Pags Media's affirmative defenses of actual or implied license. It is well-established in the Fifth Circuit that although exclusive licenses must be evidenced by a writing, non-exclusive licenses may be implied from conduct or granted orally. *Carson v. Dynegy, Inc.*, 344 F.3d 446, 451 n.5 (5th Cir. 2003) (citing *Lulirama Ltd., Inc. v. Axcess Broad. Svs., Inc.,* 128 F.3d 872, 879 (5th Cir. 1997) ("While the Copyright Act requires that exclusive licenses be evidence by a writing, no such writing requirement applies to nonexclusive licenses.")).

The record here contains no evidence of a writing or any other conduct by Global Weather impliedly granting M3 Media or Joe Pags Media a license to display the Video. As such, Joe Pags Media has failed to demonstrate a fact dispute for trial on this affirmative defense. Although the CTO of M3 Media testified that M3 Media retrieved the Video from third-party Grabien and reposted the Video on the Joe Pags Facebook account, Joe Pags Media has not submitted any evidence of Grabien having a license to display the Video on its own website or that Grabien had a right to sub-license the Video to other parties. Global Weather is entitled to summary judgment on this affirmative defense.

**iv. Equitable estoppel**

Global Weather also seeks judgment as a matter of law on Joe Pags Media's affirmative defense of equitable estoppel. Estoppel may serve as a complete defense "when a copyright owner engages in intentionally misleading representations concerning his abstention from suit, and the alleged infringer detrimentally relies on the copyright owner's deception." *Kayne Anderson*, 948 F.3d at 271 n.6 (quoting *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 684 (2014)). The summary-judgment record is devoid of evidence of misleading representations by Global Weather or Joe Pags Media's reliance on any representations by Global Weather. Joe Pags Media has thus not presented any evidence demonstrating a fact dispute for trial, and Global Weather is entitled to summary judgment on this defense.

**D. Global Weather is entitled to $12,500 in statutory damages.**

Finally, Global Weather seeks summary judgment on its entitlement to statutory damages amounting to $12,500. Under the Copyright Act, a copyright owner may elect to recover statutory damages instead of actual damages, which range from $750 to $30,000 per work infringed. 17 U.S.C. § 504(c)(1); *Broad. Music, Inc. v. Xanthas, Inc.*, 855 F.2d 233, 236 (5th Cir. 1988). If the copyright owner establishes that the infringement was committed willfully, the court may increase the statutory award to no more than $150,000. 17 U.S.C. § 504(c)(2); *Xanthas*, 855 F.2d at 236. A copyright owner establishes that a defendant's infringement is willful upon a showing that (1) defendant knew it was infringing in the copyholder's rights, or (2) the defendant's infringement resulted from "reckless disregard" for or "willful blindness to" the copyholder's rights. *Stokes v. Carcavba, LLC*, 720 F. Supp. 3d 484, 499 (W.D. Tex. 2024); *see Graper v. Mid-Continent Cas. Co.*, 756 F.3d 388, 395 (5th Cir. 2014). "Copyright law affords district courts broad discretion to impose damages awards within the bounds of statutory damages provisions." *Spectrum Ass'n Mgmt. of*

*Texas, L.L.C. v. Lifetime HOA Mgmt. L.L.C.*, 5 F.4th 560, 565 (5th Cir. 2021) (citing *Douglas v. Cunningham,* 294 U.S. 207 (1935)). Joe Pags Media argues that it "did not engage in *any* conduct, much less reckless or willful conduct."

Here, although the record does not support a finding of actual knowledge of infringement, it does support a finding that Joe Pags Media acted with reckless disregard for Global Weather's rights. One factor that cuts in favor of finding willfulness is where the infringing entity is familiar with the applicable copyright laws and was a sophisticated participant in its industry. *See Lance v. Freddie Records, Inc.*, 986 F.2d 1419 (5th Cir. 1993) (per curiam) (noting the importance of this factor in the context of a direct infringement claim). Joe Pags himself was familiar with basic principles of copyright law. (Pagliarulo Dep., Pl. Ex. 2-J [#58-2], 25:21-26:15.) Joe Pags has worked in the media industry for more than 35 years, and Joe Pags Media has operated in the media industry for over a decade. (Pagliarulo Decl., Def. Ex. A [#57-2], at ¶ 4; Pagliarulo Dep., Pl. Ex. 2-J [#58-2], 16:21-17:6.) Nevertheless, it is undisputed that Joe Pags Media did not have a written policy in place to monitor its Facebook page's compliance with copyright laws, and Joe Pags Media has not identified any other evidence in the record that it took any other steps to ensure M3 Media was complying with copyright law. (Pagliarulo Dep., Pl. Ex. 2-J [#58-2], 23:11-20.) In fact, even the written agreement governing the relationship between Joe Pags Media and M3 Media does not require M3 Media to take steps to ensure or even warrant its compliance with copyright law, nor does it provide that M3 Media indemnify Joe Pags Media for any copyright violations. (M3-Joe Pags Media Agreement, Def. Ex. J [#57-11].)

In sum, while Joe Pags Media can credibly dispute that it was unaware of whether M3 Media was taking steps to ensure compliance with copyright law, the law defines willfulness to include more than actual knowledge. Here, Joe Pags Media's conduct is best described as ceding control

over what was posted to its Facebook page with reckless disregard to whether the posts by M3 Media infringed on any other party's copyrights. On this record, Joe Pags Media has failed to establish the existence of a genuine issue for trial as to willfulness. *See Matsushita*, 475 U.S. at 587.

As to the amount of damages, Global Weather should be awarded the $12,500 it has requested. Awarding three to five times the amount of the licensing fee is "customary in order to put infringers 'on notice that it costs less to obey the copyright laws than to violate them.'" *Broad. Music, Inc. v. Bandera Cowboy Bar, LLC*, No. 5:09–cv–882–XR, 2010 WL 11597871, at *2 (W.D. Tex. Apr. 13, 2010) (quoting *Broad. Music, Inc. v. Barflies, Inc.*, No. 03–304, 2003 WL 21674470, *2 (E.D. La. July 16, 2003)). The summary-judgment evidence indicates that Global Weather licensed the original work to news outlets for $2,500. Joe Pags Media asserts that these licenses are not relevant to damages here because they were issued for commercial use, whereas Joe Pags Media's was purportedly non-commercial. Joe Pags Media has not, however, identified any evidence in the summary judgment record that creates a dispute for trial on this point, such as an expert report or any evidence of distinctions between Joe Pags Media and the media companies that licensed the original work.

Joe Pags Media further asserts that statutory damages cannot be decided at this juncture because the amount of statutory damages is a jury question. This argument is misguided. "[J]ust as with any determination of liability under Rule 56," only if a plaintiff fails to show the absence of a genuine fact dispute and fails to establish as a matter of law that it is entitled to the requested statutory damages is a jury required; in those circumstances "the jury 'is to try the material facts' and decide the amount of statutory damages to award Plaintiff." *Stokes*, 720 F. Supp. 3d at 499 (quoting *Baranowski v. Hart,* 486 F.3d 112, 126 (5th Cir. 2007)). These are not the circumstances here, where Global Weather has demonstrated that no triable issue of material fact exists. The right to a

trial by jury does not prevent a court from granting summary judgment. *Baranowski*, 486 F.3d at 126 (quoting *Plaisance v. Phelps*, 845 F.2d 107, 108 (5th Cir. 1988)). Accordingly, the District Judge should exercise her discretion to award $12,500, equal to five times the licensing fee.

### E. Attorneys' Fees

Finally, Global Weather requests that the Court order Joe Pags Media to pay costs and reasonable attorneys' fees. The Copyright Act provides for a district court to award costs and attorneys' fees to the prevailing party in an infringement action. 17 U.S.C. § 505. Attorneys' fees "are the rule rather than the exception and should be awarded routinely." *Positive Black Talk Inc.*, 394 F.3d at 380 (quoting *McGaughey v. Twentieth Century Fox Film Corp.*, 12 F.3d 62, 65 (5th Cir. 1994)). Global Weather requests leave to file the appropriate submission as to reasonable fees and costs within 14 days of the entry of the proposed judgment. The undersigned will therefore recommend that Global Weather be allowed the time it requested to file a separate motion for attorneys' fees that complies with W.D. Tex. Local Rule 54.

## V. Conclusion and Recommendation

In light of the foregoing, it is **RECOMMENDED** that Defendant Joe Pags Media's Motion for Summary Judgment [#57] and Plaintiff's Motion for Summary Judgment [#58] both be **GRANTED IN PART and DENIED IN PART.** Specifically, Defendant Joe Pags Media should be awarded summary judgment on Plaintiff's direct copyright infringement claim, and Plaintiff should be awarded summary judgment on its vicarious copyright infringement claim and be awarded $12,500 in statutory damages. It is finally **RECOMMENDED** that Plaintiff be ordered to file a motion for attorneys' fees that complies with W.D. Tex. Local Rule 54 within 14 days of the entry of judgment in this case.

## VI. Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the Clerk of Court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this Report and Recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this deadline is modified by the Court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Objections, responses, and replies must comply with the same page limits as other filings, unless otherwise excused by the presiding District Judge's standing orders or other Court order. *See* W.D. Tex. Local Rule CV-7. The objecting party shall file the objections with the Clerk of the Court and serve the objections on all other parties.

A party is entitled to a *de novo* review by the District Judge of the findings and conclusions contained in this Report and Recommendation, only if specific objections are made. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the default time to file objections from 10 to 14 days). An objecting party must therefore specifically identify those findings, conclusions, or recommendations to which objections are made, as well as the basis for all such objections; the District Judge need not consider frivolous, conclusory, or general objections. *Id*. Failure to timely file written, specific objections to any proposed findings, conclusions, or recommendations contained in this Report and Recommendation will bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the District Judge, except on grounds of plain error, given that the party is here provided notice that such consequences will result from a failure to object. *See* 28 U.S.C. § 636(b)(1)(C); *Douglass*, 79 F.3d at 1417. Finally, facts or legal

arguments raised for the first time in objections to a Magistrate Judge's findings, conclusions, and recommendations are "not properly before the district court." *United States v. Armstrong*, 951 F.2d 626, 630 (5th Cir. 1992); *see also Shambaugh & Son, L.P. v. Steadfast Ins. Co.*, 91 F.4th 364, 369 (5th Cir. 2024) ("[The Fifth Circuit] considers arguments forfeited if they are not raised before a magistrate judge, even if they are subsequently raised before the reviewing district [judge] in objections to the magistrate judge's report and recommendation.").

SIGNED this 4th day of September, 2026.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE